1   Andrew P. Bridges (SBN: 122761)
    abridges@winston.com
2   Matthew A. Scherb (SBN: 237461)
    mscherb@winston.com
3   Kathleen Lu (SBN: 267032)
    klu@winston.com
4   WINSTON & STRAWN LLP
    101 California Street
5   San Francisco, CA 94111-5802
    Telephone:    (415) 591-1000
6   Facsimile:    (415) 591-1400

7   Attorneys for Movants
    ELECTRONIC FRONTIER FOUNDATION and
8   FRED VON LOHMANN

9

10              **UNITED STATES DISTRICT COURT**

11            **NORTHERN DISTRICT OF CALIFORNIA**

12                **SAN FRANCISCO DIVISION**

13          CV  10  80  276MISC

14   In re Subpoenas to Electronic Frontier      )   **Case No.** _____
     Foundation and Fred von Lohmann            )   [Related to *Arista Records v. Lime Wire LLC*,
15                                               )   No. 06-5936 (KMW) (S.D.N.Y.)]
                                                 )
16                                               )   **EXPEDITED MOTION TO QUASH**
                                                 )   **SUBPOENAS**
17                                               )
                                                 )   Date:    November 19, 2010
18                                               )   (proposed by stipulation of
                                                 )   Movant and Plaintiffs, awaiting order)
19   _____)

20

21

22

23

24

25

26

27

28

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

1

1  ## I.    INTRODUCTION

2        The Electronic Frontier Foundation (EFF), a nonprofit law firm championing the public

3  interest in innovation and civil liberties in the digital world, and Fred von Lohmann, formerly one of

4  its lawyers, challenge subpoenas that seek testimony and documents concerning their client Lime

5  Wire.  These subpoenas represent a brazen attempt to invade the attorney-client relationship.  They

6  strike at the very notion, core to our system of justice, that lawyers can provide advice to clients in

7  confidence.  The subpoenas also seek irrelevant information, seek unobtainable expert opinions, and

8  impose undue burdens on the EFF and Mr. von Lohmann.  Further, the subpoenas seek depositions

9  and production of documents on November 23, 2010, an extraordinarily short time frame that is

10  unworkable and necessitates quick intervention from this Court.  The EFF and Mr. von Lohmann

11  urge the Court to quash these subpoenas before November 23, 2010.  (The subpoenas originally

12  called for documents and depositions by November 12.  The parties agreed to November 23 in order

13  to accommodate briefing and hearing this motion.)

14  ## II.    FACTUAL BACKGROUND

15        Beginning in  approximately 2002-2003, Lime Wire personnel contacted EFF personnel,

16  including attorney Fred von Lohmann,[1] seeking legal advice related to Lime Wire's file sharing

17  service.

18        In 2006, thirteen record labels sued Lime Wire and some of its personnel in the U.S. District

19  Court for the Southern District of New York for alleged copyright infringement related to sharing of

20  copyrighted sound recordings on the Lime Wire service.  *Arista Records LLC v. Lime Group LLC*,

21  No. 06-5936 (S.D.N.Y.).  Naturally, the EFF and defendants' primary litigation counsel exchanged

22  some communications during the course of the lawsuit.

23        On May 25, 2010, Judge Kimba Wood of the Southern District granted summary judgment

24  on several of the record labels' claims.  *Arista Records LLC v. Lime Group LLC*, __ F. Supp. 2d __,

25  No. 06-5936, 2010 WL 2291485 (S.D.N.Y. May 25, 2010).  The case now proceeds to trial on

26  damages.  Discovery for the damages phase is currently set to close on November 25, 2010.

27

28

---
[1] Mr. von Lohmann left the EFF in June 2010.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

1    After four years of litigation, the record labels served last-minute subpoenas on the EFF, on

2    October 27, 2010, and Mr. von Lohmann, on November 2, 2010. The subpoenas accompany the

3    Declaration of Matthew Scherb as Exhibits A and B. Each subpoena called for a deposition and

4    seeks production of various categories of documents by November 12 (now November 23), 2010.

