MUNGER, TOLLES & OLSON LLP
GLENN D. POMERANTZ (SBN 112503)
Glenn.Pomerantz@mto.com
KELLY M. KLAUS (SBN 161091)
Kelly.Klaus@mto.com
MELINDA E. LEMOINE (SBN 235670)
Melinda.LeMoine@mto.com
355 South Grand Avenue
Thirty-Fifth Floor
Los Angeles, CA  90071-1560
Telephone:      (213) 683-9100
Facsimile:      (213) 687-3702

MUNGER, TOLLES & OLSON LLP
SUSAN TRAUB BOYD (229664)
Susan.Boyd@mto.com
JONATHAN H. BLAVIN (SBN 230269)
Jonathan.Blavin@mto.com
560 Mission Street, 27th Floor
San Francisco, CA 94105-2907
Telephone:      (415) 512-4000
Facsimile:      (415) 512-4077

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE SUBPOENAS TO ELECTRONIC FRONTIER FOUNDATION AND FRED VON LOHMANN. | CASE NO.  Misc. 10-80276 (JSW)<br><br>[Case No. 06 Civ. 05936 (KMW), U.S. District Court, Southern District of New York]<br><br>**PLAINTIFFS' OPPOSITION TO EXPEDITED MOTION TO QUASH SUBPOENAS**<br><br>Date: TBD [Per Scheduling Order, Doc. No. 7] |
| ARISTA RECORDS LLC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>LIME WIRE LLC, et al.,<br>Defendants. | |

12299407.2

1

**TABLE OF CONTENTS**

2

**Page**

3   I.     INTRODUCTION ............................................................................................. 1

4   II.    BACKGROUND .............................................................................................. 3

    A.    The Lime Wire Litigation ................................................................... 3

5   B.    EFF and Mr. von Lohmann ................................................................ 4

6   C.    Judge Wood's Statements Regarding Alleged Privileged Communications
          Between von Lohmann and Lime Wire ............................................... 6

7   D.    Plaintiffs' Subpoenas ......................................................................... 7

8   III.   ARGUMENT ................................................................................................... 8

9   A.    The Subpoenas Seek Highly Relevant Information .............................. 8

    B.    Movants Must Substantiate Any Claim of Privilege ........................... 10

10  C.    Even If There Were A Properly Supported Privilege Claim, Movants Could
          Not Use It To Shield Non-Privileged Information................................ 12

11  D.    Cost-Shifting Is Not Warranted ........................................................ 14

12  IV.    CONCLUSION ............................................................................................. 15

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*A&M Records, Inc. v. Napster, Inc.*,
  239 F.3d 1004 (9th Cir. 2001)...................................................................................... 3

*Arista Records LLC et al. v. Lime Wire LLC et al.*,
  Civil No. 06-5936 (KMW) (U.S.D.C. S.D.N.Y.) ........................................................... passim

*Arista Records LLC v. Lime Group LLC*,
  715 F. Supp. 2d 481 (S.D.N.Y. 2010)...................................................................... 3, 4, 6, 7

*Bryant v. Media Right Productions, Inc.*,
  603 F.3d 135 (2d Cir. 2010)........................................................................................... 9

*Burlington Northern & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.*,
  408 F.3d 1142 (9th Cir. 2005)....................................................................................... 8

*Clever View Investments, Ltd. v. Oshatz*,
  233 F.R.D. 393 (S.D.N.Y. 2006) ................................................................................. 14

*Fausto v. Credigy Services Corp.*,
  2008 WL 4793467 (N.D. Cal. Nov. 3, 2008)................................................................ 13

*Foltz v. State Farm Mut. Auto. Ins. Co.*,
  331 F.3d 1122 (9th Cir. 2003)....................................................................................... 8

*Friends of Hope Valley v. Frederick Co.*,
  26 F.R.D. 643 (E.D. Cal. 2010) ................................................................................... 10

*Hodges, Grant & Kaufmann v. Dep't of the Treasury*,
  768 F.2d 719 (5th Cir. 1985)........................................................................................ 10

*In re Aimster Copyright Litig.*,
  334 F.3d 643 (7th Cir. 2003)......................................................................................... 3

*In re Fischel*,
  557 F.2d 209 (9th Cir. 1977)................................................................................... 10, 11

*In re Grand Jury Investigation*,
  974 F.2d 1068 (9th Cir. 1992)...................................................................................... 10

*In re Subpoena Issued to Dennis Friedman*,
  350 F.3d 65 (2d Cir. 2003)........................................................................................... 13

*Jamison v. Miracle Mile Rambler, Inc.*,
  536 F.2d 560 (3d Cir. 1976)......................................................................................... 12

1

**TABLE OF AUTHORITIES**
(continued)

2

Page(s)

3

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
    545 U.S. 913 (2005) .................................................................................................. 3

4

5

*Nocal, Inc. v. Sabercat Ventures, Inc.*,
    2004 WL 3174427 (N.D. Cal. Nov. 14, 2004) ....................................................... 13

6

7

*Pamida, Inc. v. E.S. Originals, Inc.*,
    281 F.3d 726 (8th Cir. 2002) ............................................................................ 12, 13

8

*RSO Records, Inc. v. Peri*,
    596 F. Supp. 849 (S.D.N.Y 1984) ....................................................................... 8, 9

9

10

*Shelton v. American Motors Corp.*,
    805 F.2d 1323 (8th Cir. 1986) .......................................................................... 12, 13

11

*U.S. v. Columbia Broadcasting System, Inc.*,
    666 F.2d 364 (9th Cir. 1982) ................................................................................ 14

12

13

*U.S. v. Philip Morris Inc.*,
    209 F.R.D. 13 (D.D.C. 2002) ........................................................................... 12, 13

14

*United States v. Bilzerian*,
    926 F.2d 1285 (2d Cir. 1991) ................................................................................. 9

15

16

*United States v. Martin*,
    278 F.3d 988 (9th Cir. 2002) ............................................................................. 1, 11

17

18

*United States v. Nixon*,
    418 U.S. 683 (1974) .............................................................................................. 10

19

*Weil v. Inv./Indicators, Research & Mgmt., Inc.*,
    647 F.2d 18 (9th Cir. 1981) .................................................................................. 10

20

21

*Worthington v. Endee*,
    177 F.R.D. 113 (N.D.N.Y. 1998) ............................................................................ 9

22

23

**FEDERAL STATUTES**

24

17 U.S.C. § 504(c)(1) .................................................................................................... 8

25

17 U.S.C. § 504(c)(2) ................................................................................................. 2, 9

26

**FEDERAL RULES**

27

F.R.C.P. 26(b)(1) ......................................................................................................... 12

28

- iii -

1

**TABLE OF AUTHORITIES**
**(continued)**

2

**Page(s)**

3   F.R.C.P. 26(c) ......................................................................................................... 8

