Andrew P. Bridges (SBN: 122761)
abridges@winston.com
Matthew A. Scherb (SBN: 237461)
mscherb@winston.com
Robyn Callahan (SBN: 225472)
rcallahan@winston.com
Kathleen Lu (SBN: 267032)
klu@winston.com
WINSTON & STRAWN LLP
101 California Street
San Francisco, CA 94111-5802
Telephone:    (415) 591-1000
Facsimile:    (415) 591-1400

Attorneys for Movants
ELECTRONIC FRONTIER FOUNDATION and
FRED VON LOHMANN

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re Subpoenas to Electronic Frontier Foundation and Fred von Lohmann | **Case No. 3:10-mc-80276-JSW**<br>[Related to *Arista Records v. Lime Wire LLC*, No. 06-5936 (KMW) (S.D.N.Y.)]<br><br>**REPLY IN SUPPORT OF EXPEDITED MOTION TO QUASH SUBPOENAS**<br><br>Date:    no hearing date assigned<br>(pursuant to order by Judge White) |

# **TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................................1

II. MOVANTS SATISFY THEIR BURDEN OF DEMONSTRATING THE
    ATTORNEY-CLIENT PRIVILEGE EXISTS. ...................................................................2

    A.  Rule 45 Governs The Movants' Evidentiary Burden. ..............................................2

        1.  Plaintiffs Erroneously Rely Upon Inapposite Rule 26 Cases. .........................3

        2.  Movants Are Not Required to Create a "Record" To Assert the
                Privilege. ...........................................................................................................4

    B.  Lime Wire and von Lohmann (on behalf of EFF) Entered Into an Attorney-
        Client Relationship ...................................................................................................5

        1.  Mr. von Lohmann Is An Attorney. .................................................................5

        2.  Lime Wire Sought Legal Advice from Mr. von Lohmann In His
                Capacity As An Attorney. ...............................................................................5

        3.  Lime Wire Communicated With Mr. von Lohmann In Confidence. ..............6

        4.  Lime Wire Does Not Waive the Privilege. .....................................................7

III. RELEVANCE DOES NOT DESTROY PRIVILEGE. .......................................................7

IV. MOVANTS' AMICUS CURIAE BRIEF DOES NOT EVISCERATE PRIVILEGE. .........9

V.  NO CRIME-FRAUD EXCEPTION APPLIES. ..................................................................9

VI. PRIVILEGE ASIDE, THE SUBPOENAS REMAIN UNDULY BURDENSOME. .........10

    A.  Plaintiffs Misconstrue *Sheldon* and *Pamida* ..........................................................10

VII. THE PRIVILEGE CLAIMS ARE PROPERLY BEFORE THIS COURT AND RIPE
     FOR RULING. ..................................................................................................................11

VIII. COST-SHIFTING IS PROPER. .......................................................................................12

IX. CONCLUSION .................................................................................................................13

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Admiral Ins. Co. v. U.S. Dist. Court for Dist. of Arizona*,
  881 F.2d 1486 (9th Cir. 1989) .................................................................................................5

*Arista Records LLC v. Lime Wire LLC*,
  No. 06-5936 (KMW) (S.D.N.Y.) ..............................................................................................9

*Bryant v. Media Right Productions, Inc.*,
  603 F.3d 135 (2d Cir. 2010) .....................................................................................................8

*Burlington Northern & Santa Fe Railway Co. v. U.S . Dist. Court for the Dist. of Mont.*,
  408 F.3d 1142 (9th Cir. 2005) .................................................................................................3

*Cardtoons, L.C. v. Major League Baseball Ass'n*,
  199 F.R.D. 677 (N.D. Okla. 2001) ...........................................................................................8

*Compaq Computer Corp. v. Packard Bell Electronics, Inc.*,
  163 F.R.D. 329 (N.D. Cal. 1995) ...........................................................................................12

*Foltz v. State Farm Mut. Auto. Ins. Co.*,
  331 F.3d 1122 (9th Cir. 2003) .................................................................................................4

*Friends of Hope Valley v. Frederick Co.*,
  26 F.R.D. 643 (E.D. Cal. 2010) ...............................................................................................4

*In re Digital Equipment Corp.*,
  949 F.2d 228 (8th Cir. 1991) .................................................................................................12

*In re Grand Jury Proceedings*,
  87 F.3d 377 (9th Cir. 1996) ...................................................................................................10

