Andrew P. Bridges (SBN: 122761)
abridges@winston.com
Matthew A. Scherb (SBN: 237461)
mscherb@winston.com
Robyn Callahan (SBN: 225472)
rcallahan@winston.com
Kathleen Lu (SBN: 267032)
klu@winston.com
WINSTON & STRAWN LLP
101 California Street
San Francisco, CA 94111-5802
Telephone:    (415) 591-1000
Facsimile:    (415) 591-1400

Attorneys for Movants
ELECTRONIC FRONTIER FOUNDATION and
FRED VON LOHMANN

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re Subpoenas to Electronic Frontier Foundation and Fred von Lohmann | **Case No. 3:10-mc-80276-JSW**<br>[Related to *Arista Records v. Lime Wire LLC*, No. 06-5936 (KMW) (S.D.N.Y.)]<br><br>**SUPPLEMENTAL DECLARATION OF CINDY COHN IN SUPPORT OF EXPEDITED MOTION TO QUASH SUBPOENAS**<br><br>[Pursuant to the Court's November 18, 2010 Order (Dkt. #16)]<br><br>No hearing date assigned |

1

SUPPLEMENTAL COHN DECLARATION IN SUPPORT OF MOTION TO QUASH SUBPOENAS

I, Cindy Cohn, declare pursuant to 28 U.S.C. § 1746 as follows:

1. I am the General Counsel and Legal Director for the Electronic Frontier Foundation ("EFF") and furnish this declaration on behalf of EFF in response to the Court's Order of November 18, 2010 (Doc. #16).

2. In short, the answers to the Court's questions are: yes, some non-privileged, potentially responsive documents exist; and yes, there are EFF personnel other than Mr. von Lohmann who communicated with Lime Wire. These short answers require explanation.

3. First, I explain the efforts we have taken to get the Court the answers it has requested. I have attempted to locate and preliminarily (and hastily, given the time allotted) review documents in existence at EFF that are responsive to the requests for production and the deposition topics identified in the subpoena to determine whether any non-privileged documents exist in order to answer question (1) of the Order. I have also attempted to canvass the 31 current EFF employees to determine whether Mr. Gorton or other personnel from Lime Wire Entities had discussions with any EFF personnel other than Mr. Von Lohmann, and if so, the identity of such personnel and their positions at EFF in order to answer question (2) of the Order. I cannot certify that my review was complete and I have not had an opportunity to survey previous EFF employees apart from any emails I reviewed of current EFF employees on which they were copied.

4. Part I below constitutes the full response to the first question and Part II constitutes the response to the second question.

I. EXISTENCE OF NON-PRIVILEGED, RESPONSIVE DOCUMENTS

5. The Court asked whether any non-privileged documents exist that are responsive to the requests for production and deposition topics identified in the subpoenas. In short: yes.

6. Given the extreme breadth of the subpoenas' requests and the lack of any time limitation on them, documents exist that may conceivably be deemed responsive to the requests as phrased, but which are either subject to attorney-client and work product privileges that EFF must maintain on behalf of *other clients*, or which are not reasonably calculated to lead to the discovery of admissible evidence in the damages phase of the *Lime Wire* case.

7. Such potentially responsive documents are mainly responsive to the two requests that seek documents beyond communications between EFF and Lime Wire, specifically "all documents reflecting or referring to the actual or potential use of Lime Wire to share copyrighted materials (Request for Production of Documents No. 2) and "EFF's knowledge, understanding or analysis of the actual or potential use of Lime Wire to share copyrighted materials" (Deposition Topic 2)).

8. For instance, in my review I located documents that are *not* communications between EFF and Lime Wire, that could conceivably be responsive to the broad categories of the subpoena, but that are covered by EFF's attorney-client or attorney work product privileges either within EFF or with *other clients*. These include:

   a. Discussions with actual or potential clients about their use of Lime Wire, including as part of EFF's intake process for potential litigation. It also includes attorney-client discussions and attorney work product mentioning Lime Wire as part of EFF's representation of others, including MusicCity/StreamCast, our client in the case entitled *MGM Studios, Inc. v. Grokster* between 2001 and 2006.

