Andrew P. Bridges (SBN: 122761)
abridges@winston.com
Matthew A. Scherb (SBN: 237461)
mscherb@winston.com
Robyn Callahan (SBN: 225472)
rcallahan@winston.com
Kathleen Lu (SBN: 267032)
klu@winston.com
WINSTON & STRAWN LLP
101 California Street
San Francisco, CA 94111-5802
Telephone:   (415) 591-1000
Facsimile:   (415) 591-1400

Attorneys for Movants
ELECTRONIC FRONTIER FOUNDATION and
FRED VON LOHMANN

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re Subpoenas to Electronic Frontier Foundation and Fred von Lohmann | **Case No. 3:10-mc-80276-JSW**<br>[Related to *Arista Records v. Lime Wire LLC*, No. 06-5936 (KMW) (S.D.N.Y.)]<br>**OPENING SUPPLEMENTAL BRIEF IN SUPPORT OF EXPEDITED MOTION TO QUASH SUBPOENAS**<br>Date:   no hearing date assigned |

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................................1

II. STATUS OF EFFORTS TO MEET AND CONFER TO RESOLVE THIS DISPUTE ..........2

III. THE REQUESTS FOR PRODUCTION AS DRAFTED ARE OVERLY BROAD ...............3

    A. Movants Have Offered to Search for Relevant Documents............................................4

    B. Respondents Wrongfully Demand that Non-Parties Engage in Discovery in Lieu of Parties. ..................................................................................................................5

        1. Documents produced by Lime Wire ................................................................5

        2. The Pho Listserv ..............................................................................................6

    C. Irrelevant categories of documents ................................................................................8

        1. Communications with third parties ..................................................................8

        2. Presentations to the public ...............................................................................9

        3. Website .............................................................................................................9

        4. Internal listservs ................................................................................................9

    D. As a Non-Profit Legal Services Organization and Individual, Propounding a Privilege Log Would Be an Enormous Burden for Movants.......................................10

        1. Movants' privileged documents relating to clients other than Lime Wire are wholly irrelevant to Lime Wire's damages. .....................................10

        2. Privileged communications with Lime Wire .................................................11

IV. MOVANTS' PROPOSAL WOULD SIGNIFICANTLY REDUCE THE BURDEN ON MOVANTS. ....................................................................................................................12

V. DEPOSITIONS..................................................................................................................13

VI. IN THE EVENT THE COURT PERMITS ANY DISCOVERY, IT SHOULD OCCUR UNDER A STRICT PROTECTIVE ORDER IN LIGHT OF THE FAR-REACHING ADVERSARIAL POSITIONS OF THE RESPONDENTS AND THE MOVANTS IN MULTIPLE CASES. .................................................................................14

VII. COST-SHIFTING IS PROPER. .........................................................................................14

VIII. CONCLUSION ..................................................................................................................14

Winston & Strawn LLP
101 California Street
San Francisco, CA  94111-5802

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Dibel v. Jenny Craig, Inc.*,
  2007 W.L. 2220987 (S.D. Cal. 2007) ...................................................................................5

*Richards of Rockford Inc. v. Pacific Gas & Electric Co.*,
  71 F.R.D. 388 (N.D. Cal. 1976) ............................................................................................1

*Shelton v. American Motors Corp.*,
  805 F.2d 1323 (8th Cir. 1986) ......................................................................................5, 13

*Solarex Corp. v. Arco Solar, Inc.*,
  121 F.R.D. 163 (E.D.N.Y. 1988) ..........................................................................................1

*United States v. Columbia Broadcasting Systems*,
  666 F.2d 364 (9th Cir. 1982) ................................................................................................4

**OTHER AUTHORITIES**

Fed. R. Civ. P. 45(c)(2)(B)(ii) ......................................................................................................14

