1  Andrew P. Bridges (SBN: 122761)
   abridges@winston.com
2  Matthew A. Scherb (SBN: 237461)
   mscherb@winston.com
3  Robyn Callahan (SBN: 225472)
   rcallahan@winston.com
4  Kathleen Lu (SBN: 267032)
   klu@winston.com
5  WINSTON & STRAWN LLP
   101 California Street
6  San Francisco, CA 94111-5802
   Telephone:    (415) 591-1000
7  Facsimile:    (415) 591-1400

8  Attorneys for Movants
   ELECTRONIC FRONTIER FOUNDATION and
9  FRED VON LOHMANN

10

11              UNITED STATES DISTRICT COURT

12              NORTHERN DISTRICT OF CALIFORNIA

13                 SAN FRANCISCO DIVISION

14

15  In re Subpoenas to Electronic Frontier      )   **Case No. 3:10-mc-80276-JSW**
    Foundation and Fred von Lohmann             )   [Related to *Arista Records v. Lime Wire LLC*,
16                                              )   No. 06-5936 (KMW) (S.D.N.Y.)]
                                                )
17                                              )   **MOVANTS' REPLY TO RESPONDENTS'**
                                                )   **SUPPLEMENTAL BRIEF REGARDING**
18                                              )   **EXPEDITED MOTION TO QUASH**
                                                )   **SUBPOENAS**
19                                              )
                                                )   [Pursuant to agreement of counsel and the
20                                              )   Court's November 19, 2010 Order (Dkt. #21)]
                                                )
21  _____         )   Date:    no hearing date assigned

22

23

24

25

26

27

28

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

## <u>TABLE OF CONTENTS</u>

Page

I.     INTRODUCTION ...................................................................................................1

II.    RESPONDENTS FAIL TO ARTICULATE HOW THE REQUESTS SEEK
       DOCUMENTS RELEVANT TO DAMAGES. .........................................................2

       A.    Respondents Do Not Overcome Their Burden of Demonstrating the Requests
             Are Reasonably Calculated to Lead to Admissible Evidence on Damages..................2

       B.    Respondents' Examples Do Not Show that Responsive, Relevant
             Communications with Lime Wire Exist. ........................................................4

III.   THE TASK OF SEARCHING FOR AND REVIEWING TENS OF THOUSANDS
       OF DOCUMENTS IS UNNECESSARY AND UNJUSTLY BURDENSOME. ...................5

       A.    Movants Amply Demonstrated the Considerable Burden These Subpoenas
             Impose. ...................................................................................................5

       B.    Respondents' Cavalier Disregard of Movants' Burden Erroneously Focuses on
             the Actual Production and Ignores The Burden that Lies in the Requisite
             Collection and Review. ...............................................................................5

IV.    RESPONDENTS REFUSE TO COMPROMISE REGARDING IRRELEVANT
       AND EXTRANEOUS DOCUMENTS. ....................................................................6

       A.    Movants Offered a Reasonable Compromise, But Respondents Persist in
             Seeking Unrelated Documents.......................................................................6

       B.    Respondents Unreasonably Demand that Movants Search Custodians Who
             Are Not Likely to Possess Documents Relevant to Damages in the Lime Wire
             Case..........................................................................................................7

       C.    Respondents Are Misguided About Alleged Wendy Seltzer Communications
             with Lime Wire. .........................................................................................8

       D.    Respondents Fail to Show that the Pho Listserv Is Unavailable from Other
             Sources. ....................................................................................................8

V.     RESPONDENTS MISCHARACTERIZE THE MEET-AND-CONFER PROCESS.............10

       A.    Privilege Log............................................................................................10

       B.    Depositions ..............................................................................................10

VI.    THE COURT SHOULD ENTER A STRICT PROTECTIVE ORDER TO PREVENT
       RESPONDENTS FROM ABUSING THIS DISCOVERY IN OTHER CASES. ...............12

VII.   RESPONDENTS SHOULD PAY EXPENSES ASSOCIATED WITH THIS
       DISCOVERY...................................................................................................12

