Andrew P. Bridges (SBN: 122761)
abridges@winston.com
Robyn Callahan (SBN: 225472)
rcallahan@winston.com
Matthew A. Scherb (SBN: 237461)
mscherb@winston.com
Kathleen Lu (SBN: 267032)
klu@winston.com
WINSTON & STRAWN LLP
101 California Street
San Francisco, CA 94111-5802
Telephone:    (415) 591-1000
Facsimile:    (415) 591-1400

Attorneys for Movants
ELECTRONIC FRONTIER FOUNDATION and
FRED VON LOHMANN

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re Subpoenas to Electronic Frontier Foundation and Fred von Lohmann | **Case No. 3:10-mc-80276-JSW**<br>[Related to *Arista Records v. Lime Wire LLC*, No. 06-5936 (KMW) (S.D.N.Y.)]<br><br>**REQUEST BY ELECTRONIC FRONTIER FOUNDATION AND FRED VON LOHMANN FOR COSTS PURSUANT TO THE COURT'S DECEMBER 17, 2010 ORDER (DKT. NO. 36)** |

## I. INTRODUCTION

This matter arises from the subpoenas that a collection of major record label plaintiffs served upon the Electronic Frontier Foundation (EFF), a pro bono legal services organization that qualifies as a tax-exempt charitable organization under section 501(c)(3) of the Internal Revenue Code, and upon its former attorney Fred von Lohmann (together referred to as "Movants"). The major labels issued the subpoenas in connection with their litigation in the Southern District of New York (before The Honorable Judge Kimba Wood) against Lime Wire LLC ("Lime Wire") and other defendants associated with distribution of the peer-to-peer Limewire software. The major labels' subpoenas

sought a wide variety of communications between EFF or Mr. von Lohmann on the one hand and their client Lime Wire on the other hand. The major labels boldly sought to invade the attorney-client privilege between EFF and Mr. von Lohmann and their client. Shortly before the Lime Wire trial began, the record label plaintiffs moved in limine for Judge Wood to rule that there was no privilege between EFF and Mr. von Lohmann on the one hand and Lime Wire on the other. Ultimately Judge Wood ruled that an attorney-client privilege indeed protected communications between EFF and Mr. von Lohmann and their client.

Movants had to fight hard to protect the privilege of their clients, including both Lime Wire and other clients whose communications the broad subpoenas encompassed. (1) Movants had to move to quash the subpoenas before this Court. The motion required Movants to provide two rounds of declarations each and to submit four briefs. (2) Movants then performed an exhaustive search and review of highly sensitive documents involving the privileges of multiple clients. (3) They produced a few non-privileged documents, but (4) they also carefully recorded a large number of documents on privilege logs, and then (5) they submitted to two depositions at which the major record label plaintiffs exhausted their questioning. Then, when the plaintiffs tried to eviscerate the attorney-client privilege between EFF and Mr. von Lohmann and their client Lime Wire but could not back up their claims with information garnered from the first round of depositions, Judge Wood ordered Mr. von Lohmann (6) to sit for a further deposition, which took place here, in the Northern District of California, with the plaintiffs refusing to issue a new subpoena from this Court over the objections of Mr. von Lohmann. Judge Wood also ordered EFF and Mr. von Lohmann (7) to provide declarations. She further ordered Movants' attorney Andrew P. Bridges (8) to appear in the New York trial court to answer additional questions in order to reach a decision, placing that counsel under oath, examining Mr. Bridges (who was mere counsel and not a percipient witness) both on the witness stand and in camera, and allowing counsel for the major labels to cross-examine Mr. Bridges. Finally, Judge Wood ordered Movants (9) to file yet another round of declarations.

On May 1, 2011, Judge Wood ruled that the attorney-client privilege between EFF and Mr. von Lohmann and their client Lime Wire was intact. The plaintiff record labels shortly afterward settled the underlying case for a reported $105 million. On May 24 Judge Wood ordered the case to

be closed. Since no further proceedings relating to these subpoenas will occur at this point, Movants now bring this request for their costs and attorneys' fees as the Court provided in its December 17, 2010 order.

