# EXHIBIT A

MUNGER, TOLLES & OLSON LLP

355 SOUTH GRAND AVENUE
THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 683-9100
FACSIMILE (213) 687-3702

560 MISSION STREET
SAN FRANCISCO, CALIFORNIA 94105-2907
TELEPHONE (415) 512-4000
FACSIMILE (415) 512-4077

June 16, 2011

WRITER'S DIRECT LINE
(213) 683-9238
(213) 683-4038 FAX
Kelly.Klaus@mto.com

**VIA FACSIMILE**

The Honorable Kimba M. Wood
United States District Court
 Southern District of New York
500 Pearl Street
New York, New York 10007-1312

      Re:   *Arista Records LLC et al. v. Lime Wire LLC et al.*,
            Case No. 06 CV 5936 (KMW)

Dear Judge Wood:

      Plaintiffs respectfully request a pre-motion conference and expedited consideration of a motion to enforce the parties' Settlement Agreement and Mutual Release.[1] Specifically, Plaintiffs will seek an order enforcing Defendants' release of any claim by them or their attorneys for fees and costs related to this action. As the Court no doubt recalls, Defendants argued strenuously, and the Court ultimately agreed, that the Electronic Frontier Foundation and Fred von Lohmann ("EFF") were and continued to be their lawyers. As a result of the Order holding the EFF to be Defendants' counsel, Defendants were able to withhold potentially critical evidence on the grounds of privilege. The existence of the attorney-client relationship that Defendants and the EFF advocated bears directly on the release given by Defendants to Plaintiffs. Defendants unambiguously released all claims for fees and costs incurred not only by them but by their attorneys that relate to this action.

---

[1] The Court retained jurisdiction to enforce the Settlement Agreement. (Dkt. No. 741 at 2.) If the Court would like Plaintiffs to file a motion to re-open the action for purposes of enforcing the Settlement Agreement, Plaintiffs will make that part of the motion requested herein.

14224061.1

MUNGER, TOLLES & OLSON LLP
The Honorable Kimba M. Wood
June 16, 2011
Page 2

Despite the release, on June 13, the EFF filed a motion asking the U.S. District Court for the Northern District of California (the Hon. Jeffrey S. White) to award it more than $228,000 in fees and costs in connection with this case. Whatever claim for reimbursement the EFF may have had is now a matter between the EFF and its clients. Plaintiffs pointed this out to the EFF and Defendants, Ex. A, but neither of them has responded to the substance of Plaintiffs' letter. Plaintiffs' response to the EFF's motion is due June 27.

The EFF bases its fee request on Judge White's December 17, 2010 Order on the EFF's motion to quash Plaintiffs' subpoenas for discovery in this case. Plaintiffs subpoenaed the EFF after this Court, in connection with the summary judgment opinion, said it would benefit from further briefing on whether Defendants could claim privilege over advice provided by counsel at the EFF. (Dkt. No. 224.) Judge White's Order denied the EFF's motion to quash the subpoenas, modified the scope of documents and deposition testimony the EFF had to produce, and held that the EFF could recover its "*reasonable* costs associated with" producing the documents and deposition testimony those subpoenas sought. Judge White's Order at 8, Ex. B (cost portion of Judge White's Order). The EFF completed its document production and deposition testimony under the subpoenas in February.

For nearly four months, the EFF did not do anything to seek reasonable costs for complying with the subpoenas under Judge White's Order. Then, this past Monday, the EFF filed its motion, requesting $228,566.57 in fees and costs. The EFF seeks fees not only for producing documents and witnesses in compliance with the subpoenas; but for more than $55,000 in fees for work the EFF did for Defendants in April, in trying to persuade this Court to sustain the Defendants' privilege claim. In the latter category, the EFF seeks fees for preparing declarations this Court ordered Defendants to produce; for von Lohmann's April deposition, which this Court ordered Defendants to secure; and for the time the EFF's outside counsel (Mr. Bridges) spent testifying in this Court. *See* Apr. 14 Hr'g Tr. at 3-11; Apr. 26 Hr'g Tr. at 11-15; Apr. 27 Hr'g Tr. at 136-171; Dkt. No. 706. The Court notified the parties by email on May 1 that it was denying Plaintiffs' motion *in limine*. Although the Court did not issue an opinion, the Court's ruling makes it clear that it agreed with Defendants that the EFF was their counsel.