5    Counsel for EFF and Mr. von Lohmann have conferred with counsel for the record labels.

6    They agreed that the EFF and Mr. von Lohmann would serve this motion on Monday, November 8,

7    2010 (with filing on November 9), with an opposition due by November 12, 2010, and a reply by

8    November 16, 2010. The parties agreed to request a hearing in the Court on November 19, 2010.

9    **III.    ARGUMENT**

10    Under Federal Rule of Civil Procedure 45(c)(3)(A), "the issuing court *must* quash or modify

11    a subpoena" (emphasis added) when the subpoena "requires disclosure of privileged or other

12    protected matter," *id.* R. 45(c)(3)(A)(iii), "subjects a person to undue burden," *id.* R. 45(c)(3)(A)(iv),

13    or "fails to allow a reasonable time to comply," *id.* R. 45(c)(3)(A)(i). An issuing court may quash a

14    subpoena if it requires "disclosing an unretained expert's opinion or information that does not

15    describe specific occurrences in dispute and results from the expert's study that was not requested by

16    a party." *Id.* R. 45(c)(3)(B)(ii). Quashing the subpoenas is appropriate on each of these grounds.

17    **A. The Subpoenas Impermissibly Seeks Core Attorney-Client Privileged and Work**

18    **Product Materials.**

19    The Court "*must* quash or modify a subpoena" when the subpoena "requires disclosure of

20    privileged or other protected matter" or imposes an "undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iii)-

21    (iv).

22    The EFF and its attorney Mr. von Lohmann began providing legal advice to Lime Wire in

23    approximately 2002-2003. Privilege arises from the first consultation: even "communications made

24    in the course of preliminary discussions with a view to employing the lawyer are privileged"

25    whether the attorney accepts the employment or not. *In re Auclair*, 961 F.2d 65, 69 (5th Cir. 1992)

26    (cited in 1 Rice, Attorney Client Privilege in the United States, § 2-4 (2d. Ed. 2007 & 2010 Supp.).[2]

27    _____

28    [2] During discovery in the Southern District action, Defendants, through prior counsel, may have produced some communications between themselves and Movants, such as public listserv or mailing list communication and general updates shared with numerous recipients. Defendants logged other documents on a privilege log. Movants have not had the time to fully assess the different categories

3

1    The subpoenas overwhelmingly seek to penetrate the attorney-client relationship between the

2    EFF and Lime Wire and to uncover confidential communications. This Court reject attempts to

3    undermine the attorney-client relationship in this fashion. *Nocal, Inc. v. Sabercat Ventures, Inc.*, No.

4    04-240, 2004 WL 3174427 (N.D. Cal. Nov. 15, 2004); *Unigene Laboratories, Inc. v. Apotex, Inc.*,

5    No. 07-80218, 2007 WL 2972931 (N.D. Cal. Oct. 10, 2007).

6    In *Unigene Laboratories*, this Court quashed a subpoena to one of defendant's former

7    attorneys. The plaintiff wanted to depose the former attorney about a certification letter that she had

8    prepared and which bore some relationship to the plaintiff's lawsuit. The Court refused, quashing

9    the deposition subpoena and finding that "any information relevant to the [parties'] controversy,

10   whether technical or legal, falls within the protection of the attorney-client privilege." 2007 WL

11   2972931, at *3. Similarly, in *Nocal*, this Court quashed a deposition and document subpoena

12   purportedly requiring the one of the parties' attorneys to give testimony and produce documents.

13   2004 WL 3174427, at *2-4.

14   Protecting attorneys from having to breach client confidence is an "obvious" reason for

15   quashing a subpoena. *Knepp v. United Stone Veneer, LLC.*, No. 06-1018, 2007 WL 4437225, (M.D.