4   F.R.C.P. 45(c)(3)(A)(iv) ........................................................................................ 14

5   **OTHER AUTHORITIES**

6   www.eff.org/about .................................................................................................. 4

7   www.eff.org/about/history ....................................................................................... 4

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPP. TO EXPEDITED
MTN TO QUASH SUBPOENAS
MISC. 10-80276-JSW (06 CIV. 05936 (KMW))

1    **I.      INTRODUCTION**

2          Movants' motion to quash lawfully issued subpoenas based on a claim of a purported

3    attorney-client privilege is manifestly deficient, both procedurally and substantively, and the

4    Court should deny it.[1]  Movants have the burden of backing up their assertion that they were in a

5    privileged relationship with the Defendants in the underlying civil litigation (the *Lime Wire*

6    Action) with competent evidence, not attorney rhetoric.[2]  The motion assumes that, because

7    certain EFF personnel and von Lohmann have Bar cards, the Court must presume that any

8    communications between them and the *Lime Wire* Defendants are privileged.  That is not and

9    never has been the law.  Communications must be made within the scope of a professional

10   attorney-client relationship to be privileged.  *See United States v. Martin*, 278 F.3d 988, 1000 (9th

11   Cir. 2002).  The motion is not supported by any competent declaration — from anyone at EFF,

12   from von Lohmann, or from any putative "client" — swearing under oath that they were engaged

13   in an attorney-client relationship, when that relationship started, how long it lasted, or anything of

14   the kind.  In fact, there is strong reason to believe that EFF and von Lohmann were *not* the Lime

15   Wire Defendants' counsel, given that EFF (represented by von Lohmann) previously represented

16   to the Court in the *Lime Wire* Action that it was a *neutral* with respect to that case.  *See* Boyd

17   Decl. Ex. 5 (Amicus Brief); *id.* Ex. 6 (Declaration of Fred von Lohmann in Support of Amicus

18   Brief).  Because Movants have not — as is their burden to do — supported the assertion of such a

19   relationship with competent evidence, the motion can and should be denied at the outset.

20         Even if Movants had submitted a declaration attesting to the claim of an attorney-client

21   relationship, Movants' motion still would have to be denied because there is strong reason to

22   believe that the communications the subpoenas seek to discover are not subject to a privilege

23   claim.  The subpoenas seek to discover communications between EFF/von Lohmann and the

24   *Lime Wire* Defendants about numerous subjects relating to Lime Wire not obtaining (or retaining)

25   incriminating information about its users' widespread infringing activity and the adoption (or not)

26   _____

[1] Movants are the Electronic Frontier Foundation ("EFF") and Fred von Lohmann.

27   [2] *Arista Records LLC et al. v. Lime Wire LLC et al.*, Civil No. 06-5936 (KMW) (U.S.D.C.

28   S.D.N.Y.)

12299407.2

PLAINTIFFS' OPP. TO EXPEDITED
MTN TO QUASH SUBPOENAS
MISC. 10-80276-JSW (06 CIV. 05936 (KMW))

of infringement-reducing technologies.  The subjects include Lime Wire's adoption of document-purging policies to avoid retaining such incriminating communications.  Movants omit to tell this Court that **the District Court in the *Lime Wire* action has already said that it is an open question whether such communications are subject to a privilege claim, and expressly invited further briefing on this issue**.  This motion thus seeks to short-circuit privilege briefing expressly called for by the Court in the underlying action.

Lime Wire is the most recent in a line of notorious services set up to induce the mass infringement of Plaintiffs' (the major record companies') copyrighted sound recordings.  Plaintiffs sued Lime Wire in 2006.  In May of this year, the District Court (Hon. Kimba M. Wood) granted Plaintiffs summary judgment, finding the evidence undisputed that Defendants intentionally induced infringement and were well aware of the mass illegal activity taking place on their service.  The Court issued its first opinion on May 11.  In it, the Court said it had reviewed evidence from Lime Wire's founder and a named Defendant (hence, a putative "client" here) showing that von Lohmann "gave [Defendants] confidential legal advice **regarding the need to establish a document retention program to purge incriminating information about LimeWire users' activities.**"  Boyd Decl. Ex. 1 at 14-15 (emphasis added).  EFF sent Judge Wood a letter, encouraging her to delete this sentence so it would not harm von Lohmann's "professional reputation."  *Id*. Ex. 2.  Judge Wood amended the Opinion to delete the sentence, but did not take EFF's assertions about von Lohmann's statements at face value.  Instead, Judge Wood said that "the Court is of the view that it would benefit from further briefing on the issue of whether the statements are protected by the attorney-client privilege[.]"  Boyd Decl. Ex. 3 at 2.

The steps the *Lime Wire* Defendants took to avoid being in possession of incriminating information is highly relevant to the forthcoming damages trial.  Among other things, such evidence would show the extent of Defendants' willful infringing activity, and provide support for the maximum statutory damages award.  17 U.S.C. § 504(c)(2).  If EFF/von Lohmann recommended that the *Lime Wire* Defendants enact a document-purging program to eliminate incriminating information, that would be significant evidence for Plaintiffs' damages case.  There also would be a serious question whether — even if EFF/von Lohmann had an attorney-client

1   relationship with the *Lime Wire* Defendants — this would be the kind of "advice" that the

2   privilege would protect.

3        This Court, of course, does not have to resolve the question whether the *Lime Wire*

4   Defendants can maintain a claim of privilege over such communications, or how the underlying

5   communications weigh in the damages calculus.  Those matters will be decided in the *Lime Wire*

6   Action in the Southern District of New York, including in the briefing that Judge Wood expressly

7   invited.  This motion, however, aims to eliminate any such inquiry by preventing Plaintiffs from

8   obtaining even the basic foundational information that would be required to assess and test the

9   claim of privilege.  The motion should be denied, and the Court should enter an Order compelling

10  Movants' response to the subpoenas.

11  **II.     BACKGROUND**

12       **A.     The Lime Wire Litigation**

13       Plaintiffs are the major record music companies.  They produce, manufacture and

14  distribute the vast majority of copyrighted sound recordings sold in the United States.  *See Arista*

15  *Records LLC v. Lime Group LLC*, 715 F. Supp. 2d 481 (S.D.N.Y. 2010).

16       Until it was enjoined by Judge Wood on October 26 of this year, Lime Wire boasted of

17  being the world's largest "peer-to-peer" service for what it euphemistically called "file-sharing"

18  — and which in reality was the mass uploading and downloading of copyrighted works.  Lime

19  Wire positioned itself as the successor to the likes of Napster, Aimster and Grokster, all of which

20  ultimately were found to be responsible for the mass infringement they intentionally perpetrated.