*Pacific Gas & Elec. Co. v. Lynch*,
  No. C-01-3023, 2002 WL 32812098 (N.D. Cal. Aug. 19, 2002) ...........................................12

*Pamida, Inc. v. E.S. Originals, Inc.*,
  281 F.3d 726 (8th Cir. 2002) ......................................................................................8, 10, 11

*RSO Records, Inc. v. Peri*,
  596 F. Supp. 849 (S.D.N.Y. 1984) ...........................................................................................8

*Shelton v. American Motors Corp.*,
  805 F.2d 1323 (8th Cir. 1986) ...............................................................................................11

*Teoco Corp. v. Razorsight Corp.*,
  No. 08-mc-80032, 2008 WL 724863 (N.D. Cal. Mar 17, 2008) ...........................................11

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

*U.S. v. Bauer*,
    132 F.3d 504 (9th Cir. 1997) ..............................................................................................2

*U.S. v. Martin*,
    278 F.3d 988 (9th Cir. 2002) ........................................................................................9, 10

*United States v. Columbia Broad. Sys., Inc.*,
    666 F.2d 364 (9th Cir. 1982) ........................................................................................4, 12

**STATUTES**

Fed. R. Civ. P. 26(b)(1)................................................................................................................8

Fed. R. Civ. P. 45(c)(2)(B)(i)-(ii) ...............................................................................................12

Fed. R. Civ. P. 45(c)(3)................................................................................................................4

Fed. R. Civ. P. 45(d)(2)...........................................................................................................2, 3

**OTHER AUTHORITIES**

9 Moore's Federal Civil Procedure § 45.50[4] ..........................................................................11

http://mto.com/media/archive_news.cfm?type=Speaking%20Engagements&y=2010..................6

http://www.aclu.org/immigrants-rights-racial-justice/friendly-house-et-al-v-whiting-et-al ...........6

https://secure.aclu.org/site/SPageNavigator/100728_Arizona?s_src=UNW100001ACT&s_su
    bsrc=100728_Arizona_ip&JServSessionIdr004=hm03228on3.app224a..................................6

Winston & Strawn LLP
101 California Street
San Francisco, CA  94111-5802

## I. INTRODUCTION

Plaintiffs, the thirteen record labels which sued Lime Wire in the Southern District of New York ("Plaintiffs"), complain that Movants fail to "substantiate" their privilege claim because they did not submit declarations outlining the precise terms of the relationship (i.e. how it was memorialized, how long it lasted) and the nature of the communications. Opp. at 10-11. Not surprisingly, Plaintiffs cite no authority for such a requirement because declarations from counsel and client are not required. Nonetheless, Plaintiffs argue the Motion to Quash should be denied on this basis. The law does not support this contention.

In furtherance of this erroneous proposition, Plaintiffs question the authenticity of the representations made by counsel, claiming the moving papers are "attorney rhetoric" which does not provide facts. Opp. at 10. But Movants *do* provide facts. Movants show the existence of the attorney-client relationship and the context of the communications over which the privilege is being asserted. Motion at 3-4, 6. Plaintiffs are simply unsatisfied with the form in which those facts are presented.

Plaintiffs even attempt to dissuade this Court from ruling on the merits of the privilege for fear of "short-circuit[ing] privilege briefing" in the Southern District of New York. Opp. at 2. Plaintiffs represent that Judge Wood "invited further briefing," but decline to advise the Court that presently, there are no pending motions on the privilege claim, no additional briefing is underway, and apart from a snippet taken out of context, Judge Wood has not requested briefing on this issue.[1] Judge Wood states "[t]he Court will address issues related to privilege as they arise." These issues have not yet arisen in New York. Movants are citizens of California. At issue are subpoenas issued from the Northern District Court of California. Irrespective of what is happening, or may be happening at some unspecified point in time in the future, in the underlying action venued in New York, it remains that Movants are not subject to the jurisdiction of the New York court. Plaintiffs issued subpoenas from *this* Court to third parties in *this* jurisdiction. Thus, the question of privilege is properly before *this* Court and is ripe for consideration.

---

[1] Plaintiffs amplify a statement excerpted from Judge Wood's May 25, 2010 Amended Order in which the Court retracted a sentence of the earlier Order pertaining to advice Mr. von Lohmann allegedly provided to Lime Wire regarding document policies. *See* Boyd Dec., Ex. 3.