   b. Communications from individuals who were sued by the various record industry plaintiffs based on their use of Lime Wire in a well-publicized campaign that ran from approximately 2003 until late 2008. Several courts, including the Federal District Court in the E.D. of Pennsylvania, required that a notice be given to all of the thousands of individual defendants in those cases telling them that the EFF, along with Public Citizen and the ACLU, would assist them in trying to locate counsel. As a result of these Court notices and EFF's general role in assisting those facing legal action for their online activities, EFF received confidential requests from many individuals seeking help locating legal assistance in these lawsuits. In some of that correspondence, Lime Wire is mentioned.

   d. Correspondence related to the development of the secondary liability principles amicus brief that was filed in the *Lime Wire* litigation in New York on behalf of nine organizations, including EFF and the Consumer Electronics Association, the Computer and Communications Industry Association and Libraries Association. The brief itself, of course, is public and equally available to plaintiffs.

9. I also located documents that were not communications between EFF and Lime Wire, and not subject to our attorney-client or work product privileges held by EFF or others, but these documents do not seem relevant to the *Lime Wire* dispute. These categories include:

   a. Documents that are publicly available or otherwise equally available to the Plaintiffs, such as documents on EFF's website and documents used as part of public presentations given by EFF staff attorneys that mention Lime Wire as part of describing the various lawsuits arising from P2P applications or otherwise. I

Winston & Strawn LLP
101 California Street
San Francisco, CA  94111-5802

can find no indication that any of those materials were ever viewed by anyone at Lime Wire.

b. Drafts of materials prepared for our website, including our discussions of various P2P cases and the RIAA litigation campaign noted above.

c. Documents internal to EFF such as EFF's internal mailing lists that include portions of news articles mentioning Lime Wire and discussions of Lime Wire among other P2P applications or as part of the network neutrality discussions inside EFF. These internal lists include only EFF staff, Board, Fellows and interns, all of whom are covered by a nondisclosure agreement. Again, there is no indication that any of these materials were ever conveyed to or seen by anyone at LimeWire.

d. Internal administrative reports that mention Lime Wire as part of reporting about the work done by EFF employees. For instance, EFF employees reported internally that they worked on the Lime Wire amicus.

e. Communications with third parties, such as the media, that mention Lime Wire, but do not contain confidential information about Lime Wire, were not shared with Lime Wire, and which would not be relevant to the Lime Wire litigation.

10. Finally, I located categories of documents that are communications between EFF and Lime Wire but that are so far afield of the current litigation that they are not even responsive to the subpoena, let alone likely to lead to the discovery of admissible evidence. For example, I located a few communications from 2008 in which EFF's Senior Staff Technologists Peter Eckersley and Seth Schoen and a technical employee at Lime Wire discussed EFF's work on network neutrality.

## II. IDENTIFICATION OF PERSONNEL AT EFF HAVING COMMUNICATIONS WITH LIMEWIRE

11. Based upon my inquiry and the information available to me, I believe the following EFF personnel had discussions with personnel at the Lime Wire entities:

- Michael Kwun – former Senior Staff Attorney
- Gwen Hinze – International Director (providing Lime Wire with contact information for individuals interested in the international copyright issues, and possibly discussing international copyright trends)
- Danny O'Brien – formerly International Activist (providing Lime Wire with contact information for individuals interested in the international copyright issues and possibly discussing international copyright trends)

- Eddan Katz – International Affairs Director (providing Lime Wire with contact information for individuals interested in the international copyright issues and possibly discussing international copyright trends)
- Peter Eckersley – Senior Staff Technologist (regarding network neutrality)
- Seth Schoen – Senior Staff Technologist (regarding network neutrality)

12. It also appears that Corynne McSherry, Senior Staff Attorney and Jason Schultz, a former Senior Staff Attorney, and I were copied on a handful of emails with Lime Wire personnel but did not otherwise participate in any direct correspondence with Lime Wire. Finally it seems that two Lime Wire employees (one of whom I believe has left the company) have received EFF's newsletter since 2005. The newsletter is also always publicly available on our website.

I declare under penalty of perjury that the foregoing is true and correct.

Executed: November 19, 2010

                                                /s/ Cindy Cohn
                                                  Cindy Cohn

**CONCURRENCE IN FILING**

Cindy Cohn concurs in the filing of this pleading.

Dated: November 19, 2010        By:  /s/ - Matthew A. Scherb
                                                          Matthew A. Scherb