## I. INTRODUCTION

In November, Respondents, a group of "major record music companies," issued subpoenas to the Electronic Frontier Foundation ("EFF"), a small non-profit, and a former employee, Fred von Lohmann, demanding extensive document production and deposition testimony. The EFF is a not-for-profit charitable organization with only 32 employees, of whom 14 are attorneys serving the public interest. McSherry Decl. ¶ 2. EFF is dedicated to championing the public interest in innovation, civil liberties, and privacy in the digital world through education and legal services, including providing *pro bono* legal services. Due to the small size of the organization, EFF cannot easily absorb the time or expense of searching for, reviewing, logging, and producing the vast range of documents that are potentially responsive to the subpoena issued by Respondents in order to determine which documents are actually responsive, relevant, and non-privileged. Every hour spent responding to these subpoenas is an hour that takes away from EFF's important public service work, including work for its own clients. EFF employees have already spent dozens of hours to attempt to determine the volume of documents at issue, to say nothing of the time it would take comprehensively to search for and review responsive documents and then to determine whether they are privileged. Mr. von Lohmann is an individual and thus even less able to comply with such a broad and onerous subpoena. Respondents, on the other hand, are large commercial entities that "produce, manufacture and distribute the vast majority of copyrighted sound recordings sold in the United States" with correspondingly vast financial resources. Opp. Mot. 3.

EFF and Mr. von Lohmann moved to quash the subpoenas on the ground they primarily called for privileged information and, where they did not call for privileged information, sought irrelevant information or information already within Respondents' custody or control. Movants' status as non-parties to the underlying Lime Wire litigation exacerbates the undue burden Respondents seek to place on Movants. *See Richards of Rockford Inc. v. Pacific Gas & Electric Co.*, 71 F.R.D. 388, 390 (N.D. Cal. 1976); *Solarex Corp. v. Arco Solar, Inc.*, 121 F.R.D. 163, 179 (E.D.N.Y. 1988).

Movants' counsel met and conferred with Respondents' counsel in good faith to narrow these broad requests so that Movants could search for and produce responsive, relevant, non-privileged

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

1  documents (if any) without having to search for, review, evaluate for privilege, and, where
2  appropriate, log as privileged an enormous volume of documents that are in no way relevant to
3  damages in the underlying *Lime Wire* litigation.  Nevertheless, Respondents continue to insist on
4  imposing inordinate burdens on the non-party Movants by forcing them to search for and review
5  thousands of documents, even though the universe of non-privileged relevant documents is likely
6  minuscule.

7  Given the impasse, Movants and Respondents have agreed to present these issues to the
8  Court in opening supplemental briefs on December 9, 2010, followed by reply supplemental briefs
9  on December 13, 2010.

## II. STATUS OF EFFORTS TO MEET AND CONFER TO RESOLVE THIS DISPUTE

Despite two face-to-face meetings and further efforts by telephone, the parties were unable to reach agreement on the scope of this third-party discovery.  The final positions communicated by the parties were as follows:

- Respondents offered to limit document requests 2, 5, and 7 by qualifying them with the following preface:  All documents referring to, related to, or constituting communications between EFF and Lime Wire….
    - Movants offered to accept that limitation subject to the following additional conditions:
        - Movants would produce all responsive, non-privileged documents with that limitation in the possession, custody, or control of Fred von Lohmann, but only documents "constituting" (not merely referring to or related to) with respect to current employees of EFF.
        - Public email mailing lists and listservs would not be included in the production.
            - Respondents rejected that proposal.
- Respondents offered to forgo production of the current EFF website.
    - Movants wished also to restrict production of obsolete website pages or drafts of the website, but Respondents refused to agree to such a restriction.

- Movants offered to produce privilege logs for privileged matter involving communications with Lime Wire but not involving other EFF clients, whom Movants feel they should not have to identify in a log.
    - Respondents appeared to accept that proposal on the condition that, if a document reflected a joint privilege of Lime Wire and another EFF client, Movants would list such a document on a privilege log.
    - Movants find that proposal acceptable.
- Movants proposed that the question of depositions be deferred until after a decision on documents and until after Respondents' counsel reviewed any documents that get produced, at which time the parties could meet and confer about the proper scope, if any, of depositions.
    - Respondents rejected that proposal.
- The parties did not meaningfully discuss cost-shifting in light of the breakdown on the earlier points.
- The parties did not discuss the nature of a protective order in light of the breakdown on the earlier points.