VIII.  CONCLUSION................................................................................................13

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

i

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aumann Auctions, Inc. v. Phillips*,
　8:07-CV-431, 2008 U.S. Dist. LEXIS 66540 (D. Neb. Aug. 21, 2008) ....................................3

*Cedrone v. Unity Sav. Ass'n*,
　103 F.R.D. 423 (E.D. Pa. 1984) ................................................................................6

*Compaq Computer Corp. v. Packard Bell Electronics, Inc.*,
　163 F.R.D. 329 (N.D. Cal. 1995) ............................................................................12

*Johnson v. Northwest Airlines, Inc.*,
　No. C-08-02272, 2009 WL 839044 (N.D. Cal. Mar. 30, 2009) ...................................3

*Micro Motion, Inc. v. Kane Steel Co., Inc.*,
　894 F.2d 1318 (Fed. Cir. 1990) ...............................................................................3

*Sirota v. Penske Truck Leasing Corp.*,
　No. C-05-03296, 2006 WL 708910 (N.D. Cal. Mar. 17, 2006) ...................................3

*United States v. Columbia Broadcasting Systems*,
　666 F.2d 364 (9th Cir. 1982) ................................................................................12

**STATUTES**

Fed. R. Civ. P. 26(b)(1) .............................................................................................2

R.C.P. 26(b)(2)(C)(i) ................................................................................................9

R.C.P. 45(c)(1) ........................................................................................................12

R.C.P. 45(c)(2)(B)(ii) ..............................................................................................12

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

I.      **INTRODUCTION**

In the final stages of a four-year old case, with the only remaining issue being one of damages, and ten business days prior to the discovery cutoff (now slightly extended), Respondents issued broad document and deposition subpoenas to two third parties, EFF and Mr. von Lohmann, both of whom had previously served as counsel to the Defendants.  EFF and Mr. von Lohmann objected, noting that the information they possess is either: (1) privileged or (2) not likely to lead to the discovery of admissible evidence.

After seeking supplemental information, Judge Patel ordered the parties to meet and confer, expressly noting two things: (1) that it is "evident to the court that EFF and Mr. von Lohmann possess information and documents that would be privileged . . . and which should be protected," and (2) that in briefing on this issue the Movants and Respondents must "describe the documents with sufficient specificity to permit the Court to make a determination as to whether they are, in fact, reasonably calculated to lead to the discovery of admissible evidence on damages."  Order Reserving Ruling (Dkt. No. 21), 2.

We have, in fact, conferred.  During the meet-and-confer process, Movants attempted to cabin the Requests to the information that would likely be non-privileged and relevant to the narrow damages issues remaining. We did so in three ways:

First, since the only issue that could possibly be relevant to the remaining damages issues in the *Lime Wire* case is what Lime Wire knew or did, Movants sought to limit the scope of the requests to communications *with* Lime Wire, and even offered a broader scope for the one attorney (former EFF attorney von Lohmann) who had the most direct contact with Lime Wire. This would both limit relevance and decrease the burden, since it would remove irrelevant information from both production and the necessity of a privilege log such as draft versions of EFF's website, EFF's internal correspondence, and EFF's efforts on behalf of other clients and representing itself as amicus in the underlying case.  Respondents refused.

Second, Movants sought to exclude information that was equally available to the Respondents, most prominently an email list called the "Pho list," which is hosted by Respondents' former employee and to which some of Respondents' employees have subscribed.  The Pho list is

also very unlikely to lead to the discovery of admissible evidence, since the only way that it could is *if* an EFF employee either improperly violated the attorney-client or attorney work-product privileges, *and* a Lime Wire employee saw that violation and acted upon it.  Again, Respondents rejected this proposal.

Third, Movants sought to defer the question of depositions until the legitimate scope of the subpoenas with regard to both privilege and relevance could either be agreed upon or directed by an order of this Court.  Again, Respondents refused.

Finally, Movants sought agreement on cost-shifting.  Again, Respondents refused.