On December 17, 2010, in response to Movants' motion to quash the subpoenas issued by the major record label plaintiffs and for cost-shifting (Dkt. No. 1),[1] this Court issued an Order modifying the scope of the subpoenas and requiring the major labels to pay Movants' reasonable costs associated with the collection, review and production of documents pursuant to the subpoenas, as well as the costs related to Movants' depositions. *See* Dkt. No. 36 at 8. In accordance with that Order, Movants hereby request that the Court order the major labels to pay Movants' reasonable costs in the amount of $228,566.57. That request constitutes approximately half of the value of the attorneys' time and expenses that corresponded to the entire episode, because many necessary activities fell outside the strict scope of the cost-shifting order.

## II. PROCEDURAL BACKGROUND

### A. New York Litigation

In 2006, a group of major record labels filed suit against Lime Group LLC, Lime Wire, LLC, M.J.G. Lime Wire Family Limited Partnership and Mark Gorton in the Southern District of New York, asserting federal and state law claims of copyright infringement (*Arista Records v. Lime Wire LLC*, Case No. 06-5936). Until recently, the plaintiffs were in the midst of litigating the damages phase of the *Lime Wire* case before Judge Kimba Wood. It appears the New York case settled on May 12, 2011, and the Southern District of New York Court closed the case on May 24, 2011.

### B. The Major Record Labels' Subpoenas and the Movants' Motion to Quash

On October 27, 2010 and November 2, 2010, the record label plaintiffs served subpoenas for documents and deposition testimony on both the Electronic Frontier Foundation, a not-for-profit public interest law firm, and its former employee, Fred von Lohmann, a California resident.

On November 9, 2010, Movants moved to quash the subpoenas. Dkt. No. 1. Movants' motion to quash included a request for cost shifting. Dkt. No. 1 at 8-9.

---

[1] Unless otherwise noted, references to the docket are to the present action in the Northern District of California.

3

REQUEST FOR COSTS PURSUANT TO DEC. 17, 2010 ORDER - No. 3:10-mc-80276-JSW

In accordance with this Court's November 18, 2010 order, (Dkt. No. 16), Movants submitted supplemental declarations by both EFF and Mr. von Lohmann, providing further details regarding the scope of documents possibly subject to the plaintiffs' subpoenas and regarding the communications the subpoenas implicated. Dkt. Nos. 18, 19.

After engaging in a Court-ordered conference with plaintiffs' counsel, Movants then filed supplemental briefs, which again included requests that cost-shifting be part of any order permitting discovery. Dkt. No. 24. at 14; Dkt. No. 29 at 12. Movants provided additional declarations from both EFF and Mr. von Lohmann in conjunction with their supplemental brief, detailing the burden associated with the items sought by the subpoenas. Dkt. Nos. 25, 26.

On December 17, 2010, this Court granted in part and denied in part Movants' motion to quash, modifying the permissible scope of the subpoenas and granting Movants' request for costs. Dkt. No. 36. The Court stated:

> Accordingly, the Court concludes that Movants are entitled to *reasonable* costs associated with searching for, reviewing and producing the documents, including creating any necessary privilege logs, and in connection with the depositions. Movants shall submit a request to the Court for those costs after the document production and depositions are complete. Plaintiffs may file a response fourteen days thereafter, and Movants may file a reply seven days after Plaintiffs have filed their response.

*Id.* at 8 (emphasis in original).

In accordance with the Court's order, Movants, with the continued assistance of their counsel, Winston & Strawn, LLP, (1) interviewed potential custodians; (2) conducted searches for potentially responsive documents; (3) collected documents; (4) processed collected data; (5) reviewed documents for responsiveness and privilege; (6) prepared privilege logs for both collection sets; and (7) produced two sets of documents to the plaintiffs. In addition, Movants made Mr. von Lohmann and Corynne McSherry, as EFF's 30(b)(6) witness, available for depositions, which occurred on February 2, 2011 and February 3, 2011, respectively.

### C. Second Deposition of Mr. von Lohmann and Additional Declarations

On February 25, 2011, the major record label plaintiffs filed a motion in limine in the underlying *Arista Records v. Lime Wire* litigation seeking to prevent Lime Wire from asserting the attorney-client privilege over communications with EFF and Mr. von Lohmann. S.D.N.Y. Dkt. No.