The merits of the EFF's fee request are now moot. Defendants' release in the Settlement Agreement (which the Consent Judgment incorporates) includes the EFF's claim:

> Release by Lime Wire. Except for obligations created by or arising out of this Agreement ... the Lime Wire Released Parties, as of the Release Date, forever release, relieve, and discharge the Record Companies ... from any and all claims ... liabilities of any nature whatsoever, including costs ... and attorneys' fees, known or unknown, suspected or unsuspected, in law or equity, under federal, state, or other law, under statute, regulation, common law, or otherwise, that any of the Lime Wire Released Parties ever had, now has, or hereafter can, shall, or may have arising out of or relating in any way to, or that involve, directly or indirectly, the Action ... from the beginning of time through the Effective Date [*i.e.*, May 12, 2011]. Settlement Agreement § 5.2 (Ex. C, release provisions).

14224061.1

MUNGER, TOLLES & OLSON LLP
The Honorable Kimba M. Wood
June 16, 2011
Page 3

The "Lime Wire Released Parties" include the Defendants "and each of their respective ... attorneys, agents or representatives." *Id.* § 5.1. Based on the positions that Defendants and the EFF took in this case, as well as the Court's decision on Plaintiffs' motion *in limine*, it is clear that the EFF and von Lohmann are Defendants' "attorneys," and therefore among the parties on whose behalf Defendants have released claims. Indeed, Mr. Bridges testified under oath before this Court that, "I think from EFF's perspective, the attorney-client relationship has not ended." Apr. 27 Hr'g Tr. at 162:14-15

The EFF's request for fees indisputably is within the scope of the release. All of the work that the EFF did to comply with the subpoenas "aris[es] out of or relat[es] in any way to, or [] involve[s], directly or indirectly, the Action," as does the work that the EFF did for Defendants to support their privilege claim before this Court in April. The fact that the EFF claims that its fee request is based on Judge White's Order does not change any of this: the release includes "costs" and "attorneys' fees" under "statute, regulation, common law, *or otherwise*." (Emphasis added.) The EFF's request for fees is within the time period covered by the release: all of the fees that the EFF seeks to recover (as well as Judge White's Order) are within "the beginning of time" and May 12, 2011. In short, the EFF's request is squarely covered by Defendants' release.

Plaintiffs tried to obviate the need to return to this Court by asking Defendants and the EFF to withdraw the fee request. Ex. A. The EFF has not withdrawn its request. Neither Willkie Farr nor the EFF's counsel has responded to the substance of Plaintiffs' position. Plaintiffs therefore have no choice but to ask this Court to enforce the Settlement Agreement by ordering Defendants to direct their counsel to withdraw their request with prejudice. There is no injustice in this. The EFF can always look to its clients (namely, Defendants) for reimbursement for any claim that Defendants released for the EFF's work relating to this case.

The briefing schedule in Judge White's December Order requires Plaintiffs to respond to the EFF's motion in California two weeks from its filing, *i.e.*, by June 27. Ex. B at 8. Plaintiffs therefore respectfully request that Your Honor resolve this motion on the papers before June 24. If the Court would like further briefing or submission of papers, Plaintiffs request that the Court expedite the schedule. Alternatively, if the Court would prefer not to expedite this motion, we would expect the EFF to honor a request from this Court to stipulate to suspend briefing in the Northern District of California pending this Court's resolution of Plaintiffs' motion.