16   Pa. Dec. 14, 2007) (quashing a subpoena for deposition and documents).

17   Here, the subpoenas seek a deposition of the EFF and Mr. von Lohmann on topics that, with

18   one exception, relate to "communications between EFF and the Lime Wire Entities or Gorton"[3]

19   about Lime Wire and alleged copyright infringement. (Scherb Decl. Exh. A.) These

20   "communications" are core attorney-client privileged material. The only other topic, topic number

21   two, is "EFF's knowledge, understanding, or analysis of the actual or potential use of Lime Wire to

22   share copyrighted material." Though the topic does not use the word "communications," the EFF

23   would not acquire any relevant knowledge or understanding, or be able to conduct any analysis, of

24   uses of Lime Wire without either having and utilizing confidential communications with Lime Wire

25   or conducting its own expert analysis, either of which would be protected as privileged. Thus, there

26   of documents given the fast pace of events. Regardless, any produced documents are already in the
27   hands of Plaintiffs and Plaintiffs have no need for them from Movants. Further, the produced
     documents are either not privileged or, if privileged, inadvertently produced. Movants understand
28   from Defendants' current counsel that they continue to assert privilege in communications with
     Movants.
     [3] Gorton is one of Lime Wire's personnel.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

4

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

1   is absolutely nothing the subpoenas seek to learn in deposition that is *not* attorney-client privileged.

2   The same analysis applies to the subpoenas' document requests.  They seek nothing but the contents

3   of privileged communications, including, for example, the  state of mind of Lime Wire personnel or

4   the EFF's expert legal analyses.  The privilege protects not only communications themselves, but

5   also attorneys' notes and memoranda containing them.  *Trout v. Nationwide Mut. Ins. Co.*, No. 06-

6   236, 2006 WL 2683731, at *2 (D. Colo. Sept. 19, 2006); *Cedrone v. Unity Sav. Ass'n*, 103 F.R.D.

7   423, 429 (E.D. Pa. 1984) ("[I]t is inconceivable that an internal memorandum between attorneys in

8   the same office concerning the representation of a client, utilizing confidential information provided

9   by that client, could be anything but protected by the privilege.").

10        Even if the Court were to conclude that the subpoenas do not seek only attorney-client

11   privileged material, exposing a litigant's attorney to the subpoena power undermines clients' trust in

12   attorneys and the public's trust in its judiciary.  The EFF and Mr. von Lohmann cannot effectively

13   represent clients if they and prospective clients operate under the fear that a Court will later force

14   disclosure of what all thought were confidential communications.  Given this, and given that the

15   subpoenas seek information that is not relevant or of marginal relevance, given that the Southern

16   District of New York case is now in the damages phase, and seek information that Lime Wire can

17   itself provide, the subpoenas impose an undue burden and the Court should also quash them on this

18   basis.

19        *Shelton v. American Motors Corp.*,  805 F.2d 1323 (8th Cir. 1986) is the leading case

20   cautioning against allowing depositions and discovery from attorneys of litigants, even when the

21   attorney-client privilege cannot alone prevent the discovery.  The Eighth Circuit "view[ed] the

22   increasing practice of taking opposing counsel's deposition as a negative development in the area of

23   litigation." 805 F.2d at 1327.  It also believed that the practice "increases the costs of litigation,

24   demeans the profession, and constitutes an abuse of the discovery process." *Id.* at 1330.  It reasoned

25   that:

26       Taking the deposition of opposing counsel not only disrupts the adversarial system and
     lowers the standards of the profession, but it also adds to the already burdensome time and

27       costs of litigation. It is not hard to imagine additional pretrial delays to resolve work-product
     and attorney-client objections, as well as delays to resolve collateral issues raised by the

28       attorney's testimony. Finally, the practice of deposing opposing counsel detracts from the
     quality of client representation. Counsel should be free to devote his or her time and efforts

5

1    to preparing the client's case without fear of being interrogated by his or her opponent.
     Moreover, the "chilling effect" that such practice will have on the truthful communications
2    from the client to the attorney is obvious.

3    *Id.* at 1327. Therefore, a deposition of an adversary's counsel should only take place if (1) no other

4    means exist to obtain the information; (2) the information sought is relevant and nonprivileged; and

5    (3) the information is crucial to the preparation of the case. *Id. Shelton*, in addition to concluding

6    that the information that plaintiff sought from an in-house attorney was privileged, held that other

7    means existed to obtain the information. The Eighth Circuit told plaintiff it could and did get

8    answers to its questions from defendant, and it was not entitled to verify the truth of defendant's

9    statements by deposing defendant's attorney. *Id.* at 1327-28.