21  *See Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,* 545 U.S. 913 (2005); *In re Aimster*

22  *Copyright Litig.*, 334 F.3d 643 (7th Cir. 2003); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d

23  1004 (9th Cir. 2001).  Like its ignominious predecessors, Lime Wire intentionally induced the

24  widespread infringement of Plaintiffs' copyrighted works on a "massive scale."  *Arista Records,*

25  715 F. Supp. 2d at 510.

26       Plaintiffs sued Lime Wire, its corporate parent (Lime Group LLC) and the founder of both

27  companies, Mark Gorton (collectively, "Defendants") in 2006, in the Southern District of New

28

12299407.2

York.  *Id*. at 492.  In May of this year, Judge Wood granted Plaintiffs' motion for summary

judgment, holding that Lime Wire "intentionally encouraged" the "massive scale" copyright

infringement committed by its "enormous user base."  *Id.* at 508, 510, 512.  Lime Wire's main

product — the LimeWire Client software — is used "overwhelmingly for infringement."  *Id*. at

509.  Indeed, without infringement, Lime Wire would have no business at all.  The Court

recognized that Lime Wire's very existence *depends* on the "massive user population generated

by" the LimeWire Client's "infringement-enabling features."  *Id*. at 512.  The Court found the

evidence overwhelming and undisputed that Lime Wire had acted intentionally to promote mass

infringement by Lime Wire's users.  The Court further acknowledged that Lime Wire has known

for years about the undeniably "massive scale" of Lime Wire's induced infringement.  *Id*. at 510.

The case will now proceed to a trial, set for January 18, 2011, on, *inter alia*, the damages

that Defendants will have to pay under the Copyright Act's statutory damages provision for their

intentional inducement of thousands upon thousands of copyrighted sound recordings by millions

upon millions of Lime Wire users.

### B.     EFF and Mr. von Lohmann

Contrary to Movants' suggestion that EFF is a "law firm" (Mot. at 2), EFF and von

Lohmann are not exclusively lawyers doling out confidential legal advice.  EFF is an *advocacy*

organization, which publicly boasts that its mission is to combat copyright owners (including the

Plaintiff-record companies) that EFF accuses of "trying to dumb down technology to serve their

'bottom lines' and manipulate copyright laws[.]"  www.eff.org/about/history (last visited Nov.

12, 2010).  While EFF has lawyers on staff and sometimes represents parties in litigation, much

of EFF's work is in the sphere of public activism, "[b]lending the expertise of lawyers, policy

analysts, activists, and technologists."  www.eff.org/about.  Mr. von Lohmann held the title of

senior staff attorney at EFF between 2002 and earlier this year (he now is a senior copyright

counsel at Google).  *See* Mot. at 2 & n.1.

Neither EFF nor von Lohmann have limited their advice and activism to private clients in

the confines of attorney-client relationships.  On the contrary, they have aired their advice and

1    opinions publicly for years.  For example, in the wake of the Ninth Circuit's 2001 decision

2    affirming (in large part) Judge Patel's decision to enjoin the Napster service, von Lohmann

3    offered advice to other peer-to-peer services about how they could do the same thing that Napster

4    was doing but avoid that company's fate in the legal system.  Mr. von Lohmann's 2001 "primer"

5    stated that, to avoid liability from anticipated litigation by copyright holders, peer-to-peer services

6    should create "plausible deniability" by "choos[ing] an architecture that will convince a judge

7    that . . . monitoring and control is impossible."  Boyd Decl. Ex. 4 at 8.  In the same primer, von

8    Lohmann also suggested that peer-to-peer developers should avoid "software that sends back

9    usage reports" because such usage reports "may lead to more knowledge than you want."  *Id*.

10         Services like Grokster and Lime Wire followed much of von Lohmann's advice to the

11   letter.  Where Napster had maintained central servers that facilitated mass infringement, Grokster,

12   Lime Wire and others utilized a decentralized architecture, and relied on that technological

13   difference to claim that they had no "actual knowledge of specific acts of infringement."

14   *Grokster*, 545 U.S. at 927.  The Supreme Court saw through this illicit strategy, holding

15   unanimously that a defendant that distributes a product like a peer-to-peer service "with the object

16   of promoting" its use to infringe is liable under the copyright laws.  *Id*. at 919.  Judge Wood in the

17   *Lime Wire* Action held that the Defendants in this case were liable under exactly the same theory.

18         The instant motion asks this Court to take it as a given that EFF and von Lohmann were

19   acting as counsel to the *Lime Wire* Defendants.  These Movants have not substantiated that claim

20   at all.  Indeed, there is no declaration whatsoever from either EFF or von Lohmann.  Contrary to

21   their counsel's present assertion that EFF/von Lohmann were in an attorney-client relationship

22   with the *Lime Wire* Defendants, EFF previously represented itself to the Court in the *Lime Wire*

23   Action as a neutral party.  On September 26, 2008, EFF (along with other entities) sought leave to

24   submit a brief *amici curiae* — with von Lohmann listed as "of counsel" — purportedly offering

25   "no view on which parties should prevail" in connection with "the [then-] pending cross-motions

26   for partial summary judgment[.]"  Boyd Decl. Ex. 5 at 2.  *See also id*., Ex. 6.  The *amici* filing

27   nowhere discloses that EFF or von Lohmann ever acted as legal counsel to Defendants.

28

12299407.2

**C.** **Judge Wood's Statements Regarding Alleged Privileged Communications Between von Lohmann and Lime Wire**

As noted in the introduction to this brief, the issue of communications between EFF and von Lohmann and Lime Wire does not arise on a blank slate. Judge Wood considered and discussed these communications in a series of orders at the summary judgment stage. This is what happened.

Lime Wire's former Chief Technology Officer — and a former named defendant in the case — was a gentleman named Greg Bildson. Mr. Bildson settled with the Plaintiffs and executed a declaration, which Plaintiffs submitted in support of their motion. Bildson's declaration attested to numerous facts about Defendants' intent to induce copyright infringement, as well as steps that Defendants had taken to avoid being in possession of incriminating information revealing their intent.[3]

Defendants moved to strike these statements, as well as other parts of Bildson's declaration, claiming that they revealed information shielded by Defendants' privilege. In support of this motion to strike, Defendants submitted *in camera* declarations from CEO (and named Defendant) Mark Gorton, as well as from Defendants' then-litigation counsel. *See Arista Records,* 715 F. Supp. 2d at 500. Judge Wood's initial summary judgment opinion, filed May 11, 2010, struck a handful of sentences and phrases from the Bildson declaration. In ordering this relief, Judge Wood stated that the *in camera* declaration of Mark Gorton — a Defendant and a putative "client" in the relationship — had stated that:

> an[] attorney, Frederick von Lohmann, gave [Defendants] confidential legal advice regarding the need to establish a document retention program to purge incriminating information about LimeWire users' activities.

Boyd Decl. Ex. 1 at 14-15.