1

REPLY ISO EXPEDITED MOTION TO QUASH

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

Throughout the Opposition, Plaintiffs confuse the rules that govern a motion to quash. Plaintiffs apply their own inexplicable standards and cite cases related to protective orders, motions to compel and privilege logs, but none of those matters is presently before the Court. Plaintiffs did *not* move to compel. If Plaintiffs intend to seek relief by way of a motion to compel, they must actually file a motion. The passing reference in Plaintiffs' brief instructing the Court to compel does not constitute a motion and falls far short of Plaintiffs' burden. Likewise, Plaintiffs do not cite any authority mandating that Movants provide a privilege log in response to subpoenas.

Finally, Plaintiffs contend that, even if the privilege exists, it should be ignored because Plaintiffs purportedly need the information to inflate their damages claim. Opp. at 8. In many cases one might argue that penetrating the attorney-client privilege would reveal relevant information and significantly assist the opposing party in proving its claims. But that is not the standard, nor is it the case here. Courts are extremely and rightly reluctant to authorize invasion of the attorney-client privilege. *U.S. v. Bauer*, 132 F.3d 504 (9th Cir. 1997) ("preservation [of the attorney-client privilege] is essential to the just and orderly operation of our legal system"). Plaintiffs have failed to demonstrate circumstances justifying an invasion of the privilege.

Given the extreme burden these subpoenas place on the Movant third parties (as evidenced by the initial briefing alone), Movants will suffer prejudice without an ordering quashing the subpoenas.

## II. MOVANTS SATISFY THEIR BURDEN OF DEMONSTRATING THE ATTORNEY-CLIENT PRIVILEGE EXISTS.

### A. Rule 45 Governs The Movants' Evidentiary Burden.

Under Federal Rule of Civil Procedure 45(d)(2), asserting the attorney-client privilege merely requires the Movants put the parties on notice as to the nature of the information over which the privilege is claimed so as to allow the parties to assess the claim. R. 45(d)(2). Plaintiffs cite no requirement for *how* a responding party must communicate the nature of the privilege. In fact, no such requirement exists. Thus, irrespective of Plaintiffs' insinuations, Movants need not submit declarations or privilege logs to meet their burden under Rule 45(d)(2).

Here, there is no question that Plaintiffs understand the asserted privilege. Even before Movants filed their Motion, Plaintiffs had the information they needed to assess the privilege claim. Plaintiffs requested many of the same documents from the Lime Wire defendants[2] in the underlying case that they now seek from Movants. In response, Lime Wire asserted the attorney-client privilege and produced a detailed privilege log. Rather than taking steps to "assess and test" Lime Wire's claim of privilege, Plaintiffs instead now turn to another venue and seek the same information from nonparty Movants.

A close look at Plaintiffs' contentions reveals that their opposition is not actually based upon a lack of detail regarding the privileged communications. Plaintiffs' noise in that regard is superficial at best. Rather, their skepticism is driving the argument. They simply do not believe Movants or counsel that the attorney client relationship exists. *See, e.g.,* Opp. at 1. But Movants' burden does not require the subpoenaed party to remove all doubt of opposing counsel. Rule 45 only requires that the general nature of the communication be provided in order to facilitate an assessment of the asserted privilege. R. 45(d)(2). No further information, such as the precise date the relationship started, or the terms of the engagement, is needed for Plaintiffs to assess the privilege. Plaintiffs already *assessed* the information.

Plaintiffs real argument appears to be that the privilege should be set aside on their belief that the privileged communications are relevant to their damages arguments. However, Movants have sufficiently established the privilege under Rule 45(d)(2). Thus, relevance to a claim is not sufficient to overcome the attorney-client privilege.

### 1. Plaintiffs Erroneously Rely Upon Inapposite Rule 26 Cases.

The Motion to Quash the Subpoenas is governed by Rule 45, *not* Rule 26. Plaintiffs offer several cases discussing the burdens associated with Rule 26, including a motion for protective order. This ignores a critical point – Movants did not file a motion for protective order, and the Plaintiffs did not file a motion to compel, under Rule 26.

Citing *Burlington Northern & Santa Fe Railway Co. v. U.S . Dist. Court for the Dist. of Mont.*, 408 F.3d 1142 (9th Cir. 2005), Plaintiffs argue "boilerplate objections" fall short of the

---

[2] In the underlying action, Lime Wire collectively refers to Lime Wire LLC, Lime Group LLC, and the M.J.G. Lime Wire Family Limited Partnership.