### III. THE REQUESTS FOR PRODUCTION AS DRAFTED ARE OVERLY BROAD

As the Court requested, Movants here describe the documents with sufficient specificity to permit the Court to decide whether the documents at issue are reasonably calculated to lead to the discovery of admissible evidence on damages.

The Requests for Production as currently drafted are broadly worded and it would be extraordinary burdensome for non-parties EFF and Mr. von Lohmann to comply. Movants do not believe there they possess any category of non-privileged responsive documents that is not already within Respondents' custody or control that is reasonably calculated to lead to the discovery of admissible evidence on damages.

Request no. 2 is extraordinarily broad and seeks "[a]ll documents reflecting or referring to the actual or potential use of Lime Wire to share copyrighted materials" without limitation on whether Lime Wire was actually aware of such actual or potential use. Respondents claim they seek

1 information relevant to damages, in particular, information relevant to statutory damages for willful
2 infringement. Opp. Mot. 8-9. As Respondents assert in their own briefing, willfulness requires
3 knowledge. Respondents' requests are plainly far broader than what would reasonably lead to
4 admissible evidence on the issue to which Respondents claim the documents are relevant – damages.

Most EFF employees have never had communications with Lime Wire. See Supplemental Cohn Decl. ¶ 11-12, Supplemental von Lohmann Decl. ¶ 6. None of EFF's current employees had any substantive discussions with Lime Wire about what Respondents claim is relevant to damages – Lime Wire's knowledge or intent regarding its potential liability for copyright infringement. *See* Supplemental Cohn Decl. ¶ 11-12. Yet Respondents' requests are so broadly drawn that many current EFF employees would likely need to conduct time-consuming searches for irrelevant documents. Documents that are irrelevant but nevertheless responsive to the current requests (in particular, email) are not centrally located and would require each individual employee to engage in protracted searching of multiple email folders for a string of keywords. Coordinating searches and retrieval from so many people is unreasonable to require of a small non-profit that is a non-party "powerless to control the scope of litigation and discovery." *See United States v. Columbia Broadcasting Systems*, 666 F.2d 364, 371 (9th Cir. 1982).

### A. Movants Have Offered to Search for Relevant Documents

Movants offered to search the documents of EFF employees who are likely custodians (those EFF identified in the Supplement Cohn Declaration as having *any* communications with Lime Wire) for all documents constituting direct communications with Lime Wire, to review such documents for responsiveness, and to produce them if responsive or log them if privileged.

Movants also offered for Mr. von Lohmann to search more broadly for, review for responsiveness, and produce (or log as privileged) all documents referring to, relating to, or constituting communications between EFF and Lime Wire.

Respondents rejected this offer outright.

During the meetings of counsel, Respondents, perhaps in recognition of the broadness of their requests, stated that they would be satisfied if EFF produced responsive and non-privileged documents referring to, relating to, or constituting communications with Lime Wire. But in order for

EFF to determine what, if any, documents are *referring to* or *related to* a communication with Lime Wire, it must search for and review documents that includes the words "Lime Wire" or "LimeWire" (not to mention a host of other keywords such as the known names of Lime Wire personnel) to determine if they relate to a communication with Lime Wire, or are completely irrelevant to the issue of damages, such as a news article about the *Lime Wire* opinion. This would require the review of a multitude of irrelevant emails in search of few, *if any*, responsive and non-privileged emails relevant to statutory damages. Searches for the keyword "limewire" alone produced approximately 5,500 emails for review. McSherry Decl. ¶ 3; von Lohmann Decl. ¶ 2. The enormous burden Respondents seek to place on EFF and Mr. von Lohmann is not limited to the production of documents, but also includes the *searching for* and *reviewing of* completely irrelevant (and in many cases nonresponsive) documents.