Movants are correct on all points and have attempted, in good faith, to reach an agreement that reasonably limits the scope of the subpoenas to the likely relevant, non-privileged information.

In response, Respondents offer nothing more than unsubstantiated conclusions, which still does not explain why communications with *third parties* besides Lime Wire are relevant.  Respondents not only misconstrue the applicable standard as it pertains to the scope of relevance at this juncture, but they also wildly misread the import of obsolete language referring to Mr. von Lohmann in Judge Wood's withdrawn order.  As noted in earlier briefing, this language *was removed from the order specifically because there was no showing* to support the statement about Mr. von Lohmann.  As such, it certainly does not constitute evidence of relevance here.  Movants, as non-parties, should not bear the burden of sifting through thousands of irrelevant documents in furtherance of Respondents' fishing expedition.

## II.   RESPONDENTS FAIL TO ARTICULATE HOW THE REQUESTS SEEK DOCUMENTS RELEVANT TO *DAMAGES*.

### A.   Respondents Do Not Overcome Their Burden of Demonstrating the Requests Are Reasonably Calculated to Lead to Admissible Evidence on *Damages*.

While relevance may be broadly interpreted, it is not boundless.  The scope of discovery is limited to *nonprivileged* matters *relevant* to a party's claim or defense. Fed. R. Civ. P. 26(b)(1) (emphasis added).  After four years of litigation in the *Arista Records v. Lime Wire* case, the primary issue yet to be decided – and therefore, the only issue as to which discovery should pertain here – is *damages*.  Order Reserving Ruling (Dkt. No. 21), 2.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

2

1        As the party seeking discovery, Respondents bear the burden of demonstrating that their

2   requests are reasonably calculated to lead to the discovery of admissible evidence on this narrow

3   issue.  *Johnson v. Northwest Airlines, Inc.*, No. C-08-02272, 2009 WL 839044 at *2 (N.D. Cal. Mar.

4   30, 2009) (requesting party must meet "a threshold of relevance that is beyond speculation")

5   (quoting *Aumann Auctions, Inc. v. Phillips*, 8:07-CV-431, 2008 U.S. Dist. LEXIS 66540 (D. Neb.

6   Aug. 21, 2008)); *see also Sirota v. Penske Truck Leasing Corp.*, No. C-05-03296, 2006 WL 708910

7   at *1-2 (N.D. Cal. Mar. 17, 2006) (discovery is not relevant if the inquiry is only based on the

8   requesting party's mere suspicion or speculation) (citing *Micro Motion, Inc. v. Kane Steel Co., Inc.*,

9   894 F.2d 1318, 1324 (Fed. Cir. 1990)).

10        They have not met that burden.  Instead, they offered speculation and unsupported

11   assumption about facts that in any event have no bearing on the underlying litigation.  In support of

12   their refusal to limit the scope of the subpoenas to correspondence *with* Lime Wire for EFF

13   personnel than Mr. von Lohmann, Respondents rely heavily on the fact that that individuals at EFF

14   other than Mr. von Lohmann communicated directly with Lime Wire.  But they fail entirely to

15   demonstrate *how* the communications by current EFF employees (on topics including, for example,

16   international copyright trends and network neutrality), are reasonably calculated to lead to

17   admissible evidence on Lime Wire's statutory damages on inducement liability for copyright

18   infringement under U.S. law – much less documents that were not even communicated to Lime

19   Wire.  For instance, they make no argument (nor is there one) demonstrating how a discussion with

20   EFF's international team members about international copyright trends, or with EFF's technical

21   employees about network neutrality, is relevant to the damages in the New York case.  There is no

22   logical connection and, therefore, no reason to require EFF and Mr. Von Lohmann (a small non-

23   profit and an individual) to waste many hours sifting through their files.  These, and many other

24   categories, are simply not relevant but enigmatically remain part of Respondents' all-encompassing

25   requests.