06-05936, 546. Despite having used the subpoenas to obtain documents from Movants and to take Movants' testimony, plaintiffs could not provide Judge Wood with enough information to decide their motion in limine – information the plaintiffs had an opportunity to gather at the February depositions. In response to additional inquiries by Judge Wood, Movants provided yet another round of declarations to answer lingering questions which plaintiffs failed to address adequately for Judge Wood. Lu Decl. ¶ 15. Nevertheless, Judge Wood ordered that the major record label plaintiffs could depose Mr. von Lohmann a second time on April 25, 2011, on many of the same issues that prompted his first deposition, namely his attorney-client relationship with Lime Wire while he was an attorney with EFF. Declaration of Kathleen Lu ("Lu Decl."), Ex. D. Mr. von Lohmann made himself available, despite only one business day's notice, and counsel defended his second deposition on April 25, 2011. Lu Decl., ¶ 17. At that deposition, within this District, the major label plaintiffs refused to issue a subpoena from this Court but invoked the authority of Judge Wood in New York as the basis for proceeding here in San Francisco. Movants believe that the major labels did so strategically to try an end-run around the cost-shifting provisions of this Court. Movants objected to that procedure but allowed the deposition to go ahead in order to avoid the paralyzing effect of a standoff. Given that the major labels were within the jurisdiction of this Court to begin with in connection with this matter, Movants believe this Court may exercise authority to include the costs of the supplemental deposition in its assessment of costs pursuant to this request.

On April 27, 2011, at Judge Wood's request, Andrew P. Bridges, counsel of record for Movants, attended a hearing in New York before Judge Wood to answer further questions regarding the attorney-client relationship between Movants and Lime Wire. Lu Decl., ¶ 18. In an unorthodox procedure, Judge Wood had Mr. Bridges answer questions under oath from the witness stand and in camera, and she allowed cross-examination of Mr. Bridges by plaintiffs' counsel. *Id.* On April 29, 2011, Movants provided further declarations in answer to specific questions posed by Judge Wood – again, information the plaintiffs did not obtain during any of Movants' depositions. Lu Decl., ¶ 19. These activities all arose from the plaintiffs' subpoenas and their relentless efforts to penetrate the attorney-client privilege. On May 1, 2011, Judge Wood ultimately denied the plaintiffs' motion in

limine, upholding the attorney-client privilege as to communications between Movants and Lime Wire. Lu Decl. Ex. E. The *Lime Wire* case later settled for a reported $105 million.

### III. EXPLANATION OF COSTS

The major record labels' wide-sweeping subpoenas and multiple depositions of nonparty Movants resulted in nearly 800 hours of time by Movants' counsel, Winston & Strawn, totaling $358,333.05 in attorneys' fees and $27,256.67 in expenses – the bulk of which occurred after this Court entered the protective order. Lu Decl., ¶ 2. EFF attorneys also spent over 120 hours dealing with this matter, totaling $67,053.75 in attorneys' fees. Cohn Decl., ¶ 7. Nevertheless, Movants seek only the portion of the fees and expenses they are entitled to under the December 17, 2010 Order. (In fact, Movants seek less than half of the $425,386.80 total fees incurred.) Movants request that the major record label plaintiffs pay $202,824.50 for Movants' legal fees and $25,742.07 for expenses, for a total of $228,566.57. These sums are directly related to the document searches, collection, processing, review, and production of documents; the preparation of privilege logs; and Movants' depositions.

#### A. Cost Categories and Descriptions

Movants' costs are categorized as follows:

| Attorneys' Fees for Winston & Strawn | | |
|---|---:|---:|
| **Category** | **Amount** | **Hours** |
| Search and Collection | $21,461.00 | 48.30 |
| Document Review | $66,700.50 | 165.90 |
| Privilege Logs and Production | $9,753.00 | 25.90 |
| February Depositions | $36,435.00 | 56.20 |
| April Deposition | $12,797.50 | 24.00 |
| Declarations and Testimony Before Judge Wood | $28,057.50 | 39.10 |
| Total | $175,204.50 | 359.40 |

| Attorneys' Fees for EFF In-House Counsel | | |
|---|---|---|
| **Category** | **Amount** | **Hours** |
| Search and Collection | $2,545.00 | 4.70 |
| February Depositions | $9,525.00 | 19.00 |
| April Deposition | $2,862.50 | 5.50 |
| Declarations and Testimony Before Judge Wood | $12,687.50 | 24.30 |
| Total | $27,620.00 | 53.50 |

| Third-Party Expenses | |
|---|---|
| Electronic Discovery Vendor | $24,450.87 |
| Court Reporter (Transcripts) | $1,291.20 |
| Total | $25,742.07 |

Itemized spreadsheets are Exhibits A and B to the Lu Declaration and Exhibit A to the Declaration of Cindy Cohn ("Cohn Decl."). Movants and their counsel do not waive any attorney-client or attorney work product privileges and provide these itemized billing entries for the limited and exclusive purpose of providing the Court with the necessary details to evaluate costs in furtherance of the December 17, 2010 Order.