Respectfully submitted,

Kelly M. Klaus

cc: Tariq Mundiya (counsel for Defendants) (via email and facsimile)
Andrew P. Bridges (counsel for the EFF) (via email and facsimile)

14224061.1

## MUNGER, TOLLES & OLSON LLP

355 SOUTH GRAND AVENUE
THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 683-9100
FACSIMILE (213) 687-3702

560 MISSION STREET
SAN FRANCISCO, CALIFORNIA 94105-2907
TELEPHONE (415) 512-4000
FACSIMILE (415) 512-4077

June 14, 2011

WRITER'S DIRECT LINE
(213) 683-9238
(213) 683-4038 FAX
Kelly.Klaus@mto.com

Tariq Mundiya, Esq.
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, New York 10019-6099

Andrew P. Bridges, Esq.
Winston & Strawn LLP
101 California Street
San Francisco, California 94111-5802

Re:  Arista Records LLC v. Lime Wire LLC, Case No. 06-CV-5936 (KMW)

Dear Counsel:

Yesterday we received a request filed by the Electronic Frontier Foundation ("EFF") and Fred von Lohmann for more than $228,000 in fees and costs they say they incurred in connection with the above-captioned action and arising out of their role as lawyers for LimeWire. Leaving aside the merits of any claim for fees and costs that may have existed prior to May 12, 2011, one thing is now clear: the release given to Plaintiffs by Defendants covers this request.

You both contended (and Defendants ultimately prevailed in opposing Plaintiffs' *in limine* motion on the contention) that EFF and its attorneys were LimeWire's attorneys right up through trial. *See* Tr. of Hr'g, Apr. 27, 2011, at 162:14-15 (Mr. Bridges: "I think from EFF's perspective, the attorney-client relationship has not ended."). In fact, the EFF and von Lohmann expressly assert in the instant request that they incurred all of the claimed fees and costs because they "had to fight hard to protect" LimeWire's privilege. EFF-von Lohmann Request at 2:8 (filed June 13, 2011).

14209734.1

**EXHIBIT A**

MUNGER, TOLLES & OLSON LLP
   Tariq Mundiya, Esq.
   Andrew P. Bridges, Esq.
   June 14, 2011
   Page 2

      The EFF and von Lohmann's request is flatly barred by Defendants' release (for themselves and their attorneys) of "any and all claims ... [or] liabilities of any nature whatsoever, including costs ... and attorneys' fees ... arising out of or relating in any way to, or that involve, directly or indirectly, the Action[.]" May 12, 2011 Settlement Agreement and Mutual Release § 5.2 ("Settlement Agreement"). Although the Settlement Agreement has a confidentiality provision, we assume that Defendants have shared or will share with their counsel the language releasing, among other things, this request for attorneys' fees and costs.

      In light of the foregoing, the EFF and von Lohmann need to look to Defendants (their clients) for the reimbursement of any fees or costs relating to this matter. Plaintiffs demand that the EFF and von Lohmann withdraw their request with prejudice before the end of the day tomorrow, June 15, 2011. Otherwise, we will file a motion with Judge Wood to enforce the Settlement Agreement. Plaintiffs will request an immediate hearing, and they also will ask the Court to award any fees and costs they may be forced to incur in connection with such a motion.

      In addition to the foregoing, we note that Exhibit E to Ms. Lu's publicly filed declaration includes the personal email address of Judge Wood's law clerk. I do not know if Judge Wood or her law clerk would have a problem with you publishing this information, but you may want to consider asking the Court in the Northern District of California to seal that information when you withdraw your request.