10        This Court adheres to the warnings in *Shelton*, and, in fact, has used the case as a springboard

11   to deny deposition and document discovery when a subpoenaing party did not meet the *Shelton*

12   requirements and when, in light of that, the subpoena was unduly burdensome. *Nocal*, 2004 WL

13   3174427, at *2-4. This Court also embraces the "general presumption that lawyers should not be

14   called to testify in cases where their client is a party because doing so compromises the standards of

15   the legal profession." *Fausto v. Crediqy Services Corp.*, No. 07-5658, 2008 WL 4793467, at *1

16   (N.D. Cal. Nov. 3, 2008).

17        Not only do the subpoenas here seek solely attorney-client and work product privileged

18   material (as discussed above), to the extent the EFF or Mr. von Lohmann had communications with

19   defendants or their counsel after defendants anticipated litigation, the work product privilege and

20   common interest doctrine also apply with respect to other representations as well.

21        Further, the subpoenas seek information that others can provide and is not relevant, let alone

22   crucial, to the record labels' case. First, as in *Shelton*, the record-label plaintiffs are able to obtain

23   non-privileged discovery from the defendants on Lime Wire's operation and defendants' state of

24   mind. Plaintiffs have no right to duplicate access to this information by harassing defendants

25   attorneys. Second, in light of the availability of discovery from defendants and in light of the

26   Southern District of New York litigation being into the damages stage, many of the subpoenas'

27   document request and parallel deposition topics seek irrelevant or only marginally relevant

28   testimony and documents. *Cf. Compaq Computer Corp. v. Packard Bell Electronics, Inc.*, 163

6

1   F.R.D. 329, 335 (N.D. Cal. 1995) ("[I]f the sought-after documents are not relevant nor calculated to

2   lead to the discovery of admissible evidence, then *any burden whatsoever* imposed upon [the non-

3   party] would be by definition 'undue'"). As crucial as evidence preservation is to fair litigation, it is

4   not at issue in a damages trial. (*See* Document Request 1 of both subpoenas.)   Nor does a damages

5   trial deal with issues related to liability, such as general use of Lime Wire for sharing copyrighted

6   materials (Request 2), actual or potential download monitoring (Request 3), the design of Lime Wire

7   *or other peer-to-peer services* (Request 4), defendants' general state of mind about unspecified

8   features of Lime Wire (Request 5), or anticipated litigation (Request 8).

9   B.   **The Subpoenas, As Drafted, Otherwise Seek Irrelevant Documents and Testimony**

10      **Which Are Also Likely Attorney-Client Privileged Communications or Work Product**

11      **Related to Other EFF Clients or Unretained Expert Opinion.**

12      To the extent the subpoenas may seek any documents and testimony other than attorney-

13   client privileged material (they do not), they seek only irrelevant material, much of which would be

14   subject to other clients' claims of privilege or classified as reports of EFF as an unretained expert.

15   None of these materials should be subject to production in connection with the Southern District

16   lawsuit.

17      When advising other clients, the EFF or Mr. von Lohmann may have mentioned publicly

18   available information about the Lime Wire service or the litigation involving Lime Wire.  To the

19   extent the EFF and Mr. von Lohmann included this information in communications to other clients,

20   those communications and related work product are protected from disclosure. Fed. R. Civ. P.

21   45(c)(3)(A)(iii).  In addition, to the extent the EFF and its personnel have engaged in their own

22   internal review and analysis of the Southern District litigation, the fruits of that review and analysis

23   would constitute unretained expert opinion, which the Court should not compel the EFF or its

24   personnel to produce.  *Id.* R. 45(c)(3)(B)(ii);*Mattel, Inc. v. Walking Mountain Productions*,  353 F.3d

25   792, 814 (9th Cir. 2003) ("Rule 45(c)(3)(B)(ii) was intended to provide appropriate protection for

26   the intellectual property of non-party witness.... A growing problem has been the use of subpoenas to

27   compel the giving of evidence and information by unretained experts.").