---

[3] The Bildson Declaration was filed under seal in the *Lime Wire* Action. In light of Defendants' claim of privilege over the Bildson Declaration (which Plaintiffs dispute), Plaintiffs have not included the Bildson Declaration with their opposition papers. Should the Court wish to view the Bildson Declaration, Plaintiffs will meet and confer with Defendants in an effort to make that document available.

On May 18, 2010, EFF wrote to Judge Wood, requesting that she amend the summary judgment opinion to remove the reference to von Lohmann's advice.  Boyd Decl. Ex. 2.  Plaintiffs opposed the request.  *See* Boyd Decl. Ex. 7 (May 20, 2010 Pomerantz letter).

Judge Wood amended her summary judgment opinion to remove the above-referenced language, which the Court said had not been necessary to the Court's summary judgment ruling.  Boyd Decl. Ex. 3 at 2.  Judge Wood further said that whether von Lohmann's statements in fact were privileged was an open issue, and that the Court would "benefit" from further briefing on the issue:

> In the Opinion, the Court granted Defendants' motion to strike three statements from the declaration of Gregory Bildson . . . accepting Defendants' argument that they reflect confidential legal advice.  The Court did not rely on this finding of privilege in deciding the motions at issue in the Opinion.  Because the Court is of the view that it would benefit from further briefing on the issue of whether the statements are protected by attorney-client privilege, the Court's Amended Opinion omits reference to this issue.  The Court will address issues related to privilege as they arise.

*Id.  See also Arista Records,* 715 F. Supp. 2d at 500 (amended summary judgment opinion concluding that advice provided by von Lohmann and EFF "*may* reflect privileged communications") (emphasis in original).

### D.     Plaintiffs' Subpoenas

The Court in the *Lime Wire* Action has allowed a limited period for discovery in advance of the January 2011 trial.  In an effort to obtain the information that would be needed for the further briefing from which the Court said it would benefit, Plaintiffs served deposition and document subpoenas on EFF and von Lohmann.  The subpoenas seek, *inter alia*, documents relating to communications between Fred von Lohmann or EFF and the Lime Wire Entities or Gorton regarding "the retention or destruction of documents," the tracking or monitoring of downloads by users of Lime Wire" and "infringement-reducing technologies."  Because the discovery cut-off in the underlying action is rapidly approaching (November 24), the subpoenas require prompt compliance.

On November 5, 2010, Plaintiffs and Movants met and conferred regarding the subpoenas.

1   Movants' counsel — as they do in the instant motion — simply asserted that EFF/von Lohmann

2   were in a privileged attorney-client relationship with the Defendants, even though they could not

3   provide any details about the nature of that relationship.  The parties thereafter stipulated to brief

4   this motion on an expedited schedule.

5          On November 9, 2010, Movants filed the instant Motion to Quash.  On November 9,

6   2010, Movants served objections to the document request portion of the subpoenas which mirror

7   the arguments made in the Motion to Quash.  *See* Boyd Decl. Exs 8-9.  The full text of the

8   requests, and Movants' objections, are set out in the Appendix to this Opposition Brief.

9   **III.    ARGUMENT**

10          A party seeking a protective order must demonstrate good cause for the order based on

11   "specific demonstrations of fact, supported where possible by affidavits and concrete examples,

12   rather than broad, conclusory allegations of potential harm."  *Foltz v. State Farm Mut. Auto. Ins.*

13   *Co.*, 331 F.3d 1122, 1130-1131 (9th Cir. 2003); *see also* F.R.C.P. 26(c).  Where, as here, the

14   party seeking to prevent disclosure relies on a claim of privilege, the privilege claim must

15   likewise be supported by specific demonstrations of fact.  "[B]oilerplate objections or blanket

16   refusals" are insufficient.  *Burlington Northern & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of*

17   *Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005).  Movants fall well short of these standards.

18          **A.    The Subpoenas Seek Highly Relevant Information**

19          The subpoenas seek information central to the January 2011 trial on Plaintiffs' claim for

20   statutory damages.  Under the Copyright Act, the Defendants are liable for statutory damages "for

21   all infringements involved in the action" with respect to each work and for each infringement for

22   which the Defendants are jointly and severally liable with individual Lime Wire users.  17 U.S.C.

23   § 504(c)(1).  The range of statutory damages runs from $750 to $30,000 — but for willful

24   infringement, the maximum is increased to $150,000 per statutory award.  *Id*. § 504(c)(2).  In

25   addition to triggering a higher damages range, the defendants willfulness guides the jury's

26   determination of *where* within the statutory range to set the award.  *See RSO Records, Inc. v.*

27   *Peri*, 596 F. Supp.  849, 863 (S.D.N.Y 1984) (where defendants acted in a "wholly willfull

28

12299407.2

1  manner" the "maximum statutory award" was appropriate).  *See also Bryant v. Media Right*

2  *Productions, Inc.*, 603 F.3d 135, 144 (2d Cir. 2010) (the "infringer's state of mind" is one of the

3  factors the jury may consider in setting statutory damages). [4]

4      The information that these subpoenas seek is highly relevant to the willfulness issue.

5  "Willfully' as used in 17 U.S.C. § 504(c)(2) means 'with knowledge that the defendant's conduct

6  constitutes copyright infringement.'"  *Peri*, 596 F. Supp. at 859.  Communications between von

7  Lohmann, EFF, and Defendants related to "purg[ing] incriminating information about LimeWire

8  users' activities," maintaining "plausible deniability" or avoiding "software that sends back usage

9  reports" demonstrate that Defendants were fully aware that their conduct constituted copyright

10  infringement — and chose to cover it up.  Evidence that Defendants knew they were inducing the

11  mass infringement of copyright and were taking steps to cover up their guilty knowledge would

12  be highly relevant in support of an award at the highest end of the statutory damages range.

13  Plaintiffs subpoenas properly seek discovery into these topics. [5]

14      Likewise, the jury also may consider Defendants' lack of "cooperation in providing

15  evidence concerning the value of the infringing material" in determining where to set the

16  statutory award.  *Bryant*, 603 F.3d at 144.  For example, in *Peri*, 596 F. Supp. at 863, the statutory

17  award was at the upper end because the defendants had obstructed the plaintiffs' ability to fully

18  assess the scope of the infringing activity.  *See id.* ("the information which would indicate the

19

20  [4] Moreover, Mr. Gorton has asserted a good faith belief in the legality of the LimeWire Client and
identified von Lohmann as one of the attorneys with whom he discussed "copyright issues" —

21  although Mr. Gorton was not sure whether those discussions rose to the level of "advice."  *See*
Boyd Decl. Ex. 10 at 48:8-17&97:7-99:22.  If Mr. Gorton is permitted to and does assert an

22  advice of counsel defense, the entirety of Mr. Gorton's discussions with Mr. von Lohmann and
EFF may be discoverable for that additional reason.  *See generally United States v. Bilzerian*, 926

23  F.2d 1285, 1292 (2d Cir. 1991); *Worthington v. Endee*, 177 F.R.D. 113, 116 (N.D.N.Y. 1998).  At
this juncture, it is certainly appropriate for Movants to provide a privilege log and deposition

24  testimony that discloses the frequency, timing, and subject matter of communications between
Mr. von Lohmann, EFF, the Lime Wire Entities, and Gorton.