3

REPLY ISO EXPEDITED MOTION TO QUASH

1  requisite showing *for a protective order*.  Opp. at 8.   Equally inapplicable is *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130-1131 (9th Cir. 2003), which concerns blanket protective orders issued under Rule 26(c), ***not a motion to quash*** under Rule 45(c)(3).

The applicable rule here is Rule 45.  Cases rationalizing the standards applicable to Rule 26 or Rule 34 motions do not apply.

### 2. Movants Are Not Required to Create a "Record" To Assert the Privilege.

Narrowly focused on form over substance, Plaintiffs confuse the issues in their discussion of Movants' burden.  Plaintiffs cite to a section of *Friends of Hope Valley v. Frederick Co.,* 26, F.R.D. 643, 650-651 (E.D. Cal. 2010), which pertains to the adequacy of a *party's* privilege log ***on a motion to compel*** (again under the wrong Rule), not the requisite standard for a *non-party* to establish an attorney-client privilege objection in response to ***a subpoena***.[3]  Plaintiffs did not move to compel, but inexplicably argue that the Motion to Quash should be analyzed in accordance with the same guidelines used in evaluating the adequacy of a party's privilege log descriptions in response to a document request under Rule 34.  Plaintiffs go as far as contending that in order for Movants to invoke the privilege "they must do [so] on the record" through a deposition, and impliedly, submit a privilege log. Opp. at 11.  Of course, they cite no authority for the proposition that a *nonparty* must provide a privilege log in a motion to quash or in response to a subpoena.

Nonparty witnesses are fundamentally different from parties and should not be forced to bear the expensive and time-consuming burden of preparing a privilege log containing information which Plaintiffs already have.  *See United States v. Columbia Broad. Sys., Inc.*, 666 F.2d 364, 371 (9th Cir. 1982) (unlike parties, nonparties do not generally bear the costs of discovery).  One of the objectives in moving to quash the subpoenas is to spare these nonparties – an individual attorney and a nonprofit firm – from the unwarranted burden of collecting, reviewing and producing documents and related privilege logs. Plaintiffs' disjunctive reasoning mistakenly puts the cart before the horse.

---

[3] Plaintiffs also conveniently ignore that the *Friends of Hope Valley* court upheld the privilege asserted by the nonprofit agency as to documents prepared by the nonprofit's counsel and administered to third parties by agents of the nonprofit.  *Friends of Hope Valley,* 26 F.R.D. 643 at 648.

4
REPLY ISO EXPEDITED MOTION TO QUASH

B.  **Lime Wire and von Lohmann (on behalf of EFF) Entered Into an Attorney-Client Relationship.**

An attorney-client relationship is formed when these essential elements are met: (1) legal advice of any kind is sought, (2) from a professional legal adviser in his capacity as such, (3) and communications relating to that purpose, (4) are made in confidence, (5) by the client, (6) which are at his instance permanently protected, (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived. *Admiral Ins. Co. v. U.S. Dist. Court for Dist. of Arizona,* 881 F.2d 1486, 1492 (9th Cir. 1989) (citations omitted)).

### 1.  Mr. von Lohmann Is An Attorney.

It is undisputed that Mr. von Lohmann is an attorney. Opp. at 1, 4.; *see also* Declaration of Fred von Lohmann ("von Lohmann Dec."), ¶ 1.[4] While employed by the Electronic Frontier Foundation ("EFF") he worked as an attorney, thereby serving the role of a "professional legal adviser." von Lohmann Dec., ¶ 2; *see also* Declaration of Cindy Cohn ("Cohn Dec."), ¶¶ 4-6.

### 2.  Lime Wire Sought Legal Advice from Mr. von Lohmann In His Capacity As An Attorney.

Mark Gorton, Lime Wire's Chairman and Director, contacted Mr. von Lohmann at the EFF in or about 2002 seeking legal advice for Lime Wire. von Lohmann Dec., ¶ 5; *see also* Declaration of Mark Gorton ("Gorton Dec."), ¶ 2.

Plaintiffs suggest that Mr. von Lohmann acted in the capacity as a public advocate, not an attorney, in rendering advice to Lime Wire because he was employed by a nonprofit organization. But the fact that he worked for EFF while providing legal advice to Lime Wire is irrelevant. Nonprofit advocacy organizations regularly enter into protected attorney-client relationships. Cohn Dec., ¶¶ 2-3. Plaintiffs cite no authority to the contrary. For example, many nonprofits, such as the American Civil Liberties Union and the Mexican American Legal Defense and Education Fund, engage in advocacy concerning legal and social policy but nonetheless maintain confidential

---

[4] Although not required to do so, Movants submit declarations from Mark Gorton, the Chairman and sole Director of Lime Wire; Cindy Cohn, General Counsel of EFF, and Fred von Lohmann, attorney and former employee of EFF.