**B.  Respondents Wrongfully Demand that Non-Parties Engage in Discovery in Lieu of Parties.**

Respondents even demand that non-parties EFF and Mr. von Lohmann search for, review, and produce documents that are or have been in *Respondents'* custody or control, including documents already produced by Lime Wire and emails sent on the "Pho" listserv. Respondents wrongly seek documents from non-parties where they are obtainable from parties. *Dibel v. Jenny Craig, Inc.*, 2007 W.L. 2220987 (S.D. Cal. 2007) (granting motion to quash where subpoena directed at non-party was duplicative and overly burdensome because documents were available from party). Respondents have not shown that the documents are unavailable from Lime Wire or other parties; indeed, Respondents in correspondence with Movants' counsel furnished a document from Lime Wire as an example of the type of document they wanted to obtain from Movants. As such, this aspect of the subpoenas grossly fails the test of reasonableness.

**1.  Documents produced by Lime Wire**

Lime Wire has informed Movants that it has already produced over 700 documents related to EFF and Mr. von Lohmann as well as privilege logs concerning communications with Movants. Respondents are not entitled to confirm the correctness or completeness of Lime Wire's production by subpoenaing Lime Wire's attorneys. *See Shelton v. American Motors Corp.*, 805 F.2d 1323,

1327-28 (8th Cir. 1986) (where "the information sought can be, and in some instances has been, obtained by means other than" defendant's attorney, plaintiff was not entitled to verify discovery from defendant through discovery from defendant's attorney).

### 2. The Pho Listserv

The "Pho" listserv is a public distribution list with a large membership list. If an email is sent on the Pho listserv, a copy is sent to every single member on the listserv. The administrator is Jim Griffin. Pho, Onehouse LLC, http://www.onehouse.com/pho.htm (last visited December 9, 2010). During the relevant time period, Jim Griffin was an employee of Warner Music Group, a corporate affiliate of *Plaintiff* Warner Brothers Records. According to Mr. Griffin's own biography, "**While at Warner**, Jim led a team[,] the Choruss team that successfully built a new model for sound recordings: Sharing music with flat-fee access to unlimited music downloads for college students." Jim Griffin's Bio, Onehouse LLC, http://www.onehouse.com/bio.htm (last visited December 9, 2010). In an interview given this year, Mr. Griffin responded to the question of "What is your role at Warner Music Group, and how is it related to Choruss?" with "Warner owns Choruss; it incubated Choruss." *'Tarzan Economics': If Music Is Free, How Do Artists Get Paid?*, Knowledge@Wharton, Mar. 17, 2010, *available at* http://knowledge.wharton.upenn.edu/article.cfm?articleid=2452. Furthermore, several other employees of Respondents were members of the Pho listserv during the relevant time period. For example, Ted Cohen, former Vice President of New Media for EMI Recorded Music, the parent of Plaintiff Virgin Records America, Inc., has been an active participant of the Pho listserv. *See* McSherry Decl. Ex. A.

Due to the severe imbalance in resources, as well as Movants' status as non-parties, Movants asked Respondents to represent that they did not have access through their employees to documents from the "Pho" listserv, the same category of documents that Respondents seek from non-parties. Respondents refused even to inquire whether they already have access. Even after Movants informed Respondents that Jim Griffin had been during the relevant time period the employee of one of the Plaintiffs' affiliates, Respondents only replied that Mr. Griffin at worked for Geffen Records between 1993 and 1998. They did not mention (perhaps because they failed to inquire into) Mr. Griffin's position with Warner. Movants ask the Court to require Respondents to identify the

Winston & Strawn LLP
101 California Street
San Francisco, CA  94111-5802

potential sources (both internal and external) of Pho list material that they have already sought production from.