26

27

28

Winston & Strawn LLP
101 California Street
San Francisco, CA  94111-5802

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

**B.    Respondents' Examples Do Not Show that Responsive, Relevant Communications with Lime Wire Exist.**

Respondents postulate that documents exist to support the false allegation that Mr. von Lohmann instructed Lime Wire to establish a document retention program to purge incriminating information.  To bolster this hypothesized theory, they cite only to language from a *withdrawn* order by Judge Wood.  Respondents' Supp. Brief 6; *see* Boyd Decl. Ex. 3 (order removing language).  There is *no factual basis* for this specious claim, which Judge Wood recognized in striking it from the Court's May 11, 2010 order.  This "evidence" (the only support they could muster) amounts to nothing more than conjecture.

Respondents next turn to a passing statement by Judge Wood when provisionally discussing the possibility of future analysis of the privilege issue.  Judge Wood did *not* order further briefing.  She merely stated she would "address issues related to privilege *as they arise.*"  *See* Boyd Decl. Ex. 3 (emphasis added).  Respondents have not raised any privilege issues before Judge Wood pertaining to the issues which are currently before this Court, despite Judge Wood's clear directive.

Respondents also point to five exhibits as supposed evidence that "there are numerous other responsive, highly relevant documents referencing communications between EFF/von Lohmann and Lime Wire/Gorton."  Respondents' Supp. Brief 8.  Respondents' representations fall flat.  Three of the exhibits Respondents offer *do not even mention* Lime Wire (Supp. Boyd Decl. Ex. 3; Supp. Boyd Decl. Ex. 4; Boyd Decl. Ex. 4); four of the five exhibits *do not even reference* communications between Movants and Lime Wire (Supp. Boyd Decl. Ex. 2, Supp. Boyd Decl. Ex. 3; Supp. Boyd Decl. Ex. 4; Boyd Decl. Ex. 4).  The single example that is a communication has a 2003 date and thus is not even responsive to Respondents' subpoenas.  Supp. Boyd Decl. Ex. 1; *see also* Scherb Decl. Ex. A (subpoena to EFF), 6, Instruction 11; Scherb Decl. Ex. B (subpoenas to von Lohmann), 4, Instruction 11 (requests are for "any document which refers to or was created during the period from January 1, 2005 to present").  For that matter, the 2003 email is not reasonably relevant to Lime Wire's *damages* because it pertains to potential infringement (discussing the thousands of RIAA subpoenas, and noting that only 10 were directed towards users purportedly using Lime Wire – hardly the "mass infringement" Respondents claim).

4

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**III.  THE TASK OF SEARCHING FOR AND REVIEWING TENS OF THOUSANDS OF DOCUMENTS IS UNNECESSARY AND UNJUSTLY BURDENSOME.**

**A.  Movants Amply Demonstrated the Considerable Burden These Subpoenas Impose.**

In each of Movants' previous briefs to the Court, Movants have explained why Respondents' overly broad subpoenas impose undue burdens on Movants.  *See* Motion to Quash 7-8; Reply Motion to Quash 10-11; Opening Supp. Brief 3-12.  Respondents' contention that Movants "have provided no facts with respect to the burden of complying with *any* aspect of Plaintiffs' subpoena" is absurd.  Respondents' Supp. Brief 10 (emphasis in original).  Respondents point to case law holding that Movants must provide facts supported by affidavits.  Movants satisfied this requirement.  Movants have submitted several declarations laying out the scope of the burden.  Respondents simply ignore these facts and presumptively assume the Court will do the same.  But the Court must assess the burden based upon the *facts* before it, not Respondents' unsubstantiated insinuations.