The Search and Collection category encompasses interviews of potential document custodians, determinations as to the location and accessibility of potentially responsive documents, and drafting search terms to locate potentially responsive documents from the custodians and within the data collection. A reputable third party electronic discovery vendor, TERIS, forensically collected and processed the data. Winston & Strawn is familiar with TERIS and, after obtaining quotes from TERIS and another electronic discovery vendor, found TERIS's rates to be competitive and reasonable. Lu Decl., ¶ 6.

The Document Review category includes the design of the review protocol; filtering out false positives; and analyses of every document collected (totaling more than 110 GB of data) for responsiveness, privilege, and confidentiality. Lu Decl., ¶ 8. Due to the complex and sensitive nature of the documents at issue, involving multiple layers of attorney-client and work-product privileges belonging to multiple clients and attorneys, the review required close and careful attorney attention. *Id.*, ¶ 9. Although counsel conducted the document review on an expedited basis due to

impending cut-off dates and time constraints in the *Lime Wire* case, Winston & Strawn used available associates with the lowest billable rates to do the bulk of the review. *Id.*, ¶¶ 10-11.

The Privilege Logs and Production category includes both paralegal and attorney work in determining which documents belonged on the EFF and von Lohmann privilege logs and the preparation of the privilege logs. Also in this category is the work associated with the electronic production of the documents and privilege logs, including the requisite technical tasks.

The February Depositions include the preparations for, and defense of, the depositions of both Mr. von Lohmann and EFF's 30(b)(6) witness, Corynne McSherry. This category also includes review of the deposition transcripts for confidentiality and errors.

The April Deposition consists of the preparations for, and defense of, the second deposition of Mr. von Lohmann, which the record label plaintiffs took in San Francisco because they had previously failed to marshal information that Judge Wood desired in connection with their then-pending motion in limine in the Southern District of New York.

The category Declarations and Testimony Before Judge Wood includes the preparations of Movants' several declarations and Mr. Bridges' appearance in Judge Wood's courtroom. These activities arose because plaintiffs (1) sought to use the subpoenas to challenge the attorney-client relationship between Mr. von Lohmann and EFF and Lime Wire; (2) filed a motion in limine to destroy the privilege without sufficient evidence to substantiate their claims; and (3) failed comprehensively to gather necessary information for Judge Wood.

EFF's in-house counsel Cindy Cohn, Corynne McSherry, and Kurt Opshal also expended significant time and effort responding to the subpoenas and repeated inquiries from the New York Court. Cohn Decl. Ex. A.

**B.     The Major Record Label Plaintiffs' Counsel Rejected Movants' Attempts to Reduce Costs.**

1. <u>The Proposed Narrowing of Document Custodians</u>

In furtherance of Movants' obligations under the December 17, 2010 Order, Winston & Strawn interviewed potential EFF custodians and Mr. von Lohmann to determine likely sources of responsive documents. In an effort to minimize costs, Movants informed counsel for the major

1 labels by letter on January 5, 2011 to Susan Boyd that several custodians' communications with
2 Lime Wire were unrelated to the *Arista Records v. Lime Wire* matter and likely not responsive to the
3 subpoenas. Lu Decl. Ex. F. By letter on January 7, 2011, the major labels advised Movants' counsel
4 that they nonetheless wanted these custodians included in the collection. Lu Decl. Ex. G. Movants
5 proceeded in accordance with the major labels' instructions and collected and processed these
6 custodians' data. *Id.*

### 2. The Proposed Narrowing of Mr. von Lohmann's Document Set

Due to the breadth of the major labels' subpoena to Mr. von Lohmann, even after this Court narrowed it, the collection from Mr. von Lohmann yielded 4.3 GB of potentially responsive data. Lu Decl., ¶ 8. By email on January 21, 2011, Movants notified the major labels that keyword searches returned a large number of hits, indicating the strong likelihood of false positives. Lu Decl. Ex. J. In an effort to avoid the costs of reviewing unrelated and unresponsive documents, Movants suggested either limiting the von Lohmann documents in the same manner as the EFF documents or dropping certain keywords. *Id.* The major labels rejected this suggestion. Lu Decl. Ex. K. Movants proceeded in accordance with the major labels' instructions, reviewing the entirety of the 4.3 GB of data collected from Mr. von Lohmann. *Id.*