      Sincerely,

      Kelly M. Klaus

14209734.1

**NOT FOR CITATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE SUBPOENAS TO ELECTRONIC FRONTIER FOUNDATION AND FRED VON LOHMANN, | No. C 10-80276-MISC JSW<br><br>**ORDER GRANTING IN PART AND DENYING IN PART EXPEDITED MOTION TO QUASH SUBPOENAS** |

Now before the Court for consideration is the Expedited Motion to Quash Subpoenas filed by Electronic Frontier Foundation ("EFF") and Fred von Lohmann ("Mr. von Lohmann") (collectively "Movants"). EFF and Mr. von Lohmann move to quash subpoenas issued by plaintiffs in a case pending in the United States District Court for the Southern District of New York, *Arista Records v. Lime Wire, LLC*, 06-5936 (KMW) (the "*Lime Wire* action") before Judge Kimba M. Wood. Plaintiffs in the *Lime Wire* action are thirteen major record companies (the "Plaintiffs").

On December 15, 2010, Plaintiffs filed a request to file a sur-reply. On December 16, 2010, Movants filed a response to the sur-reply. Plaintiffs' request to file a sur-reply is granted. The Court has considered the parties' papers, including the supplemental declarations ordered by the Court, the supplemental briefs submitted by the parties, Plaintiffs' sur-reply and Movants' response thereto, and relevant legal authority, and concludes that the motion is suitable for disposition without oral argument. *See* N.D. Civ. L.R. 7-1(b).

The Court also GRANTS Plaintiffs' Administrative Motions to Seal portions of their supplemental briefs. The Defendants in the *Lime Wire* action have designated those documents

**EXHIBIT B**

### G. Movants Are Entitled to Reasonable Costs.

Rule 45 provides that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction – which may include lost earnings and reasonable attorney's fees – on a party or attorney who fails to comply." Fed. R. Civ. P. 45(c)(1). "Although party witnesses must generally bear the burden of discovery costs, the rationale for the general rule is inapplicable where the discovery demands are made on non-parties. Nonparty witnesses are powerless to control the scope of litigation and discovery, and should not be forced to subsidize an unreasonable share of the costs of a litigation to which they are not a party." *United States v. Columbia Broadcasting Syst., Inc.*, 666 F.2d 364, 371 (9th Cir. 1982).

Although it has not granted Movants' request to quash the subpoenas outright, and although Movants and Plaintiffs were able to reach some accommodation *after* the Court ordered them to meet and confer, the Court has further modified the discovery requests in order to reduce the burden placed upon EFF and Mr. von Lohmann. Plaintiffs, in turn, have increased the time period involved by three years. Accordingly, the Court concludes that Movants are entitled to *reasonable* costs associated with searching for, reviewing and producing the documents, including creating any necessary privilege logs, and in connection with the depositions. Movants shall submit a request to the Court for those costs after the document production and depositions are complete. Plaintiffs may file a response fourteen days thereafter, and Movants may file a reply seven days after Plaintiffs have filed their response.

### CONCLUSION

For the foregoing reasons, the Court hereby GRANTS IN PART AND DENIES IN PART the motion to quash. This Order terminates Dockets 1, 22, and 28.

**IT IS SO ORDERED.**

Dated: December 17, 2010

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

8

Execution Copy

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release (the "Agreement") is made and entered into as of this 12th day of May 2011 (the "Effective Date"), by and between Arista Records LLC; Atlantic Recording Corporation; Arista Music, fka BMG Music; Capitol Records, LLC, fka Capitol Records, Inc.; Elektra Entertainment Group Inc.; Interscope Records; Laface Records LLC; Motown Record Company, L.P.; Priority Records LLC; Sony Music Entertainment, fka Sony BMG Music Entertainment; UMG Recordings, Inc.; Virgin Records America, Inc.; and Warner Bros. Records Inc. (collectively, the "Record Companies"), on the one hand; and Lime Wire LLC, Lime Group LLC, Mark Gorton, and the M.J.G. Lime Wire Family Limited Partnership (collectively, "Lime Wire"), and M.J.G. Lime Wire Family Limited Partnership; M.J. Gorton Family Limited Partnership; M.J.G. Lime Brokerage Family Limited Partnership; M.J.G. Tower Research Family Limited Partnership; M.J.G. 377 Tower Realty Family Limited Partnership; and M.J.G. Lime Spot Family Limited Partnership (collectively, the "Other M.J.G. FLPs"), on the other hand. The Record Companies, Lime Wire and the Other M.J.G. FLPs are sometimes referred to collectively herein as the "Parties" and each may be referred to as a "Party."