28      Moreover, any documents or information that the EFF or Mr. von Lohmann has prepared

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

7

1  for other clients or the public – in fact, any documents unprotected by privilege – are absolutely

2  irrelevant to the Southern District of New York action. If the EFF reported on the Lime Wire

3  litigation or discussed it internally, documents and testimony reflecting that would have no bearing

4  on damages, let alone liability (which the court already determined with its May 2010 decision).

5  **C. The Subpoenas Are Unduly Burdensome Not Only Because they Undermine the**

6  **Attorney-Client Relationship and Judicial Process While Seeking Irrelevant**

7  **Information, But Also Because They Would Impose Great Costs on Non-Parties Ill**

8  **Equipped to Bear Them.**

9  Further, the EFF and Mr. von Lohmann's compliance with the subpoenas will cost many

10  thousands of dollars for data collection and processing and result in significant attorney time spent

11  on reviewing documents for responsiveness and privilege. These costs, which cannot be known

12  fully at this time, will be substantial. Based on these costs, combined with the Subpeonas' disdain

13  for the attorney-client relationship and requests for marginally relevant information, the Court

14  should find that the subpoenas create an undue burden and must be quashed. *Nocal*, 2004 WL

15  3174427 at *3; *cf.* Fed. R. Civ. P. 26(b)(2)(C) (courts must prevent discovery when its burden

16  outweighs its benefit); *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 714 (1st Cir. 1998) (applying

17  Rule 26 limits on discovery as additional limits on Rule 45 subpoena discovery); *Compaq,* 163

18  F.R.D. at 335.

19  **D. If the Court Does Not Quash the Subpoenas, It Should Order Cost Shifting.**

20  Finally, if the Court does not quash the subpoenas entirely, the EFF and Mr. von Lohmann

21  request the Court to shift all costs of compliance, including attorney fees and costs, to the record-

22  label plaintiffs.

23  The record labels have taken no reasonable steps to avoid imposing undue burdens or

24  expenses, Fed. R. Civ. P. 45(c)(1), (c)(3)(A)(iv), and have not agreed to compensate the EFF or Mr.

25  von Lohmann for the time and costs associated with document production. A court must protect a

26  non-party from "significant expense" resulting from compliance with a subpoena. Fed. R. Civ. P.

27  45(c)(2)(B)(ii). The EFF and Mr. von Lohmann, and their counsel, are "entitled to be compensated

28  at a reasonable hourly rate [for] . . . time in searching for, reviewing for privileged material and

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

8

1    producing responsive documents," if any. *Compaq*, 163 F.R.D. at 339; *Pacific Gas & Elec. Co. v.*

2    *Lynch*, No. C-01-3023, 2002 WL 32812098, at \*3 (N.D. Cal. Aug. 19, 2002) (awarding cost of

3    "legal work") ("[C]ourts are required to condition compelled production by a non-party on the

4    payment of at least some portion of costs of production by the serving party."). "Nonparty witnesses

5    are powerless to control the scope of litigation and discovery, and should not be forced to subsidize

6    an unreasonable share of the costs of a litigation to which they are not a party." *United States v.*

7    *Columbia Broad. Sys., Inc.*, 666 F.2d 364, 371 (9th Cir. 1982), *cert. denied*, 457 U.S. 1118 (1982).

8         Shifting of costs and attorneys fees to the record labels, each a large corporation engaging in

9    vigorous and even aggressive litigation, is especially appropriate in this case when the EFF is a

10    nonprofit organization and Mr. von Lohmann is an individual, both with limited financial resources.

11    Neither should be forced to subsidize others' litigation efforts to jeopardize the trust of their clients.

## IV.   CONCLUSION

13         The EFF and Mr. von Lohmann request the Court to quash the subpoenas, or, in the

14    alternative, to limit them and to shift all costs and fees of compliance to the record labels.

16    Dated: November 8, 2010          WINSTON & STRAWN LLP

                                        By: *Andrew P. Bridges*

                                           Andrew P. Bridges
                                           Matthew A. Scherb
                                           Kathleen Lu

                                   Attorneys for Movants.
                                   ELECTRONIC FRONTIER FOUNDATION and
                                   FRED VON LOHMANN

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

9