25  [5] *See, e.g.*, Scherb Decl. Ex. A (EFF subpoena), Deposition Topic ("DT") No. 1 & RFP No. 1

26  (document retention), DT No. 2 & RFP No. 2 (infringing activity by Lime Wire users);  DT Nos.
4-5 & RFP Nos. 3-6 (design and structure of the LimeWire Client, including tracking or

27  monitoring of downloads and infringement-reducing technologies); DT No. 7 & RFP No. 8
(information regarding actual or anticipated litigation).  *See also* Appendix A.

28

PLAINTIFFS' OPP. TO EXPEDITED
MTN TO QUASH SUBPOENAS
MISC. 10-80276-JSW (06 CIV. 05936 (KMW))

scope of [the infringing activity] is wholly in defendants' hands, and they have not disclosed it . . . the maximum statutory award is again appropriate").  In this case, Defendants' failure to retain information about who was infringing Plaintiffs' works, when they were doing it, how many times, etc., was designed to undermine Plaintiffs' ability to assess the scope and magnitude of the mass infringement Defendants perpetrated.  Evidence that EFF and von Lohmann were telling Defendants to avoid retaining this type of information thus would be highly relevant to the issue of where within the statutory range to set the award.

In short, the subpoenas indisputably seek relevant information.

### B.    Movants Must Substantiate Any Claim of Privilege

"Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981); *see generally United States v. Nixon*, 418 U.S. 683, 710 (1974) (privileges are not to be "expansively construed" because they are "exceptions" to the rule that the law has a right to every person's evidence and are "in derogation of the search for truth").  It is well-settled that "[t]he party asserting the attorney-client privilege has the burden of proving that the privilege applies to a given set of documents or communications."  *In re Grand Jury Investigation*, 974 F.2d 1068, 1070-71 (9th Cir. 1992) (citations omitted).  As the party invoking a claim of privilege to defeat discovery, Movants bear the burden of substantiating the privilege assertion with facts, not attorney rhetoric.  *See e.g., Friends of Hope Valley v. Frederick Co.*, 26 F.R.D. 643, 650-651 (E.D. Cal. 2010).[6]

Among other things, Movants have the burden of showing:

- *First*, that the communications involve an *attorney*, meaning a "*professional* legal adviser *in his capacity as such*."  *In re Fischel*, 557 F.2d 209, 211 (9th Cir. 1977) (emphasis added).  Defendants' communications with Mr. von Lohmann or EFF in his role as an advocate

---

[6] The same allocation of burden and requirement of presenting supporting evidence apply to assertions of work product.  *See In re Grand Jury Investigation*, 974 F.2d at 1070-71; *Hodges, Grant & Kaufmann v. Dep't of the Treasury*, 768 F.2d 719, 721 (5th Cir. 1985).

PLAINTIFFS' OPP. TO EXPEDITED
MTN TO QUASH SUBPOENAS
MISC. 10-80276-JSW (06 CIV. 05936 (KMW))

1    on behalf of the general public in support of EFF's mission (*see* eff.org)

2    fall outside the scope of any privilege.

3    •   *Second*, that the "client" — the other half of the attorney-client relationship

4        — is just that: a *client*.  The individual must be receiving (or inquiring

5        about receiving) legal services in the course of a professional relationship.

6        *See Martin*, 278 F.3d at 1000.  Here, there is no factual support for the

7        claim that there was an attorney-client relationship, whether or how it was

8        memorialized, who the client was, how long it lasted, or anything of the

9        kind.

10   •   *Third*, that the communications relate to the attorney-client relationship,

11       *i.e.*, they have to reflect a request for, or the provision of, legal services.

12       *See id.*  Movants here improperly seek to bar inquiry into *all*

13       communications regardless of subject matter.

14   •   *Fourth*, that the communications made in the course of the relationship

15       have been diligently kept confidential.  *See, e.g., Fischel*, 557 F.2d at 211.

16       Communications between Movants and Lime Wire on "public listserv or

17       mailing list[s]" and "general updates shared with numerous recipients," do

18       not meet this requirement.  *See* Mot. at 3, n.2.

19   Even assuming that communications were made within the scope of an attorney-client

20   relationship, and that Movants meet all of the other requirements for claiming privilege, there still

21   would be a serious question whether recommendations that a party purge documents in order to

22   get rid of incriminating information would be subject to the privilege, or rather would be subject

23   to the crime-fraud exception.

24   All of the foundational information that would be needed to support this motion also

25   would be relevant to the further briefing that Judge Wood has invited.  If EFF and von Lohmann

26   want to invoke the privilege and refuse to produce documents or answer questions at deposition,

27   then they must do that on the record.  In that event, Plaintiffs would have the foundational

28   information that they need to present further briefing to Judge Wood to test Defendants' privilege

- 11 -

assertion.  This Motion seeks to eliminate Plaintiffs' ability to obtain even the predicate, indisputably non-privileged information that would inform that briefing.  That attempt should be rejected.

### C.   Even If There Were A Properly Supported Privilege Claim, Movants Could Not Use It To Shield Non-Privileged Information

Movants must also produce (and testify regarding) all *non-privileged* information responsive to the subpoenas.  *See* Fed. R. Civ. P. 26(b)(1) (authorizing discovery into "*any* nonprivileged matter that is relevant to any party's claim or defense") (emphasis added).  Even Movants themselves acknowledge that they engaged in some non-privileged communications with Defendants, including "public listserv or mailing list communication and general updates shared with numerous recipients."  *See* Mot. at 3, n.2.  Indeed, von Lohmann's suggestion — well-heeded by Lime Wire — that software developers create "plausible deniability" and avoid "more knowledge than you want" is memorialized in a publicly available article which specifically *disclaims* any intent to provide legal advice.  *See* Boyd Decl. Ex. 4 at 1, 8.

Where an attorney is a witness to "pre-litigation factual matters," there is no bar to deposing an attorney regarding non-privileged matters.  *U.S. v. Philip Morris Inc*., 209 F.R.D. 13, 17 (D.D.C. 2002).  *See also Jamison v. Miracle Mile Rambler, Inc.*, 536 F.2d 560, 565-566 (3d Cir. 1976) (approving attorney deposition and rejecting a "blanket prohibition").  So here, movants should be required immediately to produce a witness and testify regarding all non-privileged matters.