5

REPLY ISO EXPEDITED MOTION TO QUASH

1   attorney-client relationships with their clients.[5]  Plaintiffs' suggestion that attorneys may not both

2   serve as attorney and engage in advocacy or activism is both absurd and ignores the First

3   Amendment.  This would also be a surprise to the many seasoned attorneys who work for those

4   organizations – not to mention their clients.

5         Plaintiffs make much of an article Mr. von Lohmann authored in 2001 about the state of the

6   law *as of 2001* on secondary liability for copyright infringement ("P2P article").  *See* Boyd

7   Declaration in support of Plaintiffs' Opposition ("Boyd Dec."), Ex. 4.  The P2P article says nothing

8   about Lime Wire.  *Id.*  Although the article pre-dates Mr. Lohmann's relationship with Lime Wire

9   (von Lohmann Dec., ¶ 5), and even pre-dates his employment at EFF (von Lohmann Dec. ¶ 2),

10  Plaintiffs ask the Court to infer that he provided advice to Lime Wire consistent with the themes in

11  the 2001 version of the P2P article.  Plaintiffs make this argument in a vacuum and fail to explain the

12  significance of either the article itself or its connection to the issues before this Court on the Motion

13  to Quash.

14        Plaintiffs cite no authority to suggest that lawyers may not publicly comment on the law.  In

15  fact, the opposite is true.  Lawyers at both nonprofit and for-profit law firms, including Plaintiffs'

16  counsel, regularly write law review articles and books and give presentations or speeches on various

17  aspects of the law.[6]  Such general "advice" does not preclude the existence of an attorney-client

18  relationship or waive the attorney-client privilege when an attorney later counsels a client on a

19  similar subject.  If the Court applies Plaintiffs' reasoning, all attorney-client relationships could be

20  easily unraveled.

21        **3.**   **Lime Wire Communicated With Mr. von Lohmann In Confidence.**

22        The communications as between Lime Wire and Mr. von Lohmann were confidential.  von

23  Lohmann Dec., ¶ 7; Gorton Dec., ¶ 3.  Neither Lime Wire nor its counsel breached that

24  confidentiality.  *Id.*

---

[5] *See, e.g.*, ACLU's activism in conjunction with a Senate Bill where Munger Tolles is co-counsel. http://www.aclu.org/immigrants-rights-racial-justice/friendly-house-et-al-v-whiting-et-al (main page); https://secure.aclu.org/site/SPageNavigator/100728_Arizona?s_src=UNW100001ACT&s_subsrc=100728_Arizona_ip&JServSessionIdr004=hm03228on3.app224a (ACLU petition urging governors to reject bills similar to SB1070).

[6] *See* http://mto.com/media/archive_news.cfm?type=Speaking%20Engagements&y=2010 (list of speaking engagements by Munger Tolles attorneys for 2010).

Winston & Strawn LLP
101 California Street
San Francisco, CA  94111-5802

### 4. Lime Wire Does Not Waive the Privilege.

Lime Wire continues to assert the attorney-client privilege. Gorton Dec., ¶ 4; von Lohmann Dec., ¶ 9; and Cohn Dec. ¶ 9. In fact, the Lime Wire defendants have withheld documents on the basis of its attorney-client relationship with EFF and von Lohmann, exercising caution not to waive the privilege attached to those communications and documents by providing Plaintiffs with a privilege log.

## III. RELEVANCE DOES NOT DESTROY PRIVILEGE.

Plaintiffs declare that privilege should be overlooked based solely upon the purported relevance to Plaintiffs' damages claim. Opp. at 8. Indeed, they appear to speculate that granting Plaintiffs access to each of the privileged communications between Lime Wire and EFF would ease Plaintiffs' burden in proving state of mind *if* the communications reveal evidence of willfulness. *But* Plaintiffs plainly have no idea what the communications say, what concerns Lime Wire addressed with counsel, or what advice was given to Lime Wire, because this all constitutes privileged attorney-client communications. Without any evidence that the communications would reveal evidence of willfulness, Plaintiffs are only speculating when they claim relevance.