Respondents' position appears to be that, because at least one Lime Wire employee and a few EFF employees have been members of the Pho listserv, every single email sent on the Pho listserv is a communication between EFF and the Lime Wire Defendants. In fact, during the meet-and-confer process, Respondents offered as an example of a communication between EFF and Lime Wire an email sent by Jim Griffin to Adam Fisk, a person Respondents represented is a former Lime Wire employee,[1] on which Mr. von Lohmann was only copied. Mr. von Lohmann never actually participated in the email thread. This email was *produced by Lime Wire* to Respondents as part of the discovery process. Respondents' attempt to seek duplicative and cumulative emails of this nature from non-parties is unjustifiable.

Although Respondents claim that their Requests for Production seek documents reasonably calculated to lead to the discovery of admissible evidence of damages, Respondents' requests do not limit topics to *Lime Wire*'s liability for state of mind (which they claim in briefing is relevant to willful statutory damages). For example, Request no. 3 seeks documents "relating to the actual or potential tracking or monitoring of downloads by users of Lime Wire *or other peer-to-peer file sharing networks*." Request no. 4 seeks documents "relating to the architecture, design, or structure of Lime Wire *or other peer-to peer file sharing networks*." Request no. 6 seeks documents "relating to infringement-reducing technologies, including without limitation filtering or *acoustic-fingerprinting technologies*." Because Respondents claim that *every single email* sent through the Pho listserv constitutes a communication between EFF and Lime Wire, and because these requests are not limited by topic to *Lime Wire*, EFF would need to review *every single email sent over the Pho listserv* in its custody to determine if it is responsive. Respondents' position is absurd and inordinately burdens Movants.

The Pho listserv is a high-volume listserv dating from 1999 with tens, perhaps hundreds of

---

[1] Movants have no independent knowledge that Mr. Fisk was ever an employee of Lime Wire, and the example Respondents furnished shows that Mr. Fisk used a non-Lime Wire email address to subscribe to the Pho listserv.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

thousands of emails sent over the years.[2]  Mr. von Lohmann has approximately 24,000 emails from the Pho listserv which were sent to a personal email address, not his EFF work email address, and are easily separated.  Another EFF attorney has approximately 23,000 emails from the Pho listserv, which are in a separate email folder.  Contrary to Respondents' assertions, exclusion of searches and review of Pho listserv emails would reduce burdens considerably.[3]

In order to reduce the burden on Movants of reviewing tens of thousands of emails, Movants propose treating emails sent to the Pho listserv like any other email.  If Lime Wire is actually a party to the email (i.e., if a Lime Wire domain appears in an address field or if a Lime Wire employee whom Movants otherwise communicated with appears in one of the address fields), Movants will review the document and produce if it is responsive and non-privileged.

### C.   Irrelevant categories of documents

Respondents' propounded requests, particularly Request no. 2, for "[a]ll documents reflecting or referring to the actual or potential use of Lime Wire to share copyrighted materials" are extraordinarily broad and touch upon numerous categories that are wholly irrelevant.  Because of Respondents' refusal to limit their requests to communications with Lime Wire, Respondents seek to place an inordinate burden on these non-parties to search for and review wholly irrelevant documents.  Movants have identified several categories that they believe are not reasonably calculated to lead to the discovery of admissible evidence on damages.  Nonetheless, Respondents maintain their requests for such documents.

#### 1.   Communications with third parties

Also as discussed in the Supplemental Cohn Declaration, EFF has engaged in communications with third parties, such as the media, that mention Lime Wire but do not contain confidential information about Lime Wire and were not shared with Lime Wire.  For example, EFF received press inquiries when it filed its joint amicus brief in the *Lime Wire* case.  Such documents are in no way relevant to damages, yet Respondents refuse to exclude the category of

---

[2] In 2000, the Pho list generated over a thousand emails a month and had nearly 700 subscribers. Eric Weisbard, Village Voice, May 9, 2000, http://www.villagevoice.com/2000-05-09/news/keeping-up-with-the-napsters/1/.

[3] Respondents have incorrectly suggested that excluding the Pho listserv category of emails would *increase* the burden on Movants.  Movants cannot fathom how Respondents came to such a conclusion.  Movants have no desire or motivation to increase their own burdens.

Winston & Strawn LLP
101 California Street
San Francisco, CA  94111-5802

1 communications with the press from their requests.