**B.  Respondents' Cavalier Disregard of Movants' Burden Erroneously Focuses on the Actual *Production* and Ignores The Burden that Lies in the Requisite *Collection and Review*.**

Respondents wrongly focus on only the *production* of responsive documents and overlook the requisite tasks associated with compiling the documents for production.  A significant concern is the enormous burden of searching for and reviewing the various categories of documents.  Respondents incorrectly presume that it would be more burdensome for Movants to weed out the direct communications with Lime Wire from the larger category of documents that *refer to* communications with Lime Wire, arguing Movants should just produce both categories.  Respondents mistakenly assume that keyword searches for documents referring to communications with Lime Wire would result in the same universe of documents as keyword searches for direct communications with Lime Wire.  This is false.  If the requests are limited to communications *with* Lime Wire, Movants could simply search the address fields of email messages for Lime Wire addresses and particular names.  This would produce a fraction of the number of emails to review for responsiveness and privilege compared to a search done in the body of such emails.  *See* Opening Supp. Brief 12-13.

5

Winston & Strawn LLP
101 California Street
San Francisco, CA  94111-5802

1     According to Respondents' proposal, Movants would need to search for and review

2  thousands of irrelevant (and largely unresponsive) documents because Movants have no means of

3  determining whether an email *refers* to a communication with Lime Wire without reading the entire

4  email.  Limiting the Requests to communications *with* Lime Wire, apart from reducing the burden of

5  production, would be reasonable and would not prejudice Respondents, because Movants did not

6  have a habit of sharing confidential information from Lime Wire with others. Thus this modification

7  to the subpoenas would substantially reduce the burdens of *searching and reviewing*, especially

8  because only a limited number of custodians had *any* communications with Lime Wire (much less

9  relevant and responsive communications).

10  **IV.     RESPONDENTS REFUSE TO COMPROMISE REGARDING IRRELEVANT AND
       EXTRANEOUS DOCUMENTS.**

11

12          **A.     Movants Offered a Reasonable Compromise, But Respondents Persist in Seeking
                Unrelated Documents.**

13     During the meet-and-confer process, Movants offered to conduct searches targeting

14  communications *with* Lime Wire relevant to damages.  *See* Opening Supp. Brief 2-3, 12-13.

15  Respondents rejected Movants' proposal and continue to insist that Movants sift through thousands

16  of irrelevant documents for documents that purportedly support Respondents' unfounded theories

17  despite no reasonable expectation that they even exist.

18     As Lime Wire's counsel, EFF and Mr. von Lohmann would not have shared confidential

19  communications from Lime Wire with third parties.  If there are any internal communications, they

20  would of course be privileged and attorney work product.  *See Cedrone v. Unity Sav. Ass'n*, 103

21  F.R.D. 423, 429 (E.D. Pa. 1984).  The only argument Respondents advance is an accusation that

22  Movants waived Lime Wire's privilege or engaged in unprofessional conduct.  The seriousness of

23  such groundless attacks aside, Respondents offer not a single example of this so-called waiver.  In

24  fact, Mr. von Lohmann, Ms. Cohn, and Mark Gorton submitted declarations stating that privileged

25  communications remained subject to the protection and had not been publicized.  Cohn Decl. ¶ 7;

26  von Lohmann Decl. ¶ 7.d.; Gorton Decl. ¶ 4.

27     Compounding their unreasonable demand, Respondents seek a privilege log comprising *any*

28  *and all* internal EFF communications that refer to Lime Wire.  Respondents declined to offer a

6

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

1    smidgen of evidence to suggest *internal* communications would fall outside the attorney work

2    product privilege necessitating a privilege log – particularly here, in the case of a nonparty subpoena,

3    as explained in Movants' December 9, 2010 brief.  Moreover, given that EFF is often involved in

4    litigation (either representing clients directly or as amicus) advocating positions adverse to clients

5    represented by LimeWire's counsel, Munger Tolles & Olson, providing such a log could unfairly

6    prejudice EFF in other cases.  Information typically provided on a privilege log such as the names of

7    correspondents, dates, and subject matter of documents would likely in itself reveal highly

8    confidential and privileged information as to the internal workings of EFF which Respondents and

9    Respondents' attorneys could not easily forget and could use opposite EFF or its clients in other

10   cases.