### 3. The Proposed Exclusion of Movants' Communications with Counsel

In a letter on January 5, 2011, Movants suggested forgoing collection and review of communications between Movants and their counsel, Winston & Strawn, which post-date the subpoenas, since all of these communications are privileged. Lu Decl. Ex. F. In addition, Movants proposed to omit communications with Winston & Strawn attorneys from the privilege logs in an effort to reduce time and costs associated with the review of additional data and log preparations. By letter on January 7, 2011, the major labels insisted that Movants collect and review these privileged communications, but ultimately agreed Movants need not include Winston & Strawn communications on the privilege logs. Lu Decl. Ex. G.

### C. The Fees and Hourly Rates Are Reasonable.

The major record label plaintiffs targeted attorney-client privileged communications pertaining to numerous clients of EFF and Mr. von Lohmann with the subpoenas they served on EFF

1  and Mr. von Lohmann. Responding to those subpoenas required Movants and their counsel to
2  navigate privileges belonging to numerous clients and attorneys on top of the analysis required to
3  determine responsiveness and relevance and the time and effort required to gather and sort through
4  voluminous documents.

Movants used attorneys and staff with the appropriate skill level to conduct the requisite tasks associated with this matter. Lu Decl, ¶¶ 11-12. Moreover, Movants' and their counsel's hourly rates are in line with the prevailing market rates paid by clients in the San Francisco Bay Area for lawyers and legal staff with similar skills and experience conducting complex civil litigation. *Id.*, ¶ 13; Cohn Decl. ¶ 8.

Mr. Bridges is a partner at Winston & Strawn in his twenty-eighth year of practice and has garnered numerous awards as one the top intellectual property attorneys in California. His standard billing rate was $795 per hour for 2010 and is $825 per hour for 2011. Lu Decl. ¶ 12. Senior associates Robyn Callahan and Matthew Scherb have nine and six years of legal experience respectively, with billing rates of $515/$575 and $440/$525 respectively. *Id.* Winston & Strawn also used several junior associates, whose billing rates ranged from $305-$375 per hour. *Id.*

All three EFF attorneys who worked on this matter are experienced attorneys with from ten to over twenty years of legal experience and recognition as top attorneys in their fields. Their billing rates range from $475 per hour to $600 per hour.

Furthermore, Courts have found EFF's rates to be reasonable in several recent cases. In *Electronic Frontier Foundation v. Office of the Director of National Intelligence*, No. 07-05278 SI, 2008 U.S. Dist. LEXIS 44050 (N.D. Cal. June 4, 2008), for example, this Court found EFF's 2007 hourly rates to be reasonable. In *Apple v. Does* (Santa Clara Superior Ct., Case No. 1-04-CV-032178), the court awarded EFF attorneys' fees in accordance with its lawyers' 2006 and 2007 rates. *Id.*; Cohn Decl., ¶ 5. In *In re Sony BMG CD Technologies Litigation*, Case No. 1:05-cv-09575-NRB (S.D.N.Y. June 21, 2006), EFF received fees at their attorneys' hourly rates as part of the settlement of the action in June 2006. *Id.* at Dkt. No. 127; Cohn Decl., ¶ 5. In addition, in *Online Policy Group v. Diebold*, 337 F. Supp. 2d 1195 (N.D. Cal. 2004), EFF received fees at the organization's 2004 hourly rates pursuant to a settlement after a summary judgment victory. Cohn

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

Decl., ¶ 5.

In light of the complex nature of the legal issues the subpoenas implicated and the extraordinary effort required to defend the attorney-client privilege between Movants and their clients (including Lime Wire) successfully, including testimony before and declarations for the Southern District of New York, Movants' fees and hourly rates are reasonable.

## IV.     CONCLUSION

Pursuant to the Court's December 17, 2010 Order granting Movants' reasonable costs, Movants respectfully request the Court order the major record label plaintiffs to pay Movants' costs in the amount of $228,566.57 within 30 days.

Dated:  June 13, 2011                    WINSTON & STRAWN LLP

By:  /s/ Kathleen Lu
       Andrew P. Bridges
       Robyn Callahan
       Matthew A. Scherb
       Kathleen Lu

Attorneys for Movants.
ELECTRONIC FRONTIER FOUNDATION and
FRED VON LOHMANN