WHEREAS, the Record Companies commenced an action against Lime Wire in the United States District Court for the Southern District of New York (the "Court"), Case No. 06-CV-5936 (KMW), in which the Record Companies asserted various claims, as set forth in the Complaint and First Amended Complaint; and Lime Wire alleged various claims and affirmative defenses, including as set forth in Lime Wire's Answer and Counterclaim (dismissed with prejudice by Opinion and Order entered December 3, 2007 (Dkt. No. 51)) (hereinafter, the "Action");

WHEREAS, by Opinion and Order entered on May 11, 2010 (Dkt. No. 216), amended May 25, 2010 (Dkt. No. 223) and May 2, 2011 (Dkt. No. 721), the Court found, *inter alia*, that Lime Wire LLC, Lime Group LLC and Mark Gorton were liable for intentionally inducing infringement of the Record Companies' copyrighted works;

WHEREAS, on May 3, 2011, trial in the Action commenced, in which Plaintiffs continued to pursue their claims for damages and Defendants opposed those claims;

WHEREAS, the Parties mutually desire to settle and resolve the Action and the unasserted claims as set forth herein pursuant to and in accordance with the terms of this Agreement;

NOW, THEREFORE, in consideration of the mutual covenants contained herein, the parties agree as follows:

Consent Judgment.

1.1 The Parties acknowledge and agree that the Consent Judgment to which the Parties have agreed concurrently with this Agreement (a) will be filed under seal with the Court and (b) is a material and integral part of the Agreement. Immediately after execution of this Agreement, on May 12, 2011, the Parties will appear in Court to make a joint request that the Court enter the Consent Judgment and file it under seal.

Execution Copy

2.4 <u>Delivery of Payment</u>. Lime Wire and the Other M.J.G. FLPs shall cause all payments required to be made to the Record Companies hereunder to be made by wire transfer to the following (or such other account as the Record Companies notify Lime Wire and the Other M.J.G. FLPs is to receive payment):

> Suntrust Bank
> P.O. Box 622227
> Orlando, FL 32862-2227
> ABA Transit Number: 061000104
> Account Name: RIAA Operating Account
> Account Number: 41059971

The Record Companies will cause the account holder to send electronic notification (by email or other electronic means) of the receipt of each payment in accordance with the terms hereof within one (1) business day of the payment having been received. The Record Companies' agreement in this regard shall not in any way extend the Cure Period provided by Section 2.2 above.

3. <u>Notice of Satisfaction</u>.

The Parties agree that, so long as Lime Wire and the Other M.J.G. FLPs have not breached the terms of this Agreement, the Record Companies shall forebear from enforcing the amount that is set forth in the Consent Judgment. The Record Companies' agreement to forbear as set forth in this Section 3 shall in no way affect the Parties' rights and obligations under this Agreement, including without limitation under Section 2 above. If Lime Wire and the Other M.J.G. FLPs satisfy all of their payment obligations as set forth in Section 2 above, then (a) Lime Wire and the Other M.J.G. FLPs' payment obligations shall be deemed satisfied in full as of the Release Date (defined in Section 5.3 below), and (b) within two (2) Court days of the Release Date, the Record Companies will file with the Court a Notice of Satisfaction of Money Judgment.

4. <u>Injunction; No Appeal</u>.

4.1 The Parties agree that nothing herein is intended to modify, alter or annul in any way the continuing operation of the Consent Permanent Injunction that the Court entered on October 26, 2010 (Dkt. No. 334).