Relying on *Shelton v. American Motors Corp.,* 805 F.2d 1323 (8th Cir. 1986), Movants seek to quash the subpoenas *in their entirety*, regardless of whether the subpoenas seek non-privileged materials.  Movants' reliance on *Shelton* is misplaced.  In that case, the Eighth Circuit held that a party could not depose the opposing parties' litigation counsel unless (1) there were no other means to obtain the information; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case.  *Id.* at 1327.  In *Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 730 (8th Cir. 2002), however, the Eight Circuit clarified that the *Shelton* test did not apply in every instance in which a party seeks to depose an attorney.

Rather, the *Shelton* test was only intended to protect "trial attorneys" from depositions "which could potentially lead to the disclosure of the attorney's litigation strategy."  *Id.*  Thus, in *Pamida*, the Eighth Circuit held that the *Shelton* analysis applied to a proposed attorney deposition only to the extent that the deposition inquired into the litigation strategy of the *pending trial*.  The attorney deposition could go forward, irrespective of the *Shelton* factors, to the extent the deposition sought information related to other matters (including the attorney's representation in a related but separate patent infringement case).  *See also Philip Morris Inc.*, 209 F.R.D. at 17 ("[t]hus, *Pamida* makes clear that the three *Shelton* criteria apply to limit deposition questions of attorneys in only two instances: (1) when trial and/or litigation counsel are being deposed, and (2) when such questioning would expose litigation strategy in the pending case").

Even if *Shelton* were the law in this Circuit — and it is not — the case has no application here.[7]  Whatever their role as counsel to Lime Wire (if any), it is abundantly clear that Movants have never been Lime Wire's litigation counsel — Movants' participation in the *Lime Wire* case was only as *amici*, not as attorneys for Lime Wire.  Moreover, at least some of the information Plaintiffs seek predates the filing of this lawsuit by several years.

Finally, even if the *Shelton* analysis applied, Plaintiffs meet the *Shelton* criteria here.  As noted, Plaintiffs seek information that is highly relevant to their claim of statutory damages.  *See* § III.A.  At this juncture, Plaintiffs seek only the discovery of *non-privileged* communications (which Movants acknowledge have occurred) as well as the foundational facts underlying any

---

[7] *Shelton* has not been adopted by the Ninth Circuit, and at least one other Circuit has questioned whether its holding can be squared with the broad discovery authorized by the Federal Rules of Civil Procedure.  *See In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 72 (2d Cir. 2003) (rejecting *Shelton* as a talisman and emphasizing that "the standards set forth in Rule 26 require a flexible approach to lawyer depositions").  Although two decisions of this Court have applied the *Shelton* analysis, they have done so where a party was seeking to depose its adversary's *litigation* counsel.  *See Fausto v. Credigy Services Corp.*, 2008 WL 4793467, at *2 (N.D. Cal. Nov. 3, 2008) (quashing deposition which sought, *inter alia*, to depose attorney "regarding his role in the preparation of certain discovery responses"); *Nocal, Inc. v. Sabercat Ventures, Inc.*  2004 WL 3174427, at *2 (N.D. Cal. Nov. 14, 2004) (discussing prohibitions on depositions of "trial counsel").  EFF and Mr. von Lohmann can not plausibly claim to have acted as Defendants' litigation counsel, and certainly could not have been so acting beginning in 2002, years before the *LimeWire* Action was filed.

claim of privilege as to other particular communications.  Finally, Plaintiffs are forced to seek this

information from EFF and von Lohmann precisely because Lime Wire implemented a document

destruction campaign (*see* Boyd Decl. Ex. 3 at 2), which prevents Plaintiffs from obtaining the

relevant evidence from Defendants themselves.

### D.  Cost-Shifting Is Not Warranted

"Under federal law, the party responsible for production generally bears the cost." *Clever*

*View Investments, Ltd. v. Oshatz* , 233 F.R.D. 393, 394 (S.D.N.Y. 2006).  The Court may order

cost-shifting, however, to protect against "undue burden" or unreasonable expense.  *See* F.R.C.P.

45(c)(3)(A)(iv).  Thus, in *U.S. v. Columbia Broadcasting System, Inc*., 666 F.2d 364, 366, 372

(9th Cir. 1982), relied upon by Movants, the Ninth Circuit held that cost shifting may have been

appropriate in a case where third parties expended over $2 million complying with "extensive"

discovery requests.  As the Court described:

> In order to comply with the network's discovery demands, the
> studios hired and trained large staffs of lawyers, paralegals,
> accountants, and clerks to glean relevant material from their
> warehouse-sized depositories of archived documents. Thousands of
> boxes of documents were transported to offices specially set aside
> and equipped by the studios for discovery purposes, where the
> documents were reviewed, organized, copied, and sent to the
> networks. The networks also subpoenaed numerous officers and
> employees of the studios. Seventeen of these individuals were
> eventually deposed over a period of more than eighty work days.

*Id.* at 366.  Under these circumstances, the Court held that cost-shifting was likely appropriate,

but remanded the issue to the district court for further consideration.  *Id.* at 372.

The discovery at issue here is a far cry from the warehouses of documents discussed in

*Columbia Broadcasting*.  Although Movants claim that complying with the subpoena will "cost

many thousands of dollars for data collection and processing and result in significant attorney

time spent" (*see* Mot. at 8) they once again offer no supporting declarations, or even explanation

— such as an estimate of the number of relevant custodians, or the likely volume of

communications and other responsive materials — that would justify this conclusion.

Further, Plaintiffs' handful of document requests are narrowly-tailored to avoid undue

1    burden.  Each document request is specifically tied to Lime Wire.  The bulk of the requests are

2    further confined to documents "relating to communications between [Fred von Lohmann or] EFF

3    and the Lime Wire Entities or Gorton."  Plaintiffs see no reason — and Movants have offered

4    none — why Movants will be unable easily to identify these categories of documents.  Cost

5    shifting is not appropriate here.

6    **IV.      CONCLUSION**

7           Movants' Motion to Quash should be denied.  This Court should issue an order

8    compelling Movants to respond in full to Plaintiffs lawfully issued discovery.

9

10   DATED: November 12, 2010                        MUNGER, TOLLES & OLSON LLP

11

12

13                                                   By:    *s/Susan T. Boyd*
                                                           Susan T. Boyd
14                                                         Attorneys for Plaintiffs

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12299407.2

## Appendix A

## ELECTRONIC FRONTIER FOUNDATION'S
## OBJECTIONS AND RESPONSES TO DOCUMENT REQUESTS

### DOCUMENT SUBPOENA REQUEST NO. 1

All documents relating to communications between EFF and the Lime Wire Entities or Gorton relating to the retention or destruction of documents, including without limitation communications regarding a document retention policy or program.

### OBJECTION TO DOCUMENT SUBPOENA REQUEST NO. 1

In addition to the general objections, Electronic Frontier Foundation objects to this Request as requiring it to disclose information protected by the attorney-client privilege, the work product privilege, and the common interest privilege. The Electronic Frontier Foundation objects to this Request as vague, ambiguous, overly broad, burdensome, harassing and oppressive, and not reasonably calculated to lead to the discovery of relevant, admissible evidence.