To bolster their position on relevance, Plaintiffs turn to a hearing transcript from a proceeding before Judge Wood in which Mr. Gorton is questioned as to the nature of advice Mr. von Lohmann provided. *See* Boyd Dec., Ex. 10. But Plaintiffs' reliance on this testimony is especially questionable given it is heavily excerpted. *Id.* While Plaintiffs represent that the transcript is evidence that Mr. von Lohmann provided advice to Lime Wire regarding document destruction, a review of the testimony shows that Mr. Gorton never even responded to that question. *Id.* at 48:18-22. The Court sustained an objection by Mr. Sommer and the question was not re-asked (at least not in the section of the transcript Plaintiffs provided the Court). *Id.* Likewise, Plaintiffs omit the page containing Mr. Gorton's response to a question about whether Mr. von Lohmann provided any advice specifically related to the *Grokster* case. *Id.* at 49:22-25. Thus, the basis for Plaintiffs' relevance claim is unsubstantiated.

7
REPLY ISO EXPEDITED MOTION TO QUASH

Substantively, neither of the cases Plaintiffs cite is binding upon this Court, nor are they factually on point.[7] Even if the Court concludes that Lime Wire's document retention policy is relevant to damages, relevance alone is not the test. Information must be both nonprivileged *and* relevant to be discoverable. *See* F.R.C.P. 26(b)(1) ("Parties may obtain discovery regarding any *nonprivileged* matter that is *relevant* . . . ." (emphasis added)); *see also Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726 (8th Cir. 2002) (Party seeking "relevant information uniquely known" by nonparty "still must demonstrate that there has a been a waiver of the attorney-client privilege"). The subpoenas seek to uncover communications that go to the heart of the attorney-client relationship. *See e.g.*, Scherb Dec., Exs. A and B, Requests 1, 3, 4, 6, 8.

Apart from the "state of mind" communications about the purported document retention policy, Plaintiffs make no arguments with respect to any other types of documents. Plaintiffs appear to concede that discovery unrelated to Lime Wire's subjective intent regarding document retention is irrelevant. Thus, the requests pertaining *to Movants'* "knowledge, understanding, or analysis of the actual or potential use of Lime Wire to share copyrighted materials," falls outside of the universe of relevant information for purposes of damages discovery. *See* Declaration of Matt Scherb in support of Movants' Expedited Motion to Quash ("Scherb Dec."), Exs. A and B, Request 2. Likewise, Requests 3 and 4 seek information relating to "other peer-to-peer file sharing networks" which by Plaintiffs' own analysis is neither relevant nor necessary. *Id.*

Even if Plaintiffs could somehow convince the Court as to the relevance of *every* subpoenaed request, Plaintiffs cannot surmount the hurdle of the privilege protection. Plaintiffs' relevance argument turns the standard on its head. Plaintiffs may not obtain privileged information merely because they speculate it may help support their case. *Cardtoons, L.C. v. Major League Baseball Ass'n*, 199 F.R.D. 677, 683 (N.D. Okla. 2001) ("It may be easier for Plaintiff to prove Plaintiff's case by having access to documents which are otherwise protected by attorney-client or work product privileges. This is often true. The Court will not compel disclosure of privileged documents simply to permit a party to more easily prove the elements of its cause of action.").

---

[7] *RSO Records, Inc. v. Peri*, 596 F. Supp. 849 (S.D.N.Y. 1984); *Bryant v. Media Right Productions, Inc.*, 603 F.3d 135 (2d Cir. 2010).

### IV. MOVANTS' *AMICUS CURIAE* BRIEF DOES NOT EVISCERATE PRIVILEGE.

Along with eight other organizations, the Electronic Frontier Foundation joined an *amicus curiae* brief in *Arista Records LLC v. Lime Wire LLC* to draw the New York Court's attention to complex and important issues concerning secondary liability in copyright law. *See* Boyd Dec., Ex. 5. Because the factual record in the case was under seal, *Amici*, including EFF, addressed the legal standard at issue and did not discuss how the standard would apply to the facts of the *Lime Wire* case. Plaintiffs call into question the validity of the attorney-client privilege assertions on the basis that EFF contributed to the *amicus* brief. Opp. at 1. Plaintiffs argue that because Mr. von Lohmann and the EFF provided legal counsel to Lime Wire before the submission of the *amicus* brief, they were not neutral.