### 2. Presentations to the public

As a non-profit, EFF regularly engages in legal education and makes public presentations regarding the state of the law to, for example, law students. Such presentations might mention the existence of the *Lime Wire* lawsuit in the context of describing the various lawsuits concerning peer-to-peer applications. EFF has no indication that Lime Wire ever viewed these materials. Nevertheless, Respondents insist that this category of documents is relevant and seek to force EFF to search for and collect documents from the nearly dozen different EFF employees who have given public presentations over the years.

### 3. Website

Movants have no reason to believe that EFF's website is in any way related to statutory damages in the *Lime Wire* case and asked Respondents to withdraw their request for this category of documents. However, Respondents only agreed to withdraw their request with respect to documents currently available for download. This does not include, for example, copies or drafts of old web pages that have since been updated. Identifying, collecting and reviewing such documents would be extremely burdensome, all the more so given that they can have no bearing on the issue sin this case.

### 4. Internal listservs

Respondents suggested that Lime Wire employees may have been members of listservs other than the Pho listserv discussed above. Movants have no reason to believe that they were on any other listserv Lime Wire participated in. In fact, they believe they were on no listservs other than Pho in which Lime Wire personnel participated. For example, as discussed in the Supplemental Cohn Declaration, EFF has internal listservs that include only EFF staff, Board members, Fellows, and interns, all of whom are bound by nondisclosure agreements. Any documents sent on an internal listserv, such as a news article mentioning the *Lime Wire* lawsuit, would be completely irrelevant to damages. However, because such an email would contain the term "Lime Wire," EFF would be forced to undergo the burden of reviewing such an email for responsiveness, and producing it, if, for example, a news article stated that Lime Wire users have been accused of sharing copyrighted materials, despite the document being wholly irrelevant. (*See* Request no. 2).

Movants believe that any email sent over a listserv can be treated as any other email pursuant to Movants' above proposal.  If Lime Wire is *actually* a party to the email (*i.e.*, if a Lime Wire employee appears in one of the address fields), Movants will review the document and produce if it is responsive and non-privileged.  The suggestion that Movants must treat any listserv document as a communication between EFF and Lime Wire merely because Lime Wire may have participated in the listserv is both misplaced and overbroad.

### D. As a Non-Profit Legal Services Organization and Individual, Propounding a Privilege Log Would Be an Enormous Burden for Movants.

#### 1. Movants' privileged documents relating to clients other than Lime Wire are wholly irrelevant to Lime Wire's damages.

Because the Requests for Production broadly demand documents beyond communications with Lime Wire, they implicate Movants' privileged communications with *other clients* and its own *internal* work product.  Such documents are plainly not relevant to Lime Wire's damages, and preparing a privilege log of such communications would be extremely burdensome to EFF.

For example, EFF joined in an amicus brief on behalf of itself and eight other organizations on the proper standard for secondary copyright liability in the *Lime Wire* case. The amicus brief itself addresses whether the potential use of Lime Wire to share copyrighted materials implicates secondary copyright liability, though it did not address facts specific to the Lime Wire technology because such information is not in the public record.  *See* Request no. 2, *See* Boyd Dec., Ex. 5 at 2.  Movants' communications about the amicus brief and drafts of the brief are protected by the attorney-client and work product privileges.  EFF did not share these communications with Lime Wire, nor did it use confidential information from Lime Wire to prepare the amicus brief.  Thus, not only are such documents wholly irrelevant to Defendant's damages, but Respondents cannot obtain them because they are privileged.  Nevertheless, Respondents' requests as written would subject EFF to the onerous burden of logging documents related to the amicus brief.