> **B.      Respondents Unreasonably Demand that Movants Search Custodians Who Are Not Likely to Possess Documents Relevant to Damages in the *Lime Wire* Case.**

13           Although Respondents acknowledge that Mr. von Lohmann is no longer an employee of

14   EFF, and have pointed to no reason why Mr. von Lohmann would not have all of his own

15   communications responsive to the subpoenas, they insist that EFF must also separately search for

16   responsive documents (that constitute or refer to communications with Lime Wire) which Mr. von

17   Lohmann already agreed to provide.  There is simply no reason to also burden his former employer,

18   a small non-profit, with identical requests. Likewise, Respondents demand that EFF search the files

19   of all EFF employees, even though they offer no evidence that *current* EFF employees had *relevant*,

20   responsive, non-privileged communications with Lime Wire.

21           Respondents also seemingly contend that Movants should, "in searching the files of a

22   custodian who has *otherwise been identified by Lime Wire as reasonably likely to have responsive*

23   *documents*," search for documents referring to communications with Lime Wire *in addition* to

24   documents constituting communications with Lime Wire.  Respondents' Supp. Brief 11 (emphasis in

25   original).  Leaving aside the extra burden of searching for and reviewing thousands more documents,

26   Lime Wire has identified *only one custodian* as having communications with Lime Wire – Mr. von

27   Lohmann.  *See* Supp. Gorton Decl. ¶ 3.

28

7

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

While some current EFF employees might possess documents responsive to Respondents' *original* overbroad Requests, those Requests are untenable and include categories of documents that are well outside the bounds of reason and relevance to damages. It is unlikely that current EFF employees have responsive, relevant, and nonprivileged documents concerning communications with Lime Wire. Because Respondents made no showing as to the relevance of documents about Lime Wire, Movants' search should be properly curtailed, as Movants propose, to just the current EFF employees' communications *with* Lime Wire (if any) that are responsive to the Requests as modified.

**C.    Respondents Are Misguided About Alleged Wendy Seltzer Communications with Lime Wire.**

Respondents make much of an email from Mr. von Lohmann to Greg Bildson and Mark Gorton that included the name of Wendy Seltzer, a former employee of EFF. There is no indication that Wendy Seltzer had any direct communications with Lime Wire. Respondents misrepresent Exhibit 1. Respondents' Supp. Brief 8, 10. Exhibit 1 only shows that *Mr. von Lohmann* had at one point obtained some information *from* Wendy Seltzer and that, separately, *Mr. von Lohmann* later had communications with Lime Wire employees.

Respondents similarly mischaracterize Exhibit 4. Respondents' Supp. Brief 8. Exhibit 4 is an email dated *October 2006* in which Mr. Fisk acknowledges discussions with Ms. Seltzer. But as Respondents acknowledge, Mr. Fisk left Lime Wire in *2004*. Respondents' Supp. Brief 7; Supp. Boyd Decl. Ex. 8 (Fisk Depo.). Furthermore, Ms. Seltzer left EFF in early *2005*. Curriculum Vitae of Wendy Seltzer, last updated July 2010, available at http://wendy.seltzer.org/seltzer-cv.pdf. What Mr. Fisk believed *after* he left Lime Wire is irrelevant to Lime Wire's damages, and what Ms. Seltzer said or did *after* she left EFF is outside EFF's custody or control.

**D.    Respondents Fail to Show that the Pho Listserv Is Unavailable from Other Sources.**

Respondents disingenuously claim that Movants provide "no reason for withholding" documents from the Pho listserv. Respondents' Supp. Brief 1. Of course, Movants did present a host of reasons. Opening Supp. Brief 6-7. Most prominently, requiring non-party Movants to search

8

for and review multiple years worth of Pho listserv emails is unduly burdensome, especially because Respondents, *actual parties to the action*, apparently made no efforts to search their own *internal* sources for this same information. *See* Lu Decl. Ex. A.

The Court must limit discovery when "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." F.R.C.P. 26(b)(2)(C)(i). Beyond Respondents' access through Lime Wire and Mr. Bildson, Respondents curiously omit any discussion about *their* access to the Pho listserv through parties *other* than Lime Wire, *including their own employees*. Even after Movants informed Respondents of Movants' belief that several of Plaintiffs' employees are members of the Pho listserv, Respondents refused to canvass their internal sources, claiming it would be too great a burden. Lu Decl. Ex. A. Ironically, Respondents have no qualms about burdening others – namely nonparties.