4.2 Released party Jody Gorton, in consideration of the terms and conditions of this Agreement, agrees to be bound by the Consent Injunction.

4.3 No Party shall file any notice of appeal or otherwise attempt to appeal the Consent Judgment, the Consent Permanent Injunction or any other Order entered by the Court in the Action.

5. <u>Releases</u>.

5.1 <u>Release by the Record Companies</u>: Except for obligations created by or arising out of this Agreement (including the Consent Judgment and the Guarantee and Collateral

Execution Copy

Agreement), the Record Companies, as of the Release Date, forever release, relieve, and discharge Lime Wire and the Other M.J.G. FLPs, Jody Gorton, Tower Research Capital LLC, Tower Research Capital Investments LLC, Lime Brokerage LLC, Lime Brokerage Holdings LLC, and each of their respective parents, subsidiaries, affiliated entities, successors, assigns, directors, officers, shareholders, partners, limited partners, general partners, controlling persons, attorneys, agents or representatives (collectively, the "Lime Wire Released Parties") from any and all claims, demands, actions, suits, causes of action, damages whenever incurred, liabilities of any nature whatsoever, including costs, expenses, penalties, and attorneys' fees, known or unknown, suspected or unsuspected, in law or equity, under federal, state, or other law, under statute, regulation, common law, or otherwise, that any of the Record Companies ever had, now has, or hereafter can, shall, or may have arising out of or relating in any way to, or that involve, directly or indirectly, the Action, or the exploitation by the Lime Wire Released Parties, or any of them, of copyrighted works owned by the Record Companies through the LimeWire System and Software (as defined in Section II.A(b), page 9, of the Consent Permanent Injunction (Dkt. No. 334)) from the beginning of time through the Effective Date.

5.2  **Release by Lime Wire.** Except for obligations created by or arising out of this Agreement (including the Consent Judgment and the Guarantee and Collateral Agreement), the Lime Wire Released Parties, as of the Release Date, forever release, relieve, and discharge the Record Companies and each of their respective parents, subsidiaries, affiliated entities, successors, assigns, directors, officers, shareholders, partners, limited partners, general partners, controlling persons, attorneys, agents or representatives (collectively, the "Record Company Released Parties") from any and all claims, demands, actions, suits, causes of action, damages whenever incurred, liabilities of any nature whatsoever, including costs, expenses, penalties, and attorneys' fees, known or unknown, suspected or unsuspected, in law or equity, under federal, state, or other law, under statute, regulation, common law, or otherwise, that any of the Lime Wire Released Parties ever had, now has, or hereafter can, shall, or may have arising out of or relating in any way to, or that involve, directly or indirectly, the Action, or the exploitation by the the Lime Wire Released Parties, or any of them, of copyrighted works owned by the Record Companies through the LimeWire System and Software from the beginning of time through the Effective Date.

5.3  **Release Date.** The effective date of the releases under Sections 5.1 and 5.2 of this Agreement (the "Release Date") shall be the Ninety-First day after the last of all payments under Section 2.1 above has been received in the account set forth above under Section 2.4, provided that no proceeding in bankruptcy, assignment for the benefit of creditors, or receivership that may give rise to a preference avoidance claim (a "Proceeding") is filed by or against any of the Lime Wire Released Parties. In the event that a Proceeding is filed by or against any of the Lime Wire Released Parties, then the Release Date shall be the date that any avoidance action against the Record Companies is barred by the applicable statute of limitations or is dismissed.

5.4  **Reinstatement.** If the Record Companies or the Recording Industry Association of America ("RIAA") pay a Disgorgement Repayment (as defined in this Section 5.4), then the Record Companies may in their sole discretion and in addition to any other remedy provided by law, equity, statute, or contract: (a) enforce this Agreement, including asserting and pursuing claims arising from the payment of the Disgorgement Repayment or under this Settlement Agreement; or (b) declare this Settlement Agreement to be null and void in its entirety, and