### DOCUMENT SUBPOENA REQUEST NO. 2

All documents reflecting or referring to the actual or potential use of Lime Wire to share copyrighted materials.

### OBJECTION TO DOCUMENT SUBPOENA REQUEST NO. 2

In addition to the general objections, Electronic Frontier Foundation objects to this Request as requiring it to disclose information protected by the attorney-client privilege, the work product privilege, and the common interest privilege. The Electronic Frontier Foundation objects to this Request as vague, ambiguous, overly broad, burdensome, harassing and oppressive, and not reasonably calculated to lead to the discovery of relevant, admissible evidence. The Electronic Frontier Foundation objects to this Request as seeking reports of the Electronic Frontier Foundation as an unretained expert and its privileged communications with, or work product for, other clients aside from the Lime Wire Entities and Mr. Gorton.

### DOCUMENT SUBPOENA REQUEST NO. 3

All documents relating to communications between EFF and the Lime Wire Entities or

Gorton relating to the actual or potential tracking or monitoring of downloads by users of Lime Wire or other peer-to-peer file sharing networks.

### OBJECTION TO DOCUMENT SUBPOENA REQUEST NO. 3

In addition to the general objections, Electronic Frontier Foundation objects to this Request as requiring it to disclose information protected by the attorney-client privilege, the work product privilege, and the common interest privilege. The Electronic Frontier Foundation objects to this Request as vague, ambiguous, overly broad, burdensome, harassing and oppressive, and not reasonably calculated to lead to the discovery of relevant, admissible evidence. The Electronic Frontier Foundation objects to this Request as seeking reports of the Electronic Frontier Foundation as an unretained expert.

### DOCUMENT SUBPOENA REQUEST NO. 4

All documents relating to communications between EFF and the Lime Wire Entities or Gorton relating to the architecture, design, or structure of Lime Wire or other peer-to-peer file sharing networks.

### OBJECTION TO DOCUMENT SUBPOENA REQUEST NO. 4

In addition to the general objections, Electronic Frontier Foundation objects to this Request as requiring it to disclose information protected by the attorney-client privilege, the work product privilege, and the common interest privilege. The Electronic Frontier Foundation objects to this Request as vague, ambiguous, overly broad, burdensome, harassing and oppressive, and not reasonably calculated to lead to the discovery of relevant, admissible evidence. The Electronic Frontier Foundation objects to this Request as seeking reports of the Electronic Frontier Foundation as an unretained expert.

### DOCUMENT SUBPOENA REQUEST NO. 5

All documents reflecting or referring to the Lime Wire Entities' or Mark Gorton's state of mind, purpose or motivation for adopting or not adopting particular architectures, designs, structures or features for Lime Wire.

12299407.2

PLAINTIFFS' OPP. TO EXPEDITED
MTN TO QUASH SUBPOENAS
MISC. 10-80276-JSW (06 CIV. 05936 (KMW))

**<u>OBJECTION TO DOCUMENT SUBPOENA REQUEST NO. 5</u>**

In addition to the general objections, Electronic Frontier Foundation objects to this Request as requiring it to disclose information protected by the attorney-client privilege, the work product privilege, and the common interest privilege.  The Electronic Frontier Foundation objects to this Request as vague, ambiguous, overly broad, burdensome, harassing and oppressive, and not reasonably calculated to lead to the discovery of relevant, admissible evidence.  The Electronic Frontier Foundation objects to this Request as seeking reports of the Electronic Frontier Foundation as an unretained expert and its privileged communications with, or work product for, other clients aside from the Lime Wire Entities and Mr. Gorton.

**<u>DOCUMENT SUBPOENA REQUEST NO. 6</u>**

All documents relating to communications between EFF and the Lime Wire Entities or Gorton relating to infringement-reducing technologies, including without limitation filtering or acoustic-fingerprinting technologies.

**<u>OBJECTION TO DOCUMENT SUBPOENA REQUEST NO. 6</u>**

In addition to the general objections, Electronic Frontier Foundation objects to this Request as requiring it to disclose information protected by the attorney-client privilege, the work product privilege, and the common interest privilege.  The Electronic Frontier Foundation objects to this Request as vague, ambiguous, overly broad, burdensome, harassing and oppressive, and not reasonably calculated to lead to the discovery of relevant, admissible evidence.  The Electronic Frontier Foundation objects to this Request as seeking reports of the Electronic Frontier Foundation as an unretained expert.

**<u>DOCUMENT SUBPOENA REQUEST NO. 7</u>**

All documents reflecting or referring to the Lime Wire Entities' or Mark Gorton's state of mind, purpose or motivation for adopting or not adopting infringement reducing technologies, including without limitation filtering or acoustic-fingerprinting technologies.

**<u>OBJECTION TO DOCUMENT SUBPOENA REQUEST NO. 7</u>**

In addition to the general objections, Electronic Frontier Foundation objects to this Request as requiring it to disclose information protected by the attorney-client privilege, the work

1   product privilege, and the common interest privilege.  The Electronic Frontier Foundation objects

2   to this Request as vague, ambiguous, overly broad, burdensome, harassing and oppressive, and

3   not reasonably calculated to lead to the discovery of relevant, admissible evidence.  The

4   Electronic Frontier Foundation objects to this Request as seeking reports of the Electronic

5   Frontier Foundation as an unretained expert and its privileged communications with, or work

6   product for, other clients aside from the Lime Wire Entities and Mr. Gorton.

7   **DOCUMENT SUBPOENA REQUEST NO. 8**

8   All documents relating to communications between EFF and the Lime Wire Entities or

9   Gorton relating to actual or anticipated litigation by copyright holders.

10   **OBJECTION TO DOCUMENT SUBPOENA REQUEST NO. 8**

11   In addition to the general objections, Electronic Frontier Foundation objects to this

12   Request as requiring it to disclose information protected by the attorney-client privilege, the work

13   product privilege, and the common interest privilege.  The Electronic Frontier Foundation objects

14   to this Request as vague, ambiguous, overly broad, burdensome, harassing and oppressive, and

15   not reasonably calculated to lead to the discovery of relevant, admissible evidence.  The

16   Electronic Frontier Foundation objects to this Request as seeking reports of the Electronic

17   Frontier Foundation as an unretained expert.

18

19

20

21

22

23

24

25

26

27

28

12299407.2

PLAINTIFFS' OPP. TO EXPEDITED
MTN TO QUASH SUBPOENAS
MISC. 10-80276-JSW (06 CIV. 05936 (KMW))

**FRED VON LOHMANN'S OBJECTIONS
AND RESPONSES TO DOCUMENT REQUESTS**

**DOCUMENT SUBPOENA REQUEST NO. 1**

All documents relating to communications between Fred von Lohmann or EFF and the Lime Wire Entities or Gorton relating to the retention or destruction of documents, including without limitation communications regarding a document retention policy or program.