Plaintiffs fail to articulate the significance of the *amicus* brief (apart from using it to attack the veracity of Movants' representations of the existence of a privilege), so it remains unclear what Plaintiffs hope to accomplish with this argument. There is no requirement in the Southern District of New York that an *amicus* disclose whether it ever served as counsel for a party previously, and that EFF did not do so is irrelevant to the issue of privilege. Nowhere in the brief, nor anywhere else, for that matter, did EFF ever claim that it was not counsel to Lime Wire, nor did EFF ever take a position contrary to the interests of Lime Wire.

Plaintiffs cite no authority stating counsel for a party (whether past or current) cannot join in an *amicus* brief that is not adverse to the position taken by the client. Even if a court disfavored such a filing, it would at most decline to consider the *amicus* brief. The contention that an attorney's joining of an amicus briefing would destroy the *client's* privilege is simply absurd.

### V. NO CRIME-FRAUD EXCEPTION APPLIES.

With feeble arguments available to challenge the existence of the privilege, Plaintiffs turn to the crime-fraud exception. Given Plaintiffs' omission of any legal authority addressing crime-fraud, it appears that Plaintiffs have not even convinced themselves of its applicability.

The party seeking to undermine privilege "bears the burden of proving that the attorney-client privilege does not apply because of the crime-fraud exception." *U.S. v. Martin*, 278 F.3d 988, 1001 (9th Cir. 2002). "It is not enough for the government to have a 'sneaking suspicion the client

1  was engaging in or intending to engage in a crime or fraud when it consulted the attorney.'" *Id.*
2  (quoting *In re Grand Jury Proceedings*, 87 F.3d 377, 381 (9th Cir. 1996)).

3  Plaintiffs offer no factual support that Mr. von Lohmann or EFF ever recommended "that a party purge documents in order to get rid of incriminating information." Plaintiffs merely repeat, *ad nauseam,* the excerpt from Judge Wood's initial May 11, 2010 opinion. Opp. at 2, 6-7. But upon being alerted that statement mischaracterized the contents of attorney-client privileged communications and was not supported by the record, Judge Wood *removed* the line from her amended opinion. Boyd Dec., Ex. 3. Plaintiffs' incessant reference to the original order is equivalent to citing a case that has been overturned.

Plaintiffs fail to establish the existence of a crime-fraud exception to the asserted privilege.

## VI. PRIVILEGE ASIDE, THE SUBPOENAS REMAIN UNDULY BURDENSOME.

To the extent that Plaintiffs seek documents that are not privileged, such documents are either already in Plaintiffs' possession or would call for disclosure of unretained expert testimony by EFF or Mr. von Lohmann. Plaintiffs point to communications on a "public listserv or mailing lists" and "general updates shared with numerous recipients" and argue that at minimum, Movants should be required to produce all of those communications. It is plainly harassing to require EFF to investigate and provide information about every public communication that might have reached Lime Wire. Plaintiffs neglect to mention that Lime Wire produced any nonprivileged documents in its possession years ago.[8] Plaintiffs' sole purpose for seeking identical documents from Movants can only be to harass and unduly burden third parties.

Plaintiffs fail to address the breadth of the subpoenaed information and make no attempt to limit the scope. Thus, the subpoenas remain unreasonably broad, all-encompassing and burdensome.

### A. Plaintiffs Misconstrue *Sheldon* and *Pamida*

While *Sheldon* is not binding upon this Court, its reasoning is both sound and applicable. The cautions issued by *Sheldon* still apply. "The harassing practice of deposing opposing counsel (unless that counsel's testimony is crucial and unique) appears to be an adversary trial tactic that does nothing for the administration of justice but rather prolongs and increases the costs of litigation,

---

[8] To the extent that Lime Wire turned over any privileged materials (which Movants are unaware of), disclosure was inadvertent and does not waive privilege.

1  demeans the profession, and constitutes an abuse of the discovery process." *Shelton v. American
2  Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986).

3      Plaintiffs argue that, because Movants are not litigation counsel, deposing Movants would
4  not reveal litigation strategy.  This is not the case.  While Movants are not litigation counsel to Lime
5  Wire, the Lime Wire litigation is currently ongoing.  Further, Mr. von Lohmann and EFF have
6  discussed the case with Lime Wire's litigation counsel.

7      Crucial to the *Pamida* court's decision to allow discovery was the fact that relevant
8  information was *uniquely* within the attorneys' knowledge.  Here, Plaintiffs may seek the identical
9  information from Defendants.  Testimony by Movants is neither crucial nor unique.  Plaintiffs offer
10  no explanation as to why this information must come from third parties, rather than Defendants.