Furthermore, as described in the Supplemental Cohn Declaration at ¶ 8.b, between 2003 and 2008 the recording industry sued thousands of individuals for copyright infringement related to use of peer-to-peer file-sharing programs, including Lime Wire.  Several courts ordered that notice be

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

given to these individual defendants that EFF, along with two other non-profits, Public Citizen and the ACLU, would assist them with locating counsel. Thus, numerous individuals made confidential requests to EFF seeking legal assistance related to these lawsuits. Such communications were not shared with Lime Wire and thus are irrelevant; because they were confidential communications seeking legal advice, they are also privileged. Movants also represented MusicCity/StreamCast in *MGM Studios, Inc. v. Grokster*; Lime Wire, as another peer-to-peer application, may have been mentioned in attorney-client discussions or work product. Again, Respondents' requests would subject Movants to the onerous burden of logging documents related clients other than Lime Wire seeking legal assistance.

Respondents themselves admit that they are not entitled to these communications. Conceding the burden involved, Respondents indicated during the meet-and-confer process that they sought a privilege log concerning only communications *with Lime Wire* and would agree that Movants need not produce a privilege log for communications with clients other than Lime Wire unless Lime Wire was also a party to the communications.

While limiting logging requirements would reduce the burden on Movants with respect to logging, it does not reduce the burden on Movants to search for, review for responsiveness, and make a determination as to privilege as to the same universe of documents. Where the privilege does not belong to Lime Wire and Lime Wire has not received the document, in no way are these third-party privileged documents relevant to damages in the *Lime Wire* case. It causes an unjust burden to require EFF to divert staff and attorney time from its public interest legal services to collect and review such documents. If the Court accepts Movants' proposal to limit discovery to communications with Lime Wire, this would greatly reduce the burden on Movants to search for, review, and make a determination as to privilege communications with clients other than Lime Wire.

**2. Privileged communications with Lime Wire**

Respondents represented to Movants that Respondents' rationale in seeking a privilege log of communications with Lime Wire is to allow for a determination as to whether or not to challenge Lime Wire's privilege. As Lime Wire has already prepared a privilege log describing numerous communications with Movants, Respondents are seeking to have non-parties bear the burden of

replicating Lime Wire's work, apparently to consider a privilege challenge in this Court that Respondents have never pressed in the underlying litigation. Based upon preliminary review, Movants estimate that they have fewer than 150 documents concerning communications with Lime Wire, many of which are privileged, which is only to be expected considering that Movants have been Lime Wire's legal counsel. *See* McSherry Decl. ¶ 5; von Lohmann Decl. ¶ 4. Preparing a privilege log would be highly burdensome. If Respondents nevertheless believe a privilege log would likely lead to admissible evidence on the issue of damages, the onus is on Respondents to pay a reasonable hourly fee for Movants to search for, review, and log communications with Lime Wire.

## IV. MOVANTS' PROPOSAL WOULD SIGNIFICANTLY REDUCE THE BURDEN ON MOVANTS.

Movants' proposal, namely narrowing the Requests to communications *with Lime Wire*, will remedy many of the issues Movants identified and make responding to the Requests manageable. Respondents'' proposal, which narrows the burdens of production on Movants, does not come close to addressing the burdens Movants would suffer prior to producing documents. The mammoth burden these requests place on Movants stems in large part from the requisite searches, review for responsiveness, determination as to privilege, and, if privileged, creation of a privilege log – not merely the production itself as Respondents seem to suggest. If Movants need not search communications with third parties, which are irrelevant to Lime Wire's damages, Movants could omit extraneous categories, including the EFF website, internal listservs and documents, presentation materials, and privileged communications with other clients.

Furthermore, because the majority of EFF employees have had no communications with Lime Wire, the number of custodians to review would be appreciably reduced. Running the myriad of searches for multiple keywords across numerous email folders for each custodian is still arduous, but becomes much less intrusive and burdensome under Movants' proposal.

If Movants need not review third-party communications, Movants could also run targeted searches within the address fields of emails for communications with Lime Wire, drastically reducing the number of documents Movants would need to review for responsiveness and privilege. As discussed above, a search for the keyword "limewire" alone produced approximately 5,500 email

hits, but Movants believe based upon preliminary review that there are fewer than 150 emails which are communications with Lime Wire. McSherry Decl. ¶ 3, 5; von Lohmann Decl. ¶ 2, 4. Movants' proposal also alleviates the need to review tens of thousands of irrelevant emails from the Pho listserv. Given Respondents' failure to justify the breadth of their Requests, asking Movants to jump through hoops to find a needle in a haystack is unreasonable and exceeds the burden of a non-party. Movants' proposal is a reasonable compromise.