Because the Pho listserv was highly active, reviewing all Pho listserv emails would be an enormous burden, one which Respondents could and should bear instead of non-parties EFF and Mr. von Lohmann. While Mr. von Lohmann used a unique email address for Pho listserv purposes, and the EFF employee whom Movants identified keeps them in an email folder (*see* Opening Supp. Brief 8), Movants would nonetheless be required to review *each of the tens of thousands* of documents for responsiveness and to ensure non-Pho emails or privileged documents did not mistakenly get segregated to that folder. Nevertheless, Movants offered to search Pho listserv emails for responsive communications that *actually* constituted communications between Movants and Lime Wire or a Lime Wire employee (*e.g.*, an email from Mr. von Lohmann to Mr. Gorton, copied to the Pho listserv). A keyword search of the address fields would find such communications, significantly limiting the universe of documents to review. Respondents do not articulate any explanation for why other documents from the Pho listserv would be relevant to Lime Wire's damages. Quite simply, they are not.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

9

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

## V.   RESPONDENTS MISCHARACTERIZE THE MEET-AND-CONFER PROCESS.

### A.   Privilege Log

Respondents mischaracterize Movants' position regarding preparation of a privilege log. First, while Respondents attached their letter to Movants as an exhibit, they notably omitted Movants' response the next day.  Lu Decl. Ex. B.  Second, Respondents neglected to inform the Court that Movants agreed to log documents where the privilege belongs to Lime Wire.  It is the burden of logging communications with Movants' numerous *other* clients and Movants' internal work product which caused Movants concern.  In fact, Respondents indicated Movants' suggestion was acceptable if Movants included all communications to which Lime Wire was a party, regardless of who held the interest (such as in the case of a common interest privilege).  While Movants agreed this was an acceptable compromise (as set forth in their opening brief), Respondents now belatedly renege on that agreement, which Movants learned for the first time when reading Respondents' Supplemental brief.

Movants remain amenable to the compromise proposal that predated Respondents' Supplemental brief.  To the extent a privilege log is necessary at all, however, its preparation will require substantial attorney time and will impose a considerable expense on a non-profit and individual. As such, Movants respectfully request that the Court order Respondents to pay the reasonable hourly fees of both inside and outside counsel for the time spent preparing a privilege log.

### B.   Depositions

As is quite obvious given the multiple rounds of briefing before the Court, a disagreement exists on the proper scope of the subpoenas and therefore, on the proper scope of deposition questioning.  Movants simply acknowledged that fact during the meet-and-confer discussions, noting that clarification from the Court (or through a mutual agreement) should precede a discussion of whether depositions should take place.  Until Respondents have reviewed the documents that Movants will produce pursuant to either a compromise or a court order, if any, a meaningful exchange is not realistic.

10

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

1      Movants have reasonable apprehensions regarding the breadth of any depositions.

2  Respondents may impermissibly attempt to use any depositions to elicit highly confidential

3  information, including Movants' legal strategies and theories and Movants' expert opinions on the

4  state of the law concerning secondary liability for copyright infringement.  As Respondents suggest

5  by their repeated references to Mr. von Lohmann's long-ago article about copyright law (notably *not*

6  a communication with Lime Wire), Respondents likely seek to depose Mr. von Lohmann on topics

7  other than his communications with Lime Wire.  *See* Respondents' Supp. Brief 8; Boyd Decl. Ex. 4

8  (law review article written by Mr. von Lohmann).  The Court should protect Mr. von Lohmann from

9  Respondents' effort to gain Mr. von Lohmann's unretained expert testimony on the state of the law

10  on secondary copyright liability, both in 2001 and the present. Furthermore, EFF is currently

11  opposing counsel to Respondents' counsel, Munger, Tolles & Olson, in *Lenz v. Universal Music*

12  *Corp.*, which is pending before this Court, and Respondents' counsel regularly represent clients who

13  take positions adverse to those advocated by EFF in other copyright litigation.  This unusual

14  relationship further underscores the need for express limitations and guidelines for depositions, if

15  any.  Nevertheless, until the document issues are resolved and Respondents review the documents

16  ultimately produced, it is unrealistic to attempt to set the parameters for the deposition.