**OBJECTION TO DOCUMENT SUBPOENA REQUEST NO. 1**

In addition to the general objections, Mr. von Lohmann objects to this Request as requiring him to disclose information protected by the attorney-client privilege, the work product privilege, and the common interest privilege.  Mr. von Lohmann objects to this Request as vague, ambiguous, overly broad, burdensome, harassing and oppressive, and not reasonably calculated to lead to the discovery of relevant, admissible evidence.

**DOCUMENT SUBPOENA REQUEST NO. 2**

All documents reflecting or referring to the actual or potential use of Lime Wire to share copyrighted materials.

**OBJECTION TO DOCUMENT SUBPOENA REQUEST NO. 2**

In addition to the general objections, Mr. von Lohmann objects to this Request as requiring disclosure of information protected by the attorney-client privilege, the work product privilege, and the common interest privilege.  Mr. von Lohmann objects to this Request as vague, ambiguous, overly broad, burdensome, harassing and oppressive, and not reasonably calculated to lead to the discovery of relevant, admissible evidence.  Mr. von Lohmann objects to this Request as seeking reports of Mr. von Lohmann as an unretained expert and his privileged communications with, or work product for, other clients aside from the Lime Wire Entities and Mr. Gorton.

**DOCUMENT SUBPOENA REQUEST NO. 3**

All documents relating to communications between Fred von Lohmann or EFF and the Lime Wire Entities or Gorton relating to the actual or potential tracking or monitoring of downloads by users of Lime Wire or other peer-to-peer file sharing networks.

- 5 -

**OBJECTION TO DOCUMENT SUBPOENA REQUEST NO. 3**

In addition to the general objections, Mr. von Lohmann objects to this Request as requiring disclosure of information protected by the attorney-client privilege, the work product privilege, and the common interest privilege.  Mr. von Lohmann objects to this Request as vague, ambiguous, overly broad, burdensome, harassing and oppressive, and not reasonably calculated to lead to the discovery of relevant, admissible evidence.  Mr. von Lohmann objects to this Request as seeking reports of Mr. von Lohmann or EFF as unretained experts.

**DOCUMENT SUBPOENA REQUEST NO. 4**

All documents relating to communications between Fred von Lohmann or EFF and the Lime Wire Entities or Gorton relating to the architecture, design, or structure of Lime Wire or other peer-to-peer file sharing networks.

**OBJECTION TO DOCUMENT SUBPOENA REQUEST NO. 4**

In addition to the general objections, Mr. von Lohmann objects to this Request as requiring disclosure of information protected by the attorney-client privilege, the work product privilege, and the common interest privilege.  Mr. von Lohmann objects to this Request as vague, ambiguous, overly broad, burdensome, harassing and oppressive, and not reasonably calculated to lead to the discovery of relevant, admissible evidence.  Mr. von Lohmann objects to this Request as seeking reports of Mr. von Lohmann or EFF as unretained experts.

**DOCUMENT SUBPOENA REQUEST NO. 5**

All documents reflecting or referring to the Lime Wire Entities' or Mark Gorton's state of mind, purpose or motivation for adopting or not adopting particular architectures, designs, structures or features for Lime Wire.

**OBJECTION TO DOCUMENT SUBPOENA REQUEST NO. 5**

In addition to the general objections, Mr. von Lohmann objects to this Request as requiring disclosure of information protected by the attorney-client privilege, the work product privilege, and the common interest privilege.  Mr. von Lohmann objects to this Request as vague, ambiguous, overly broad, burdensome, harassing and oppressive, and not reasonably calculated to lead to the discovery of relevant, admissible evidence.  Mr. von Lohmann objects to this Request

1  as seeking reports of Mr. von Lohmann as an unretained expert and his privileged

2  communications with, or work product for, other clients aside from the Lime Wire Entities and

3  Mr. Gorton.

4  **DOCUMENT SUBPOENA REQUEST NO. 6**

5  All documents relating to communications between Fred von Lohmann or EFF and the

6  Lime Wire Entities or Gorton relating to infringement-reducing technologies, including without

7  limitation filtering or acoustic-fingerprinting technologies.

8  **OBJECTION TO DOCUMENT SUBPOENA REQUEST NO. 6**

9  In addition to the general objections, Mr. von Lohmann objects to this Request as

10  requiring disclosure of information protected by the attorney-client privilege, the work product

11  privilege, and the common interest privilege.  Mr. von Lohmann objects to this Request as vague,

12  ambiguous, overly broad, burdensome, harassing and oppressive, and not reasonably calculated to

13  lead to the discovery of relevant, admissible evidence.  Mr. von Lohmann objects to this Request

14  as seeking reports of Mr. von Lohmann or EFF as unretained experts.

15  **DOCUMENT SUBPOENA REQUEST NO. 7**

16  All documents reflecting or referring to the Lime Wire Entities' or Mark Gorton's state of

17  mind, purpose or motivation for adopting or not adopting infringement reducing technologies,

18  including without limitation filtering or acoustic-fingerprinting technologies.

19  **OBJECTION TO DOCUMENT SUBPOENA REQUEST NO. 7**

20  In addition to the general objections, Mr. von Lohmann objects to this Request as

21  requiring disclosure of information protected by the attorney-client privilege, the work product

22  privilege, and the common interest privilege.  Mr. von Lohmann objects to this Request as vague,

23  ambiguous, overly broad, burdensome, harassing and oppressive, and not reasonably calculated to

24  lead to the discovery of relevant, admissible evidence.  Mr. von Lohmann objects to this Request

25  as seeking reports of Mr. von Lohmann as an unretained expert and his privileged

26  communications with, or work product for, other clients aside from the Lime Wire Entities and

27  Mr. Gorton.

28

12299407.2

PLAINTIFFS' OPP. TO EXPEDITED
MTN TO QUASH SUBPOENAS
MISC. 10-80276-JSW (06 CIV. 05936 (KMW))

1

**DOCUMENT SUBPOENA REQUEST NO. 8**

2

All documents relating to communications between Fred von Lohmann or EFF and the

3

Lime Wire Entities or Gorton relating to actual or anticipated litigation by copyright holders.

4

**OBJECTION TO DOCUMENT SUBPOENA REQUEST NO. 8**

5

In addition to the general objections, Mr. von Lohmann objects to this Request as

6

requiring disclosure of information protected by the attorney-client privilege, the work product

7

privilege, and the common interest privilege.  Mr. von Lohmann objects to this Request as vague,

8

ambiguous, overly broad, burdensome, harassing and oppressive, and not reasonably calculated to

9

lead to the discovery of relevant, admissible evidence.  Mr. von Lohmann objects to this Request

10

as seeking reports of Mr. von Lohmann or EFF as unretained experts.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12299407.2