## VII. THE PRIVILEGE CLAIMS ARE PROPERLY BEFORE THIS COURT AND RIPE FOR RULING.

13      Contrary to Rule 45 and this Court's own precedent, Plaintiffs suggest that this Court defer to
14  Judge Wood of the Southern District of New York in handling the Movants' motion to quash.
15  "Normally, disputes over discovery from a non-party are decided by the court which issued the
16  subpoena, unless the non-party consents that the matter be resolved by a court in another district."
17  *Teoco Corp. v. Razorsight Corp.,* No. 08-mc-80032, 2008 WL 724863, at *1 (N.D. Cal. Mar 17,
18  2008) (White, J.) (citing Rule 45).  District courts lack authority to transfer non-party discovery
19  disputes out of district of the subpoenaed party.  *Id.*  The further rationale for this, as one treatise
20  explains, is to protect non-parties from the burden, cost, and inconvenience of litigating in a distant
21  forum, a harassing tactic almost any subpoena issuing party might routinely employ.  9 Moore's
22  Federal Civil Procedure § 45.50[4].

23      Both the Electronic Frontier Foundation and Mr. von Lohmann reside in San Francisco,
24  within the Northern District of California, and the subpoenas they seek to quash issued from the
25  Northern District of California.  Neither are parties to the *Lime Wire* action in the Southern District
26  of New York.  Thus, the questions presented in the Motion to Quash are properly before *this* Court,
27  and no other court has jurisdiction.  *See Pamida*, 281 F.3d at 729 n.3 (motion to quash properly
28  before District Court that issued subpoena, not District where underlying action was pending).

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

1  If Plaintiffs wish to move to compel, which they have not yet done, they *must* do so in the
2  Northern District of California. R. 45(c)(2)(B)(i)-(ii) ("the serving party may move the *issuing* court
3  for an order compelling production" and "[t]hese acts may be required *only* as directed in the order)
4  (emphasis added); *In re Digital Equipment Corp.*, 949 F.2d 228, 230 (8th Cir. 1991) (District where
5  underlying action is pending has no jurisdiction to rule on objections to subpoenas issued by another
6  District Court).

## VIII. COST-SHIFTING IS PROPER.

As nonparties, Movants should not bear the cost of Plaintiffs' litigation. Federal Rule of Civil Procedure 45(c)(2)(B)(ii) specifically provides that an order compelling production under a subpoena "***must*** protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." (emphasis added). Movants are neither parties to nor officers of any parties to the *Lime Wire* litigation. Plaintiffs do not claim otherwise.

Instead they argue that their requests are "narrowly tailored." But, as Plaintiffs admit, their Requests demand, a host of documents. Production will require substantial attorney time to collect, review and produce responsive documents.

Plaintiffs point to no authority to suggest that a *nonparty* should generally bear the costs of production sought by a party. In fact, the case they cite pertains to a *party*. Opp. at 14. The Courts have recognized that the burdens of discovery are different for nonparties. *United States v. Columbia Broadcasting Systems*, 666 F.2d at 371. ("Nonparty witnesses are powerless to control the scope of litigation and discovery, and should not be forced to subsidize an unreasonable share of the costs of a litigation to which they are not a party."); *see also Compaq Computer Corp. v. Packard Bell Electronics, Inc.*, 163 F.R.D. 329, 339 (N.D. Cal. 1995) ("[C]ourts are required to condition compelled production by a non-party on the payment of at least some portion of costs of production by the serving party."); and *Pacific Gas & Elec. Co. v. Lynch*, No. C-01-3023, 2002 WL 32812098, at *3 (N.D. Cal. Aug. 19, 2002) (awarding initial reimbursement of $20,000).

Should Movants be required to respond *in any way* to the subpoenas, Plaintiffs are obliged to cover the costs of so doing.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

## IX. CONCLUSION

The EFF and Mr. von Lohmann have sufficiently established the existence of an attorney-client relationship with Lime Wire. While Plaintiffs obviously wish to see the privileged information, they have failed to establish any lawful means of doing so. Movants respectfully request the Court quash the subpoenas, or, in the alternative, substantially limit their scope, as well as shift all costs and fees of compliance to Plaintiffs.

Dated:  November 16, 2010                      WINSTON & STRAWN LLP


By:   /s/
      Andrew P. Bridges
      Robyn Callahan
      Matthew A. Scherb
      Kathleen Lu

Attorneys for Movants.
ELECTRONIC FRONTIER FOUNDATION and
FRED VON LOHMANN

SF:296530.2