## V. DEPOSITIONS

The Court's November 19th, 2010 Order invited supplemental briefing specifically as to the description of the documents in dispute. Movants do not believe that the Court sought or granted leave for further briefing on the motion to quash the subpoenas for depositions. Respondents, however, stated their intent to address the issue of deposition testimony from non-parties EFF and Mr. von Lohmann in their filing.

In meetings with Respondents' counsel, Movants urged that discussions as to the depositions were premature. A meaningful meet and confer discussion cannot occur until the document issues are resolved and should thus be tentatively postponed. Movants do not believe they have relevant non-privileged information on the issue of Lime Wire's damages, and they fear that Respondents will use depositions for an impermissible fishing expedition about Movants' strategies, legal theories, relationships, referral sources, and other highly confidential information. Whether those fears are justified, Respondents manifestly seek to depose Movants to attempt to elicit a waiver of attorney-client privilege or to obtain unretained expert testimony concerning secondary liability in copyright law. The Shelton court described, "[t]he harassing practice of deposing opposing counsel" as "an adversarial trial tactic that does nothing for the administration of justice but rather prolongs and increases the costs of litigation, demeans the profession, and constitutes an abuse of the discovery process." *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986). Movants ask the court to quash the subpoenas, or at minimum to postpone the depositions until such time as the document issues are resolved and the parties can meaningfully meet and confer as to the deposition scope.

## VI. IN THE EVENT THE COURT PERMITS ANY DISCOVERY, IT SHOULD OCCUR UNDER A STRICT PROTECTIVE ORDER IN LIGHT OF THE FAR-REACHING ADVERSARIAL POSITIONS OF THE RESPONDENTS AND THE MOVANTS IN MULTIPLE CASES.

If the Court orders any discovery, Movants respectfully request that it enter a protective order limiting disclosure to a single counsel of record for Respondents with respect to these subpoenas, Susan Boyd. The EFF is currently opposite Respondents' counsel, Munger, Tolles & Olson LLP, in other copyright litigation, *Lenz v. Universal Music Corp.*, currently pending in this Court. In fact, two of counsel of record for Respondents, Kelly Klaus and Melinda Lemoine, are also counsel of record in *Lenz*, and Respondents' counsel here are regularly on the opposite side of EFF in major copyright litigation. Respondents' counsel should not be entitled to view the internal communications of EFF. Furthermore, any discovery produced pursuant to these subpoenas should be strictly limited to use solely in the damages phase of the *Arista Records v. Lime Wire* litigation.

## VII. COST-SHIFTING IS PROPER.

If the Court requires Movants to respond *in any way* to the subpoenas, Respondents are obliged to cover the costs of doing so. As described in Movants' previous briefing, Federal Rule of Civil Procedure 45(c)(2)(B)(ii) explicitly provides that courts "***must*** protect a person who is neither a party nor a party's officer from significant expense resulting from compliance [with a subpoena]." (Emphasis added) To relieve the burden of responding to Respondents' subpoenas, the Court should narrow the requests to communications with Lime Wire and order Respondents to pay a reasonable hourly fee for both the in-house and outside staff and attorneys to search for, review, produce, or log documents in response to the subpoenas, or to sit for depositions.

## VIII. CONCLUSION

For the reasons stated above, Movants urge the Court to quash the subpoenas.

Dated: December 9, 2010             WINSTON & STRAWN LLP

                                    By:   /s/ Kathleen Lu
                                          Andrew P. Bridges
                                          Robyn Callahan
                                          Matthew A. Scherb
                                          Kathleen Lu

Attorneys for Movants.
ELECTRONIC FRONTIER FOUNDATION and
FRED VON LOHMANN

SF:298285.4