17      **C.      Discovery Cut-Off**

18      In a final effort to distract the Court from the central issues here, Respondents baselessly

19  allege that *Movants* are trying to "run out the discovery clock." Of course, this ignores the fact that it

20  is *Respondents* that, despite having litigated the *Arista Records v. Lime Wire* action for the last *four*

21  *years*, waited until *ten business days* before the original close of discovery[1] to serve Mr. von

22  Lohmann.  *See* Motion to Quash at 3.  Any concern about the close of discovery is a problem of

23  Respondents' own making.  Respondents provide no explanation for their dilatory approach to this

24  discovery and instead point the finger at nonparties whom Respondents have known about long

25  before the eleventh hour.

26

27

28

---

[1] The discovery cut-off for fact depositions in the *Arista Records v. Lime Wire* action is not until
January 30, 2011.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

## VI.   THE COURT SHOULD ENTER A STRICT PROTECTIVE ORDER TO PREVENT RESPONDENTS FROM ABUSING THIS DISCOVERY IN OTHER CASES.

Movants' fears with respect to far-reaching and overbearing efforts by their opposing counsel support a strict protective order should the Court choose to order discovery. Specifically, Kelly Klaus and Melinda Lemoine, counsel of record for Respondents, are also current counsel of record opposite EFF in *Lenz*. Movants respectfully ask the court to limit disclosure of any discovery pursuant to these subpoenas to Susan Boyd, counsel of record for Respondents, alone, and to limit use of any discovery strictly to the damages phase of the *Arista Records v. Lime Wire* litigation. Damages discovery in that case should not be turned into a fishing expedition for information that Respondents and their counsel can use to try to challenge EFF's efforts in other litigation and as amicus curiae.

## VII.   RESPONDENTS SHOULD PAY EXPENSES ASSOCIATED WITH THIS DISCOVERY.

As non-parties, Movants "should not be forced to subsidize an unreasonable share of the costs of a litigation to which they are not a party." *United States v. Columbia Broadcasting Systems*, 666 F.2d 364, 371 (9th Cir. 1982). Movants are "entitled to be compensated at a reasonable hourly rate for . . . time in searching for, reviewing for privileged material and producing responsive documents, and sitting for deposition." *Compaq Computer Corp. v. Packard Bell Electronics, Inc.*, 163 F.R.D. 329, 339 (N.D. Cal. 1995). Respondents should also pay the charges of any discovery services vendor. Not only is cost-shifting fair and logical, but also the Federal Rules of Civil Procedure mandate it. Rule 45(c)(2)(B)(ii), Fed. R. Civ. P. (courts "must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance").

Respondents themselves must "take reasonable steps to avoid imposing undue burden or expense" on Movants. Rule 45(c)(1), Fed. R. Civ. P. They have not done so. "The issuing court must enforce this duty and impose an appropriate sanction – which may include lost earnings and reasonable attorney's fees – on a party or attorney who fails to comply." *Id.*

## VIII.   CONCLUSION

For the reasons stated above, Movants urge the Court to quash the subpoenas, or in the alternative, limit their scope and order Respondents pay all of Movants' costs of compliance including attorneys' fees and vendor expenses.

Dated:  December 13, 2010                    WINSTON & STRAWN LLP

By:      /s/ Kathleen Lu
Andrew P. Bridges
Robyn Callahan
Matthew A. Scherb
Kathleen Lu

Attorneys for Movants
ELECTRONIC FRONTIER FOUNDATION and
FRED VON LOHMANN

SF:298836.2

Winston & Strawn LLP
101 California Street
San Francisco, CA  94111-5802

13